| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 11 | CHANEE THURSTON, LAWRENCE G. KNOWLES, III, and MILAN BABIC, on behalf of themselves and all others similarly situated, | CASE NO. 11-CV-02890-H-BGS |
| 12 | | **ORDER** |
| 13 | Plaintiffs, | **(1) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CAUSES OF ACTION;** |
| 16 | vs. | **(2) DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' EXPRESS WARRANTY, UCL, FAL, AND CLRA CAUSES OF ACTION;** |
| 19 | | **(3) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMMON LAW FRAUD CAUSE OF ACTION;** |
| 21 | | **AND** |
| 22 | BEAR NAKED, INC., | **(4) GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' UNJUST ENRICHMENT CAUSE OF ACTION AND DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' QUASI-CONTRACT CAUSE OF ACTION** |
| 23 | Defendant. | |

On April 11, 2012, Bear Naked, Inc. ("Defendant") filed a motion to dismiss Plaintiffs' first amended consolidated complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 40.)  On May 30, 2012, Chanee Thurston, Lawrence G. Knowles, III, and Milan Babic (collectively "Plaintiffs") filed a response in opposition to Defendant's motion to dismiss. (Doc. No. 44.)  On June 20, 2012, Defendant filed a reply. (Doc. No. 46.)  On July 5, 2012, Defendant filed supplemental authority in support of its motion to dismiss. (Doc. No. 48.)  On July 9, 2012, the Court held a hearing on the motion.  Joseph N. Kravek, Jr. and Janet Lindner Spielberg appeared on behalf of Plaintiffs, and Dean Nicholas Panos and Kate Spelman appeared on behalf of Defendant.  For the following reasons, the Court grants in part and denies in part Defendant's motion to dismiss.

### **Background**

Plaintiffs, California residents, allege that they bought Defendant's food products based, at least in part, on misleading statements printed on the products' labels. (Doc. No. 36 at ¶¶ 7-9.)  Defendant, a Delaware corporation headquartered in La Jolla, California, produces granola, granola bars, cereal, cookies, and trail mix, and sells them nation wide. (Doc. No. 36 at ¶¶ 10-11.)

The labels at issue bore the descriptive phrase "100% Pure & Natural" or "100% Natural" before naming the product inside the packaging.  For example, the packaging containing Defendant's trail mix stated: "100% Pure & Natural Trail Mix." (Doc. No. 36-2 at 6.)  Plaintiffs allege that the food products that bore the labels at issue were not "100% Natural" or "100% Pure & Natural" because they contained one or more of the artificial or synthetic ingredients glycerin, hexane-processed soy ingredients, potassium carbonate, and tocopherols. (Doc. No. 36 at ¶¶ 23-27.)  Plaintiffs allege that, based on the labels, they believed the food products contained no synthetic or artificial ingredients and therefore paid a premium price for the products. (Doc. No. 36 at ¶¶ 7-9.)

On March 12, 2012, Plaintiffs filed a first amended and consolidated class action complaint against Defendant, alleging causes of action for (1) two violations of the Magnuson-

1  Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; (2) breach of express warranty under
2  California law; (3) violation of the unlawful, unfair, and fraudulent prongs of California's
3  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (4) violation of
4  California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (5)
5  violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750,
6  et seq.; (6) common law fraud; and, alternatively, (7) quasi-contract or unjust enrichment.
7  (Doc. No. 36 at ¶ 4.)

## Discussion

### I.  Motion to Dismiss Legal Standard

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Navarro v. Black, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The function of 8(a)(2)'s pleading requirement is "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted) (internal quotation marks omitted). A complaint does not need to contain detailed factual allegations, but the plaintiff is obliged to provide more than labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not due." Id. at 555. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough a raise the right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). When reviewing the sufficiency of a complaint, "all allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." Epstein v. Wash. Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996); see Twombly, 550 U.S. at 555.

1  "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990). The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).

## II. Food, Drug, and Cosmetic Act Preemption

The Food, Drug, and Cosmetic Act, enacted in 1938, establishes a comprehensive federal scheme of regulation to ensure, among other things, that food is not misleadingly labeled. 21 U.S.C. §§ 341, et seq. Generally, food is mislabeled if "its labeling is false or misleading in any particular." Id. § 343(a)(1). In 1990, Congress amended the Food, Drug, and Cosmetic Act through passage of the Nutrition Labeling and Education Act. Pub. L. No. 101-535, 104 Stat. 2353 (1990). The Nutrition Labeling and Education Act was passed to "clarify and . . . strengthen the Food and Drug Administration's legal authority to require nutritional labeling on foods, and to establish the circumstances under which claims may be made about nutrients in food." H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337.

The Nutrition Labeling and Education Act added an express preemption provision to the Food, Drug, and Cosmetic Act that provides that "no State . . . may directly or indirectly establish" labeling requirements pertaining to specific topics that are "not identical" to the requirements in the Food, Drug, and Cosmetic Act. 21 U.S.C. § 343-1(a).

> "Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that: (i) Are not imposed in the applicable provision (including any implementing regulation) of section 401 [21 U.S.C. § 341] or 403 [21 U.S.C. § 343] of the act; or (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4).

///

There is no private right of action for violations of the Food, Drug, and Cosmetic Act. Merrill Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 810 (1986). Instead, the Food and Drug Administration ("FDA") enforces the Food, Drug, and Cosmetic Act's provisions through administrative proceedings and regulations. See, e.g., 21 C.F.R. § 7.40.

The Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, empowers Congress to enact legislation that preempts state law. See Gibbons v. Ogden, 22 U.S. 1, 211 (1824); Law v. Gen. Motors Corp., 114 F.3d 908, 909 (9th Cir. 1997). Federal law preempts state law when Congress enacts a statute that explicitly preempts state law ("express preemption"), when state law actually conflicts with federal law ("conflict preemption"), or when federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field ("field preemption"). Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010).

A court must "start with the assumption that the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." United States v. Locke, 529 U.S. 89, 107 (2000) (internal quotation marks omitted). This presumption against preemption is heightened where "federal law is said to bar state action in fields of traditional state regulation." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995). In light of the historical "primacy of state regulation of matters of health and safety," Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), courts can assume that "state and local regulation related to [such] matters . . . can normally coexist with federal regulations." Hillsborough Cnty. v. Automated Med. Labs., Inc., 471 U.S. 707, 718 (1985). However, consumer protection laws, such as the UCL, FAL, and CLRA, are nonetheless preempted if they seek to impose requirements that contravene requirements set forth by federal law. See Wyeth v. Levine, 555 U.S. 555 (2009). Where Congress does provide for express preemption, the presumption against preemption requires courts to read the clause narrowly. Medtronic, 518 U.S. at 485.

Defendant contends that federal law expressly preempts Plaintiffs' claims because Plaintiffs' definition of "natural" directly conflicts with the FDA's definition of "natural."

(Doc. Nos. 40 at 12, 46 at 5.) Defendant further asserts that Plaintiffs' claims should be dismissed because Congress entrusted the FDA to create a comprehensive regulatory scheme regarding food labeling. (Doc. No. 46 at 6.) Defendant argues that preemption applies to Plaintiffs' state law claims and that Plaintiffs therefore fail to state cognizable causes of action.

### A. Express Preemption

Defendant maintains that 21 U.S.C. § 343-1(a)'s express preemption provision preempts Plaintiffs' state law claims that impose obligations different from the Nutrition Labeling and Education Act and its enabling regulations. (Doc. No. 40 at 12.) Defendant overstates the scope of express preemption provided in § 343-1(a).

Section 343-1(a) expressly preempts a state's ability to establish labeling requirements different from the Food, Drug, and Cosmetic Act's requirements, but § 343-1(a) only extends to the requirements contained in the subsections of 21 U.S.C. § 343 specifically listed in § 343-1(a). For example, § 343-1(a)(3) preempts "any [state] requirement for the labeling of food of the type required by [21 U.S.C. §] 343(k) . . . that is not identical to the requirement of such section . . . ." Section 343(k), in turn, provides that food is misbranded if "it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears label stating that fact . . . ." Thus, a state law is preempted to the extent that it imposes labeling requirements for artificial flavoring, artificial coloring, or chemical preservatives different than those set forth in § 343(k).

Federal law expressly preempts state law when Congress, through specific statutory language, makes its intent to preempt state law known. See English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). Here, Defendant does not specify which subsection of 21 U.S.C. § 343 would be offended by allowing Plaintiffs' state law claims to proceed. (Doc. No. 40 at 12-14.) Instead, Defendant asserts that the FDA's informal policy on labeling items "natural" expressly preempts Plaintiffs' claims. See id. The Food, Drug, and Cosmetic Act only expressly preempts state law to the extent that state law is not identical to the defined subsections of 21 U.S.C. § 343. Because Defendant does not specify which subsection of § 343 would be violated, and because there is no subsection of § 343 listed under § 343-1(a) that addresses

labeling food items as "natural," the Court concludes that Defendant's express preemption argument fails.

### B. Conflict Preemption

Federal law impliedly preempts state law "to the extent that it actually conflicts with federal law." English, 496 U.S. at 79. Conflict preemption exists "where it is impossible for a private party to comply with both state and federal requirements . . ., or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (citations omitted) (internal quotation marks omitted).

Under the FDA's policy on the use of "natural" on food labels, "the agency has considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there." 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991). The FDA's stance on the definition and use of "natural" is only a policy. Therefore, the agency treats it as an advisory opinion. 21 C.F.R. § 10.85(d). In 1991, the FDA solicited comments on a potential rule that would have adopted a formal definition of "natural." 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993). In 1993, the FDA stated:

> After reviewing and considering the comments, the agency continues to believe that if the term "natural" is adequately defined, the ambiguity surrounding use of this term that results in misleading claims could be abated. However, as the comments reflect, there are many facets of this issue that the agency will have to carefully consider if it undertakes a rulemaking to define the term "natural." Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. The agency will maintain its current policy.

58 Fed. Reg. at 2407. Since issuing this statement, the FDA has taken no action to create a legally binding definition of "natural" for use on food labels, but it maintains its advisory opinion on use of the term "natural."

Defendant relies on Degelmann v. Advanced Medical Optics, Inc., 659 F.3d 835 (9th Cir. 2011), for the proposition that non-binding FDA policy preempts state law that seeks to impose additional or different conditions to federal policy. (Doc. No. 40 at 14.) In Degelmann, the plaintiffs sued a contact-lens solution manufacturer for allegedly violating

California's UCL and FAL by marketing a solution as a "disinfecting" solution, knowing that it was a less effective disinfectant than other contact-lens solutions on the market. 659 F.3d at 838. Because the defendant's solution met the effectiveness standards announced in an FDA "guidance document," the Ninth Circuit held that the plaintiffs' claims were preempted, thus affirming the district court's grant of summary judgment for the defendant. Id. at 841. The Food, Drug, and Cosmetic Law expressly preempted state laws that imposed different or additional safety or effectiveness requirements on medical devices covered by the Act. Id. at 840-41. Contact-lens solution was a Class II medical device under the Act, and Class II devices required FDA review. Id. at 841. Those Class II products that survived FDA review were said to have § 510(k) clearance. Id. The Ninth Circuit gave preemptive effect to the FDA "guidance document" that provided the criteria for receiving § 510(k) clearance for "disinfecting solutions." Id. at 841-42.

Similar to the guidance document in Degelmann, the FDA's natural policy provides guidance to producers who want to label their products "natural." Here, the question of whether Defendant's products conformed with the FDA's definition of "natural" turns on whether a consumer would normally expect the allegedly artificial or synthetic ingredients to be in the product a question better suited for summary judgment. See 56 Fed. Reg. at 60466. Further, the determination of whether the FDA's "natural" policy has preemptive effect, like the guidance document in Degelmann, requires further development of the record, a benefit that the Degelmann court had and this Court does not. Without sufficient development of the record, the Court declines to conclude whether Plaintiffs' state law claims conflict with the FDA's "natural" policy. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' state law claims as preempted by the FDA's "natural" policy.

**C.   Field Preemption**

Federal law preempts state law "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively," even in the absence of explicit statutory language. English, 496 U.S. at 79. Field preemption is implied from a "scheme of regulation . . . so pervasive as to make reasonable the inference that Congress left no room for

the States to supplement it," or where "an Act of Congress [touches] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). When an act of Congress contains an express preemption provision, there is no categorical rule that implied preemption is foreclosed, but Congress's inclusion of an express preemption provision supports a reasonable inference that Congress did not intend to exclusively occupy the field. Freightliner Corp. v. Myrick, 514 U.S. 280, 288-89 (1995).

Without a provision ensuring national uniformity of food labeling laws and regulations, food producers would likely be forced to print slightly different labels to comply with a patchwork of state labeling laws, increasing cost and confusion for both producers and consumers. Partly to ensure such uniformity, Congress entrusted regulation of food labeling to the FDA. See 21 U.S.C. § 393; Pom Wonderful LLC v. Coca-Cola Co., No. 10-55861, 2012 WL 1739704, at *1 (9th Cir. May 17, 2012). The Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, contains an express preemption provision that prevents state regulation not identical to many specified provisions of the Food, Drug, and Cosmetic Act. See 21 U.S.C. § 343-1(a). However, Congress, in a note to § 343-1, also stated that "[t]he Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [(21 U.S.C. § 343-1)] of the Food, Drug, and Cosmetic Act." Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (1990). Thus, Congress sought to ensure that state regulation in the field is consistent with federal regulations. Additionally, the FDA's "natural" policy provides guidance to food producers that seek to label food as "natural," but the definition relies on reasonable consumer expectations, an issue better suited for summary judgment. 56 Fed. Reg. at 60466. Recognizing the cogent policy reasons for leaving food labeling regulation to the FDA, the Court nonetheless denies Defendant's motion to dismiss Plaintiffs' state law claims as impliedly preempted by the Food, Drug, and Cosmetic Act.

///

///

### III. Primary Jurisdiction

Defendant asserts that Plaintiffs' claims should be dismissed pursuant to the "primary jurisdiction doctrine." (Doc. No. 40 at 16.) The Court disagrees.

The primary jurisdiction doctrine is not a doctrine related to subject matter jurisdiction of the federal courts. Syntek Semiconductor Co. v. Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002). Instead, primary jurisdiction is "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Id. at 780. The doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." Reiter v. Cooper, 507 U.S. 258, 268 (1993).

The doctrine is proper where a claim "requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002). Dismissal or stay of a claim pursuant to the primary jurisdiction doctrine is a matter for the court's discretion, but when deciding whether the doctrine applies courts examine "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. Syntek, 307 F.3d at 780 (citing United States v. Gen. Dynamic Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)).

Congress gave the FDA broad authority to regulate the labeling of food through the Food, Drug, and Cosmetic Act. See 21 U.S.C. § 393(b)(2)(A). However, the issue here—whether Plaintiffs were misled by Defendant's labels stating that the contents were "100% Natural" or "100% Pure & Natural" when they contained allegedly unnatural ingredients—is not an issue of first impression, and does not present an issue that requires the FDA's expertise. See, e.g., Hairston v. S. Beach Beverage Co., No. CV 12-1429-JFW, 2012 WL 1893818, at *1 (C.D. Cal. May 18, 2012); Astiana v. Ben & Jerry's Homemade, Inc., Nos.

C 10-4387, C 10-4937, 2011 WL 2111796, at *1 (N.D. Cal. May 26, 2011); Hitt v. Arizona Beverage Co., No. 08-CV-809, 2009 WL 449190, at *1 (S.D. Cal. Feb. 4, 2009); Lockwood v. ConAgra Foods, Inc., 597 F. Supp. 2d 1028 (N.D. Cal. 2009). Further, Plaintiffs are unlikely to achieve resolution of their claims by petitioning the FDA due to the FDA's decision not to formally define "natural," the FDA's lack of resources in regulating use of "natural" on labels, and the lack of a private right of action under the Food, Drug, and Cosmetic Act. Accordingly, the Court concludes that application of the primary jurisdiction doctrine is not appropriate here.

## IV. Plaintiffs' Complaint

### A. Magnuson-Moss Warranty Act Claim for Breach of Written Warranty

Defendant argues that there is no Magnuson-Moss Warranty Act claim for breach of written warranty because the phrases "100% Natural" and "100% Pure & Natural" are "product descriptions" that fall outside the Magnuson-Moss Warranty Act's definition of "written warranty." (Doc. Nos. 40 at 17, 46 at 7-8.)

The Magnuson-Moss Warranty Act creates a federal private right of action for a warrantor's breach of a written warranty. 15 U.S.C. § 2310(d). A written warranty under the Act is "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free." Id. § 2301(6)(A). The Federal Trade Commission's regulation that interprets the Magnuson-Moss Warranty Act's definition of written warranty states, "Certain representations, such as energy efficiency ratings for electrical appliances, care labeling of wearing apparel, and other product information disclosures may be express warranties under the Uniform Commercial Code. However, these disclosures alone are not written warranties under this Act." 16 C.F.R. § 700.3(a).

The descriptive phrases "100% Natural" and "100% Pure & Natural" that appear on Defendant's labels are more similar to the "product information disclosures" described in the regulations than to actionable written warranties in cases applying the Magnuson-Moss

Warranty Act. See, e.g., Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912 (9th Cir. 2005) (affirming judgment against car dealer for breach of manufacturer's written warranty that specifically promised to repair or replace defective parts); Houston v. Cnty. Coach, Inc., No. C 07-00859, 2008 WL 2783485, at *1 (N.D. Cal. July 17, 2008) (finding that motor home manufacturer breached a written warranty that was included with the motor home and provided detailed provisions of the types and extent of repairs and replacements the manufacturer intended to perform). Unlike the written warranties in Milicevic and Houston that included specific terms and affirmations, and much like the tag on a piece of clothing, the phrases here describe the products to which they are attached. The Court concludes that the phrases are product information disclosures, not written warranties under 15 U.S.C. § 2301(6). Because the Court concludes that the phrases are not written warranties, Plaintiffs have failed to sufficiently allege a cause of action for breach of a written warranty under the Magnuson-Moss Warranty Act. See Twombly, 550 U.S. at 555 ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' cause of action for breach of a written warranty under the Magnuson-Moss Warranty Act.

### B. Magnuson-Moss Warranty Act Claim for Breach of Implied Warranty

The Magnuson-Moss Warranty Act creates a federal private right of action for breach of an implied warranty of merchantability. 15 U.S.C. § 2310(d)(1). The Act defines implied warranty as "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." Id. § 2301(7). The Magnuson-Moss Warranty Act was passed, in part, to "make warranties on consumer products more readily understood and enforceable" and ease consumer frustrations stemming from the "inability to get many . . . products repaired" and the realization that a warranty "was often of no greater worth than the paper it was printed on." H.R. Rep. 93-1107, reprinted in 1974 U.S.C.C.A.N. 7702, 7706. In its discussion of the need for more federal regulation of warranties, Congress specifically refers to automobiles and household appliances, such as washing machines, dryers, water

heaters, irons, toasters, vacuum cleaners, and televisions, as prototypical examples of products covered by the Magnuson-Moss Warranty Act. Id. Courts in this circuit that have applied the Magnuson-Moss Warranty Act have consistently applied it to products that Congress discussed when it passed the Act. See, e.g., Venezia v. Bentley Motors, Inc., 374 Fed. Appx. 765 (9th Cir. 2010) (automobile); Milicevic, 402 F.3d 912 (automobile).

Defendant maintains that Plaintiffs' Magnuson-Moss Warranty Act cause of action for breach of implied warranty of merchantability should be dismissed because a cause of action for mislabeled food is beyond the scope of the Magnuson-Moss Warranty Act. (Doc. No. 46 at 8.) Defendant correctly asserts that Plaintiffs have not cited any cases that support an implied warranty of merchantability cause of action for a food's failure to conform to descriptions on its product label. Moreover, Plaintiffs have not cited any cases applying the Magnuson-Moss Warranty Act to food or food labels. Additionally, Plaintiffs fail to plead any facts demonstrating that the Magnuson-Moss Warranty Act applies to food labels. (See Doc. Nos. 36 at ¶¶ 68-84.) Thus, the Court concludes that Plaintiffs' complaint has not raised the right to relief above the speculative level. See Twombly, 550 U.S. at 555. Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' Magnuson-Moss Warranty Act cause of action for breach of implied warranty.

### C. California UCL Claims

Defendant maintains that Plaintiffs' claims should be dismissed because Plaintiffs fail to explain why a reasonable consumer would be deceived by the phrases "100% Natural" and "100% Pure & Natural." (Doc. No. 40 at 7-11). Defendant also contends that the phrases were subjective statements and, as such, are non-actionable puffery. (Doc. No. 40 at 14, 19.) Plaintiffs argue that what a reasonable consumer would expect and whether a reasonable consumer would be deceived are questions of fact, and therefore, not appropriate for resolution on a motion to dismiss. (Doc. No. 44 at 14-15.) Plaintiffs also argue that the phrases do not constitute puffery. (Doc. No. 44 at 8.)

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500. California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Under these California statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary consumer. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Id. at 939; accord. Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134-35 (2007).

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, and CLRA. Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); see Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., 911 F.2d 242, 245 (9th Cir. 1990); Williams, 523 F.3d at 939 n.3. Puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." Cook, Perkiss & Liehe, 911 F.2d at 246 (internal quotation marks omitted). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) (citations omitted). Whether a statement is puffery may be decided as a matter of law on a motion to dismiss. Cook, 911 F.2d at 245. However, it is a "rare situation" where granting a motion to dismiss for causes of action under California consumer protection laws is appropriate. See Williams, 552 F.3d at 939.

In Freeman v. Time, Inc., 68 F.3d 285 (9th Cir. 1995), the Ninth Circuit affirmed dismissal of plaintiff's UCL and CLRA claims, holding that a mailer stating plaintiff had won a cash prize was not deceptive because it clearly stated multiple times that plaintiff would win only if he had the winning number. Similarly, a court held that cereal pieces' alleged likeness to real fruit and small images of fruit on the cereal box could not deceive a reasonable consumer into believing that "Froot Loops" cereal contained real fruit because no reasonable person would think "froot" means "fruit," there is no likeness between real fruit and the cereal

1  pieces, and pictures of fruit do not affirm that actual fruit is an ingredient. McKinnis v.
2  Kellogg USA, No. CV 07-2611, 2007 WL 4766060, at *1 (C.D. Cal. Sept. 19, 2007).

3        Plaintiffs allege, in paragraphs thirty-five through thirty-seven of the complaint, that
4  reasonable consumers understand "100% Natural" and "100% Pure & Natural" to mean that
5  no synthetic or artificial ingredients are included, that reasonable consumers lack the means
6  to verify the truthfulness of those claims, and that, after relying on the labels, a reasonable
7  consumer would not expect any artificial or synthetic ingredients in Defendant's products.
8  (Doc. No. 36 at ¶¶ 35-37.) This is not the "rare situation" where granting a motion to dismiss
9  Plaintiffs' UCL, FAL, or CLRA causes of action is appropriate. Williams, 552 F.3d at 939.
10 Whether a reasonable consumer would be deceived by the labels is better suited for summary
11 judgment. Accordingly, the Court declines to grant Defendant's motion to dismiss Plaintiffs'
12 UCL, FAL, and CLRA causes of action.

13       **D.    Breach of Express Warranty Under California Law**

14       California Commercial Code section 2313 provides: "(a) Any affirmation of fact or
15 promise made by the seller to the buyer which relates to the goods and becomes part of the
16 basis of the bargain creates an express warranty that the goods shall conform to the affirmation
17 or promise," and "(b) Any description of the goods which is made part of the basis of the
18 bargain creates an express warranty that the goods shall conform to the description." Cal.
19 Com. Code § 2313.

20       To adequately plead a cause of action for breach of express warranty, "one must allege
21 the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that
22 warranty which proximately causes plaintiff injury." Williams v. Beechnut Nutrition Corp.,
23 185 Cal. App. 3d 135, 142 (1986). Statements made by a manufacturer on a product label can
24 be construed as express warranty statements. See, e.g., Zogarts, 14 Cal. 3d 104.

25       Defendant argues that the phrases at issue are subjective statements that constitute non-
26 actionable puffery. (Doc. No. 40 at 19.) Plaintiffs maintain that the phrases are not puffery
27 and constitute affirmations of fact made by Defendant. (Doc. No. 44 at 8.) Here, Plaintiffs
28 allege that Defendant made affirmations that the products were "100% Natural" or "100% Pure

& Natural," that the statements regarding the nature of the goods became part of the basis of the bargain because one of the statements was on every product label and appeared in numerous advertisements, that Plaintiffs purchased the products believing that they conformed to the statements, that the Defendant breached the warranties by failing to supply products that were free of synthetic or artificial ingredients, and that Plaintiffs were financially damaged by the breach. (Doc. No. 36 at ¶¶ 85-90.) The Court concludes that Defendant's arguments are better suited for summary judgment. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' breach of express warranty cause of action.

### E.  Common Law Fraud

Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s central purpose is to ensure that defendants accused of fraudulent conduct receive adequate notice of the allegation in order to defend against the allegations. Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009). Rule 9(b)'s heightened pleading requirements apply to state law causes of action. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "Averments of fraud must be accompanied by 'the who, what, where, when, and how' of the misconduct charged." Id. at 1106 (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must also "set forth what is false or misleading about a statement and why it is false." Decker v. GlenFed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994).

To state a claim for common law fraud, a plaintiff must allege a misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damages. Gil v. Bank of Am., N.A., 138 Cal. App. 4th 1371, 1381 (2006). Plaintiffs assert that Defendant, by using the phrases "100% Natural" and "100% Pure & Natural," represented to consumers that the products contain only natural ingredients and that this representation was false because the products contained the synthetic or artificial ingredients. (Doc. No. 49.) The Court concludes that Plaintiffs fail to sufficiently allege intent to defraud as required by the heightened pleading

requirements of Rule 9(b). Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' cause of action for common law fraud.

### F. Unjust Enrichment and Quasi-Contract

Defendant argues that Plaintiffs' claim for restitution based on unjust enrichment should be dismissed because there is no cause of action for unjust enrichment in California. (Doc. No. 40 at 19.) Unjust enrichment "is not a cause of action . . . or even a remedy, but rather a general principle, underlying various legal doctrines and remedies. It is synonymous with restitution." McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004) (citations omitted) (internal quotation marks omitted). In Levine v. Blue Shield of Cal., 189 Cal. App. 4th, 1117, 1138 (2010), the court held "there is no cause of action in California for unjust enrichment." In California, plaintiffs typically allege unjust enrichment in connection with a quasi-contract claim to avoid the defendant's unjust receipt of a benefit where there is no valid contract. See McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006) ("unjust enrichment is a basis for obtaining restitution based on quasi-contract"); McBride, 123 Cal. App. 4th at 388.

Here, Plaintiffs allege, in the alternative to their other causes of action, a cause of action for "restitution based on quasi-contract/unjust enrichment." (Doc. No. 36 at 35.) Plaintiffs allege that Defendant has been unjustly enriched through its unlawful conduct, creating a quasi-contractual obligation to return the unlawful profits to Plaintiffs. (Doc. No. 36 at ¶¶ 138-40.) The Court concludes that Plaintiffs sufficiently allege a right to relief for restitution under quasi-contract. See Twombly, 550 U.S. at 555. Accordingly, the Court grants Defendant's motion to dismiss Plaintiffs' claim for unjust enrichment and denies Defendant's motion to dismiss Plaintiffs' quasi-contract claim.

///
///
///
///
///

### Conclusion

Based on the foregoing, the Court grants Defendant's motion to dismiss Plaintiffs' Magnuson-Moss Warranty Act causes of action, grants Defendant's motion to dismiss Plaintiffs' common law fraud cause of action, grants in part Defendant's motion to dismiss Plaintiffs' unjust enrichment cause of action, and denies the remaining portions of Defendant's motion to dismiss Plaintiffs' complaint. The Court orders Defendant to file an answer within 30 days. Should Plaintiffs discover additional facts or law to support the dismissed causes of action in the complaint, they may file a motion for leave to amend if legally permitted to do so.

**IT IS SO ORDERED.**

DATED: July 13, 2012

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT