Janet Lindner Spielberg (SBN 221926)
**LAW OFFICES OF JANET
  LINDNER SPIELBERG**
12400 Wilshire Boulevard, #400
Los Angeles, California  90025
Phone:  (310) 392-8801
Fax:  (310) 278-5938
Email: jlspielberg@jlslp.com

Michael D. Braun (SBN 167416)
**BRAUN LAW GROUP, P.C.**
10680 West Pico Boulevard, Suite 280
Los Angeles, California  90064
Phone:  (310) 836-6000
Fax:  (310) 836-6010
Email: service@braunlawgroup.com

Joseph N. Kravec, Jr. (*pro hac* vice)
Wyatt A. Lison (*pro hac* vice)
**FEINSTEIN DOYLE PAYNE
  & KRAVEC, LLC**
Allegheny Building, 17th Floor
429 Forbes Avenue
Pittsburgh, PA  15219
Phone:  (412) 281-8400
Fax:  (412) 281-1007
Email:jkravec@fdpklaw.com
wlison@fdpklaw.com

Rosemary M. Rivas (SBN 209147)
Danielle A. Stoumbos (SBN 264784)
**FINKELSTEIN THOMPSON LLP**
505 Montgomery Street, Suite 300
San Francisco, California 94111
Phone: (415) 398-8700
Fax: (415) 398-8704
Email:  rrivas@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com

D. Joshua Staub (SBN 170568)
**LAW OFFICE OF D. JOSHUA STAUB**
PO Box 1914
Santa Monica, CA 90406-1914
Phone: (310) 929-5269
Fax: (310) 496-0702
Email:  djstaub@hotmail.com

*ATTORNEYS FOR PLAINTIFFS*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEE THURSTON, LAWRENCE G. KNOWLES, III, and MILAN BABIC, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>BEAR NAKED, INC.,<br><br>                    Defendant. | Case Number: 11-cv-02890-H (BGS)<br><br>CLASS ACTION<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. Marilyn Huff<br>Date:    July 26, 2013<br>Time:   9:00 a.m.<br>Ctrm:   13 |

# TABLE OF CONTENTS

I.      Introduction ............................................................................................... 1

II.     The Proposed Class Is "Ascertainable" ..................................................... 2

III.    Rule 23(a)(2) Commonality Is Satisfied, and Common Issues Predominate ........... 10

  A.  Common issues predominate because every product at issue contained ingredients that
      the federal regulations recognize are synthetic or artificial. ...................................... 10

  B.  No individual analysis of consumer perception or reliance is required .................... 13

  C.  Restitution and damages can be calculated on a class-wide basis ........................... 15

IV.     Slight And Immaterial Differences Between Plaintiffs And Class Members
        Do Not Destroy Typicality ........................................................................ 19

V.      Plaintiffs' Testimony Shows They Are Adequate ..................................... 21

VI.     The Court Should Certify A Nationwide Class ......................................... 23

VII.    Conclusion ............................................................................................... 25

i

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Alonzo v. Maximnus, Inc.*, 275 F.R.D. 513 (C.D.Cal. 2011) ................................................ 22

*Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 2013 Tex. App. LEXIS 2353
   (Tex. Ct. App. Mar. 8, 2013) ................................................................ 24

*Anderson v. Jamba Juice Co.*, 888 F.Supp.2d 1000 (N.D.Cal. 2012) ............................. 12

*Armstrong v. Davis*, 275 F.3d. 849 (9th Cir. 2001) ............................................. 19

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   2012 WL 2990766 (N.D.Cal. July 20, 2012) ........................................ 11, 12, 21

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ............................ 3

*Beck v. Status Game Corp.*, 1995 WL 422067 (S.D.N.Y. July 14, 1995) ........................... 21

*Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558 (S.D.Cal. 2012) ..................... 13, 14, 15, 17

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ............................................ 17

*Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004 (Cal. 2012) ......................... 17

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D.Cal. 2012) ............................... passim

*Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873 (C.D.Cal. Dec. 9, 2009) ................... 2, 4

*Butterworth v. Quick & Realty, Inc.*, 171 F.R.D. 319 (M.D. Fla. 1997) ..................... 21

*Carpetland U.S.A. v. Payne*, 536 N.E.2d 306 (Ind. Ct. App. 1989) ...................... 24

*Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993) ................................................ 2

*Chavez v. Blue Sky Natural Beverage Co.*,
   2009 WL 1956225, 340 Fed. Appx. 359 (9th Cir. 2009) ......................... 5, 9, 14

*Cohen v. DIRECTV, Inc.*, 178 Cal.App.4th 966 (2009) ........................................ 15

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (Cal. App. 2d Dist. 2006) ................................ 16

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ...................................... 17, 19

*Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469 (C.D.Cal. Aug. 26, 2010) ...................... 4

*Fox v. Sherwin-Williams Co.*, 2010 Mich. App. LEXIS 33 (Mich. Ct. App. Jan 7, 2010) .. 24

*Galvan v. KDI Distrib.*, 2011 WL 5116585 (C.D.Cal. Oct. 25, 2011) .................... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................... 21

*Heffelfinger v. Electronic Data Systems Corp.*, 2008 WL 8128621 (C.D.Cal. 2008)............ 2

*Hodes v. Van's Intern. Foods*, 2009 WL 2424214 (C.D.Cal. July 23, 2009) ........................ 9

*Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259 (N.D.Cal. 2011) ...................................... 22

*Holloway v. Full Spectrum Lending*, 2007 WL 7698843 (C.D.Cal. June 26, 2007)............ 22

*In re Ferrero*, 278 F.R.D. 552 (S.D.Cal. 2011) ................................................................ 13, 19

*In re Google Ad Words Litig.*, 2012 WL 28068 (N.D.Cal. Jan 5, 2012) .............................. 19

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D.Cal. 2007) .................................... 21

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
    2012 WL 4490860 (C.D.Cal. Sept. 28, 2012) ........................................................ 14, 24

*In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145 (2010).................................. 15

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
    2012 WL 253298 (N.D.Cal. Jan. 26, 2012) ................................................................ 9

*In re Tobacco II Cases*, 46 Cal.4th 298 (Cal. 2009) ...................................................... passim

*In re Vioxx Class Cases*, 180 Cal.App.4th 116 (2010) ...................................................... 18

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D.Cal. 2012).................................... 15, 19, 20

*Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519 (C.D. Cal. 2011)..................................... 11, 14

*Johnson v. General Mills, Inc.,* 275 F.R.D. 282 (C.D. Cal. 2011) ........................................ 5

*Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573 (E.D.Cal. 2012)..... 12

*Johnson & Johnson v. Actavis Group hf*, 2008 WL 228061 (S.D.N.Y. Jan. 25, 2008) ........ 7

*Kelly v. Mid-Am. Racing Stables*, 139 F.R.D. 405 (W.D.Okla. 1990) ................................ 21

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (Cal. 2003).................. 15, 18

*Krim v. PCorder.com, Inc.*, 210 F.R.D. 581 (W.D Tex. 2002) ............................................ 21

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) .................................. 3, 4, 5, 14

*Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013) ......................................... 17

*Major v. Ocean Spray Cranberries, Inc.*,
    2013 WL 2558125 (N.D.Cal. June 10, 2013)........................................................ 12, 21

*Martinez v. Welk Grp., Inc.*, 2012 WL 2888536 (S.D.Cal. July 13, 2013) ........................ 20

*Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012).................. passim

*McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59 (Wyo. 1989)........................................... 24

iii

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D.Cal. 2004)................................................ 21

*Morgan v. U.S.*, 298 U.S. 468 (1936) ........................................................................... 1, 11

*Omega Engineering, Inc. v. Eastman Kodak Co.,* 30 F.Supp.2d 226 (D. Conn. 1998) ....... 24

*Oshana v. Coca–Cola Co.*, 472 F.3d 506  (7th Cir. 2006) .................................................... 4

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D.Cal., 2008).................................... 9

*Peviani v. Natural Balance, Inc.*, 22011 WL 754958 (S.D.Cal. Feb. 24, 2011) ................... 5

*Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622 (2010)............................................... 15

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010)...................................................... 24

*Price v. Chevrolet Motor Div. of Gen. Motors Corp.*, 765 A.2d 800 (Pa.Super. 2000) ........ 4

*Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D.Cal. April 12, 2012)........................... 8, 9

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D.Cal. 2012) ..................... passim

*Schmaltz v. Nissen*, 431 N.W.2d 657 (S.D. 1988) ............................................................. 24

*Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307 (E.D.Va. 2007) ............................................. 21

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D.Cal. 2005)............................. 19

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011).............................. 2, 3, 4, 13

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D.Cal. 2012)............................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) ............................................. 10, 17

*Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D.Cal. 2010)................................... 23

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D.Cal. 2009) .............................................. 15, 16

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (Cal. Ct. App. 1986) ........... 24

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)...................................... 13, 14

*Wolph v. Acer America Corp.*, 272 F.R.D. 477 (N.D.Cal. 2011) ....................................... 15

*Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D.Cal. June 7, 2011)............... passim

## **STATUTES**

Business and Professions Code § 17200 ..................................................................... passim

Cal.Bus. & Prof.Code 17535.................................................................................... passim

## OTHER AUTHORITIES

2 Newberg on Class Actions § 4:26 (4th ed.) ....................................................................... 18

Reference Manual on Scientific Evidence (Third Edition, 2011).......................................... 7

## RULES

Rule 23.......................................................................................................................passim

## REGULATIONS

7 C.F.R. § 205.605(b) ........................................................................................................ 11

## I.     Introduction

This case is about Defendant Bear Naked, Inc. ("Bear Naked") falsely labeling its food products as "100% Pure & Natural" and "100% Natural," when in fact these products contain ingredients expressly recognized by federal regulations as synthetic or artificial. Plaintiffs seek to certify a Rule 23(b)(3) class of purchasers of Bear Naked food products that were labeled "100% Pure & Natural" or "100% Natural," but which contained one or more of four non-natural ingredients.   *See* First Amended Consolidated Complaint ("FACC") (Dkt. #36) ¶¶ 1, 47.  In opposing certification (at Dkt. #189, "Opp."), Bear Naked does not dispute that federal regulations establish each ingredient is synthetic or artificial, and that these regulations create a strong evidentiary presumption in Plaintiffs' favor that these substances are synthetic and/or artificial. *See Morgan v. U.S.*, 298 U.S. 468, 477 (1936).  Nor does Bear Naked dispute Plaintiffs' evidence that each subject food included one or more of these synthetic or artificial ingredients, yet was labeled "100% Pure & Natural" and "100% Natural."  *See* Plaintiffs' opening brief ("Pl. Mem.") (Dkt. #73-1) at 3-5 and cited evidence.

Plaintiffs also established, most notably through Bear Naked's own consumer survey research, corporate testimony, and documents, that consumers understand claims of "100% Pure & Natural" and "100% Natural" to signify the absence of synthetic and artificial ingredients, and that such claims are material to purchasers deciding to buy Bear Naked products.  *Id.* at 5-9 and evidence cited therein.[1]   While Bear Naked now attempts to dispute these points, it does so solely on the basis of claims by a single retained expert which flatly contradict Bear Naked's own prior research and its Rule 30(b)(6) testimony in this case. Bear Naked's implementation of the "100% Pure & Natural" and "100% Natural" labeling shows that it credited its original research demonstrating materiality, and Bear Naked's corporate representative confirmed that this labeling affected consumers' purchase intent.

---

[1] Since Plaintiffs filed their opening brief, Bear Naked produced dozens of additional consumer studies, further confirming these points.  Because this evidence is bulky and cumulative, Plaintiffs do not now proffer it, but will do so at the Court's request.

Bear Naked's argument that the proposed classes are not "ascertainable" is not based on any Rule 23 provision, but rests on a contention that certification should be denied because certain absent class members lack standing.  Ninth Circuit law is to the contrary. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011).  Bear Naked challenges Rule 23(a)(2) commonality and Rule 23(b)(3) predominance by claiming that "certification must be denied if a court would have to make individual inquiries regarding whether each class member was 'induc[ed]' by false advertising to purchase the product at issue." Opp. at 25.  Of course, none of Plaintiffs' claims require a showing of individualized reliance.  Rather, it is materiality not reliance that is required and, as shown *infra*, Bear Naked's own consumer studies and corporate representative testimony provide predominantly common evidence of materiality here.

Finally, Bear Naked's arguments as to typicality and adequacy ignores the evidence that Plaintiffs, like class members, deemed the "100% Pure & Natural" and "100% Natural" labeling to be material to their decisions to purchase Bear Naked, and that Plaintiffs wish to redress this false labeling for the class and are able representatives.  Thus, class treatment with Plaintiffs as representatives is appropriate.

## II.   The Proposed Class Is "Ascertainable"

Bear Naked claims that the proposed class is not "ascertainable."  Opp. at 12-21.  Bear Naked's ascertainability argument is premised on the theory that a class must "be defined in such a way that anyone within it would have standing."  *Id.* at 12 (quoting *Burdick v. Union Sec. Ins. Co.*, 2009 WL 4798873, at *4 (C.D.Cal. Dec. 9, 2009)).  The 2009 case cited by Bear Naked is an ERISA case; a 2008 case Bear Naked also cites, *Heffelfinger v. Electronic Data Systems Corp.*, 2008 WL 8128621 (C.D.Cal. 2008), involved wage claims.  Black letter law of this Circuit, however, reflects that under Bus. & Prof. Code, § 17200, *et seq.* ("UCL") (the basis for Plaintiffs' Fourth, Fifth and Sixth Causes of Action here) "[a]t least one named plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Stearns*, 655 F.3d at 1021 (*quoting Casey v. Lewis*, 4 F.3d 1516,

2

1519 (9th Cir. 1993).   As the *Stearns* court further explained, the Ninth Circuit made this point "even more explicit" in *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), finding class standing where at least one named plaintiff meets requirements.

   *Stearns* also defeats Bear Naked's related standing argument that certification should be denied because the classes include members who did not suffer an "actual injury."   Opp. at 1, 12-19.   As reiterated in *Stearns*, "relief under the UCL is available without individualized proof of deception, reliance and injury." 655 F.3d at 1020.   The *Stearns* plaintiffs challenged a fee-based rewards program.   The court found that each class member was injured because he or she was relieved of money in a challenged transaction and that loss was fairly traceable to defendants' actions.   *Id.* at 1021 (class standing present where class members "came, saw, were conquered by stealth, and were relieved of their money").   The Ninth Circuit likewise ruled in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (citing *Stearns*, 655 F.3d at 1021)[2]:

> Plaintiffs contend that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims and failed to disclose the system's limitations.   To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an "injury in fact."

   *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011), decided under the UCL and the False Advertising Law, Cal.Bus. & Prof.Code 17535 ("FAL") (the basis for Plaintiffs' Seventh Cause of Action), also is on point.   Plaintiffs there alleged that defendants falsely labeled products as "Made in U.S.A.," and that they relied on these labels and would not have bought the products in their absence.   The Court held that these allegations satisfied standing requirements, because "labels matter, … consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they

---

[2] The *Mazza* court vacated certification because, *inter alia*, the "small scale" of the challenged advertising campaign did not support a presumption of reliance since some class members would not have been exposed to it. *Id.* at 594, 596-97.   The present case does not involve advertising of "limited scope" (*id.* at 596) but labeling present on every product purchased by every class member.

may come to associate with a particular source."  Id. at 889.  The Supreme Court explained that:

> From the original purchasing decision we know the consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, i.e., that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue.  *Id.* at 890-91. [3]

Plaintiffs here have testified to the injury found sufficient in these cases:

- Plaintiff Thurston: purchased Bear Naked granola "because it said was pure and natural 100%." Exhibit ("Ex.") 2 at 75:24-25. [4]  She stopped buying the product once she learned it was not all natural. *Id.* at 100:10-11.

- Plaintiff Knowles: He paid more because the product was labeled all natural. Ex. 1 at 140:15-19.  He decided to stop purchasing this product once learned that one of its ingredients was not natural.  Ex. 1 at 153:16-25.  He reiterated that his decision to stop buying Bear Naked products was directly related to his perception that the ingredient was not natural.  *Id.* at 154:1-5.  He no longer eats any Bear Naked products.[5]  *Id.* at 154:14-16.

- Plaintiff Babic: He would have paid less for Bear Naked granola if he had known it was not all natural.  Ex. 3 at 169:10-15.

Further, the FACC alleges that that each Plaintiff purchased Bear Naked products because they were labeled as "100% Pure & Natural" or "100% Natural" and that had they

---

[3] Bear Naked ignores all this authority and relies on *Fine v. ConAgra Foods, Inc.*, 2010 WL 3632469 (C.D.Cal. Aug. 26, 2010).  Opp. at 12-13.  Like Bear Naked, the *Fine* court cited *Burdick* for the proposition that "'a class must be defined in such a way that anyone within it would have standing,'" concluding that class certification was improper because the proposed class included people who may not have relied on the defendant's misrepresentations.  *Id.* at *3 (quoting *Burdick,* 2009 WL 4798873, at *4).  Even assuming that *Burdick* (decided in 2009) or *Fine* (2010) were correct when decided, *Stearns* (2011), *Kwikset* (2011), and *Mazza* (2012) quell any such notion.  Bear Naked's case construing an Illinois law, *Oshana v. Coca–Cola Co.*, 472 F.3d 506  (7th Cir. 2006) (Opp. at 13-14), does not counter-act the cited California authority.

[4] Unless otherwise stated, "Ex" references throughout refer to the exhibits to the July 15, 2013 Declaration of Joseph N. Kravec, Jr. filed herewith.

[5] Bear Naked notes that Plaintiff Knowles testified that he probably would have bought Bear Naked granola even if it was not labeled "100% Natural."  Opp. at 16.  This statement must be read in context (*see* Ex. 1 at 140:15-142:5).  Further, and as discussed *infra*, given his other testimony, the fact that Bear Naked's counsel was able to elicit this response under repeated questioning does not defeat adequacy.

known the truth that these products were not all natural, they would not have purchased them. Dkt. #36 ¶ 7, 8, 9. Bear Naked also tries to defeat standing by pointing to supposed inconsistencies in Plaintiffs' pertinent deposition testimony. *See* Opp. at 14-18. Like Bear Naked, the defendant food producer in *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113 (N.D.Cal. June 7, 2011), argued that the plaintiff lacked standing because he stated, inter alia, that he would have purchased the subject product even absent the disputed labeling, and that he purchased the product for reasons unrelated to labeling. The Court rejected the argument that these facts demonstrated that the plaintiff had not been injured, explaining:

> Although Zeisel did in fact testify that he purchased Shelled Walnuts Products because he thought they were a good product, Zeisel also testified that he purchased Shelled Walnuts Products because he "was interested in the heart-healthy benefits as advertised on the packaging." According to Zeisel, he made that decision based on the information on the labels. "A plaintiff does not need to show that a defendant's misrepresentation was the only cause of the injury producing conduct; rather, the plaintiff need only show that the misrepresentation was a substantial factor in influencing his decision."…the Court is satisfied that Zeisel has demonstrated that he has standing to bring these claims on behalf of the class.

*Id.* at *4 (relying on *Kwikset*, 51 Cal.4th at 316). The California Supreme Court explained:

> It is not…necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct…. It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision. Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. A misrepresentation is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question", and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."

*In re Tobacco II Cases*, 46 Cal.4th 298, 326 (Cal. 2009) (citations omitted); *see also Chavez v. Blue Sky Natural Beverage Co.*, 2009 WL 1956225, 340 Fed. Appx. 359, 362 (9th Cir. 2009) (plaintiff adequately alleged injury-in-fact based on purchases of mislabeled sodas); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 286 (C.D. Cal. 2011) (plaintiff suffered economic injury where he "purchased YoPlus but did not receive the promised digestive health benefit"); *Peviani v. Natural Balance, Inc.*, 22011 WL 754958, *3 (S.D.Cal. Feb. 24,

2011) (Plaintiff alleged economic injury because she paid more for the product than she would have absent the deceptive statements on its labels).

Bear Naked claims that the "100% Natural" label is not a purchasing factor for most Bear Naked customers, citing a single survey conducted for this case by its retained expert, Dr. Itamar Simonson. Opp. at 15-16. However, the vast majority of consumers surveyed by Dr. Simonson were not even Bear Naked customers – his report identifies only 9 out of 1,029 customers surveyed who definitely purchased Bear Naked products. Simonson Dep., pp. 159:21-160:21. Dr. Simonson conceded that no reliable conclusions can be made from a sampling of 9 persons (*Id.* at 165:14-167:1-5), and Plaintiffs' experts confirm that it was improper to combine the results for the 5 products tested. *See* Rebuttal Declaration of Elizabeth Howlett ("Howlett Decl."), p. 53 and Expert Opinion of Stephen A. Schneider ("Schneider Report"), Ph.D., p. 8, both filed herewith.

Besides including scant few *actual* Bear Naked consumers, Dr. Simonson's survey failed to target *likely* Bear Naked consumers. Bear Naked's corporate representative admitted that through its research, Bear Naked knows that its consumers are "not the general population" but rather just a third of that population, and they tend to be young, well-educated in general and as to "food and nutrition" in particular, and interested in "natural health foods." Dkt. # 73-12, Deposition of Jeffrey Johnson at 57:6-25; 105:7-9; 151:13-22. Yet, Dr. Simonson failed to screen for the relevant demographics of well-educated consumers interested in natural health food who have purchased Bear Naked products, and only collected limited information on age. *See* Howlett Decl. ¶¶ 38-63; Ex. 8 (Deposition of Itamar Simonson ("Simonson Dep."), pp. 39:22-45:11 (gender), 55:21-58:10 (age), 62:1-6 (health), 68:5-69:13 (demographics generally), 148:2-25 (education), and 167:18-168:23 (income). Further, his attempt to screen for respondents interested in food "emphasizing nutrition" alone fails to adequately target the likely consumer and even that qualifier was not included for one of the 5 products surveyed. Howlett Decl., ¶¶ 56-63; Simonson Dep., pp. 59:15-60:9.

In short, Dr. Simonson surveyed a generalized group of consumers that bore scant resemblance to the Bear Naked purchaser demographic.  "A survey that provides information about a wholly irrelevant population is itself irrelevant.  Courts are likely to exclude the survey or accord it little weight."  Reference Manual on Scientific Evidence (Third Edition, 2011), Federal Judicial Center, pp. 377-78 (numerous citations omitted).  This is not the first time that Dr. Simonson has conducted the wrong survey.  *See Johnson & Johnson v. Actavis Group hf*, 2008 WL 228061, at *6 and n.7 (S.D.N.Y. Jan. 25, 2008).

Moreover, the Simonson survey fails to ask critical questions, such as the degree to which it is important for a product labeled "100% Natural" or " 100% Pure & Natural" to contain natural ingredients, whether they would expect an ingredient determined by federal regulation to be synthetic or artificial to be included in a product labeled "100% Natural" or " 100% Pure & Natural," and whether they would purchase a product labeled "100% Natural" or " 100% Pure & Natural" if it contained any ingredient determined by federal regulations to be synthetic or artificial.  Howelett Decl. ¶ 68; Simonson Dep. pp. 186:25-190:17.  Significantly, Dr. Simonson included similar sorts of questions in another survey he did concerning the 'natural sugar' labeling of Splenda, concluding there that these questions were a "straight-forward indicator of materiality" permitting him to determine whether consumers were deceived by the 'natural' labeling and the degree to which it was material to consumers.  Simonson Dep., pp. 202-209.  The absence of such questions in Simonson's survey here is striking.[6]

Even more telling is that the Simonson survey is completely at odds with the dozens of consumer studies Bear Naked relied on for its marketing and its corporate representative's testimony confirming that the subject labeling affected purchasing intent for Bear Naked consumers.  Dkt. #73-1 at 6-7 and evidence cited therein, and n.1 *supra*.  Significantly, even

---

[6] Besides failing to test actual Bear Naked consumers, Simonson's study was seriously flawed in numerous other respects detailed in the rebuttal reports of Drs. Howlett and Schneider filed herewith.  Plaintiffs also submit the transcript of Dr. Simonson's recent deposition (Ex. 4), as it reveals the paucity of his evidence and reasoning.

though Plaintiffs highlighted the Bear Naked evidence refuting Dr. Simonson's contrary conclusions in their opening brief (Dkt. #73-1at 6-7), Bear Naked wholly fails to respond to any of this material.  To reiterate, multiple documents created or commissioned by Bear Naked report, and Bear Naked's corporate representative agreed, that "'[c]ontains only natural ingredients' is an important brand influence for 50% of all shoppers"; "37% feel natural on the label is extremely or very important"; "[t]he behavior of brands in terms of products, packaging and labeling impacts…the purchase decision at that moment," and "[o]ver half of all consumers are willing to pay more for all-natural products." *See* evidence cited and discussed *id.* at 7.

As for Dr. Simonson, his research is deeply flawed, as detailed above and in the Howlett and Schneider declarations.  Exs. 7 and 9.  In any event, even if Dr. Simonson's irrelevant research were credited, it still would not defeat materiality but would merely be one piece of common evidence to be balanced against all the opposing marketing studies and other common evidence identified in Plaintiffs' opening brief and herein.

Underscoring that materiality is present, Bear Naked attempts to rely on a withdrawn study for the proposition that 20% of consumers are unwilling to pay more for all natural products.  *Id.* at 19 n.8 and 28 n.15.[7]   But, the obverse is that 80% of consumers ARE willing to pay more for all natural products.  Bear Naked's own evidence – whether created by Bear Naked or endorsed by its Rule 30(b)(6) witness or its instant briefing – more than satisfies the materiality requirements addressed in all the cases discussed above.  In any event, as shown, Plaintiffs' own testimony is sufficient to establish the requisite standing.

Bear Naked also argues that there is no ascertainable class because Plaintiffs "have not offered any practical mechanism for determining membership."  Opp. at 21.  In *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, *6 (C.D.Cal. April 12, 2012), proffered by Bear Naked on

---

[7]  The referenced study was commissioned by Plaintiffs' expert; Plaintiffs have since withdrawn it.  However, since Bear Naked relies on it, Plaintiffs note that therein, 1001 consumers were asked what the claims "100% Natural" and "100% Pure and Natural" actually mean.  *See* Expert Report of Elizabeth Howlett (filed under seal) ¶ 37.  81% of respondents reported that the "100% Pure and Natural" claim means that "all of the ingredients in the product are natural (not synthetic or artificial)." *Id.* ¶ 41.

this point, the court emphasized that "[a] lack of ascertainability alone will generally not scuttle class certification."  *See also Galvan v. KDI Distrib*., 2011 WL 5116585 (C.D.Cal. Oct. 25, 2011) (same).  Numerous courts have held that a class can be certified even if its membership is unclear or overbroad.  *In re TFT-LCD (Flat Panel) Antitrust Litig*., 2012 WL 253298 (N.D.Cal. Jan. 26, 2012) (citing cases).

In any event, even if Bear Naked's membership argument could in theory support denial of certification, it does not here.  *Zeisel* is again on point.  The defendant argued that it was not administratively feasible to determine if a person belonged to the proposed class because it did not track consumer purchases.  The court was not persuaded:

> The proposed class includes (1) all persons (2) who purchased Shelled Walnut Products in 6 ounce, 10 ounce, 16 ounce and/or 3 pound bags (3) which bore labels bearing the Structure Function Claim and Banner (4) from March 22, 2006 through the present. The Court does not find this definition to be subjective or imprecise. Rather, it includes objective characteristics that would permit a consumer to identify himself as a member of the proposed class.

2011 WL 2221113, at *6; *see also Chavez v. Blue Skye Natural Bev. Co., Inc.*, 268 F.R.D. 365 (N.D.Cal. 2010) (beverage mislabeling class sufficiently identifiable); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D.Cal. 2008) (class ascertainable where definition listed objective characteristics and consumers could "determine whether they are class members").  The classes proposed here are just as precise and objective as those certified in *Zeisel*.  *See* Dkt. #. 36 ¶ 47.

Like the defendant in *Zeisel*, Bear Naked relies on *Hodes v. Van's Intern. Foods*, 2009 WL 2424214 (C.D.Cal. July 23, 2009).  Opp. at 19.  As observed by the court in *Zeisel*, the *Hodes* court did not conclude that the proposed class was not ascertainable but rather ruled that superiority and predominance were not satisfied.  As discussed above, *Red v. Kraft*, also cited by Bear Naked on this point, held that lack of ascertainability by itself does not even support denial of class certification.  Finally, the other cases cited by Bear Naked (Opp. at 20) do not construe the California causes of action at issue here.

Finally, Bear Naked repeatedly argues that certification would be improper because Plaintiffs did not retain receipts for purchased Bear Naked products.  Opp. at 3, 20, 21, 31.

9

The defendant beverage maker in *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D.Cal. 2012),[8] made the same argument, suggesting that class administration would require mini trials to establish whether each class member had made a purchase entitling them to class membership. The court made short thrift of this claim: "This is simply not the case. If it were, there would be no such thing as a consumer class action. There is no requirement that 'the identity of the class members...be known at the time of certification.'" *Id.* at 535.

## III. Rule 23(a)(2) Commonality Is Satisfied, and Common Issues Predominate

### A. Common issues predominate because every product at issue contained ingredients that the federal regulations recognize are synthetic or artificial.

Bear Naked's blends Rule 23(a)(2) commonality[9] and the Rule 23(b)(3) requirement that common questions predominate, arguing neither is satisfied because four ingredients and 11 products are at issue. Bear Naked is wrong.

According to Bear Naked, each ingredient "require[s] vastly different analysis to determine if [it is] 'natural.'" Opp. at 1. To the contrary, and as Bear Naked has not disputed, federal regulations clearly state that each ingredient is synthetic and/or artificial, except for Hexane-processed Soy Ingredients which Bear Naked concedes are not natural. *See* Dkt. 73-1 at 4 and evidence discussed therein. As Plaintiffs previously argued (*see id.* at 4-5) and, again, as Bear Naked has not disputed, these regulations constitute regulatory findings of fact and create a strong evidentiary presumption in Plaintiffs' favor that these

---

[8] While the court ultimately decertified the class in *Ries*, it did so solely on the basis that class counsel was dilatory. *See* 2013 WL 1287416, at *9 (N.D.Cal. March 28, 2013).

[9] As to commonality, Bear Naked repeatedly misrepresents a statement in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2555 (2011), that this requires "a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Like the defendant in *Mazza*, Bear Naked inflates this statement into a mandate that a case be "resolved in 'one stroke.'" The Ninth Circuit rejected this theory, because "commonality only requires a single significant question of law or fact." *Id.* (citing *Wal-Mart*, 131 S.Ct. at 2556).

substances are synthetic and/or artificial. *Morgan,* 298 U.S. at 477.  This common evidence precludes the need for any analysis as whether the subject ingredients are "natural," much less the "vastly different analysis" cited by Bear Naked.

Nor is commonality defeated because the subject products include varying numbers and percentages of synthetic or artificial ingredients.  The overriding common fact is that Bear Naked falsely claimed that every product at issue was "100% Pure & Natural" or "100% Natural."  Just because a particular product contained fewer or a lower percentage of synthetic or artificial ingredients does not render the "100% Natural" claim true as to that product.  Common questions predominate with respect to the subject ingredients.  As for the 11 products, each bore the identical claim "100% Pure & Natural" or "100% Natural," and Plaintiffs make no individual claim as to any product or product subset.

Numerous cases support certification here.  In *Ries*, 287 F.R.D. 523, plaintiffs sought to certify a class of all persons purchasing beverages containing unnatural ingredients while being labeled "All Natural" or "100% Natural."  The court found "several" common questions, including whether use of "All Natural" or "100% Natural" claims to advertise beverages containing allegedly unnatural ingredients violates the UCL, FAL, or CLRA.  The court observed that "[c]ourts routinely find commonality in false advertising cases that are materially indistinguishable from the matter at bar."  *Id.* at 537; *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *13 (N.D.Cal. July 20, 2012) (held as to standing on a motion to dismiss: "That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors").

Commonality was present in *Johnson v. General Mills, Inc*., 276 F.R.D. 519 (C.D.Cal. 2011), where defendants allegedly misrepresented the health benefits of a yogurt product.  Class members' injuries stemmed from "a common core of salient facts" because all allegedly were misled by a common advertising campaign.  *Id*. at 521.  Based on the allegedly fraudulent "unitary message," the court ruled:

The claims brought by Mr. Johnson on behalf of the class under the UCL and the CLRA center around a common question: Did Defendants state a false claim of a digestive health benefit that a reasonable person would have been deceived by, for purposes of the UCL, or would have attached importance to, for purposes of the CLRA? While individualized determinations may be required to calculate damages, those determinations do not warrant decertification. The common question is sufficiently central to satisfy commonality, and, when compared to those aspects of the suit which are individualized, still predominate. (id. at 523).

Bear Naked's cases are inapposite. *Major v. Ocean Spray Cranberries, Inc*., 2013 WL 2558125 (N.D.Cal. June 10, 2013), was not decided on the basis of commonality, and the plaintiff failed to link any product that she purchased to the challenged improper labeling. She bought a blueberry drink product and relied on labeling claims pertaining to blueberries, yet sought to represent a class of purchasers of products that did not include blueberries or claims about blueberries. *Id*. at *4. Here, each product purchased by every class member was labeled "100% Natural" or "100% Pure & Natural," but each contained ingredients recognized by federal regulations as synthetic or artificial. Bear Naked does not dispute this.

*Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573 (E.D.Cal. 2012), is a design defect case involving over 130 motorcycle configurations. That court ruled that because the subject cycles did not share a uniform design, there was no common method of proof to show design defect. *Id*. at 571. This has no bearing here.

Bear Naked argues in a footnote that Plaintiffs lack standing to challenge products they did not purchase. Opp. at 23 n.12. In *Anderson v. Jamba Juice Co*., 888 F.Supp.2d 1000, 1006 (N.D.Cal. 2012), the court held that the purchaser of certain smoothie kits had standing as to purchasers of other kits because "the same alleged misrepresentation was on all of the smoothie kit regardless of flavor; all smoothie kits are labeled "All Natural," and all smoothie kits contain allegedly non-natural ingredients...." *See also Astiana,* 2012 WL 2990766, at *13 (plaintiffs had standing as to ice cream products they did not purchase; "[t]hat the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors"). Thus, common issues predominate.

### B.   No individual analysis of consumer perception or reliance is required

The predominating question in this case is whether Bear Naked's "100% Pure & Natural" and "100% Natural" labeling claims are misleading to a reasonable consumer. *Bruno,* 280 F.R.D. at 532 ("[C]laims under [the UCL,] FAL and CLRA rely on the same objective test, that is, whether members of the public are likely to be deceived" (quotations omitted)).  Well-settled Ninth Circuit law, however, squarely rejects Bear Naked's argument that Plaintiffs' claims require individual analysis of consumer perception and reliance: "California consumer protection laws take an objective approach to the reasonable consumer, not the particular consumer." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D.Cal. 2012) (Huff, J.) (*citing Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *In re Ferrero*, 278 F.R.D. 552, 556 (S.D.Cal. 2011) (Huff, J.) (same); *Stearns*, 655 F.3d at 1020 ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury").  This objective test "renders claims under the UCL, FAL, and CLRA ideal for class certification….For this reason, district courts in California routinely certify consumer class actions…alleg[ing] violations of the CLRA, FAL, and UCL." *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 480 (C.D.Cal. 2012) (citation omitted

Bear Naked nonetheless attempts to manufacture individual issues by focusing on the subjective preferences and expectations of Plaintiffs and class members.  This Court rejected a similar argument in *Ferrero*, 278 F.R.D. at 556, 560.  Like Bear Naked, the defendant there argued that the case "involve[d] class members' individuals expectations, dietary preferences, nutritional knowledge, and imperfect substitutes in the market," citing testimony that one plaintiff "does not regret buying Nutella® and continued using the spread after she learned about its sugar content."  *Id.* at 560.  This Court found that although "the named Plaintiffs' dietary choices may prove relevant to the merits of their case, the Court need not decide the merits of the case at this stage." *Id.*

To the extent Plaintiffs' CLRA claims require a showing of reliance, it can be proven by means of a class-wide inference. *See, e.g.*, *Beck-Ellman*, 283 F.R.D. at 568; *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 WL 4490860, at *5 (C.D.Cal. Sept. 28, 2012); *Chavez*, 268 F.R.D. at 376 ("[R]eliance…may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members."); *see also Johnson v. Gen. Mills, Inc.,* 276 F.R.D. 519, 521-22 (C.D. Cal. 2011) ("[T]he Ninth Circuit [has] explicitly recognized that a classwide inference of reliance for both affirmative misrepresentations and omissions is proper for a CLRA claim.").

Critically, materiality is governed by an objective standard, subject to common proof. *POM Wonderful*, 2012 WL 4490860, at *5. A misrepresentation is material "if a reasonable man would attach importance to its existence or non existence in determining his choice of action in the transaction in question." *In re Tobacco II*, 46 Cal.4th at 327. A "plaintiff is not required to allege that [the] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Kwikset*, 51 Cal.4th at 327; *see also Johnson*, 276 F.R.D. at 523 ("That some consumers purchased the yogurt for other reasons does not defeat a finding that a reasonable man would attach importance to its existence or nonexistence in determining his choice of action.").

Here, a wealth of evidence shows the materiality of Bear Naked's labeling claims. As Bear Naked's corporate representative has confirmed, third party consumer studies commissioned by Bear Naked show the overwhelming materiality of these claims to Bear Naked's consumers and their purchasing decisions. *See* Dkt. #73-1, § II.D, and evidence cited therein. As noted above at n.1, Bear Naked has now produced dozens of additional studies which likewise demonstrate materiality. Case law also confirms the materiality of labels generally. *See, e.g.*, *Kwikset*, 51 Cal.4th at 328; *Williams*, 552 F.3d at 939. Accordingly, a presumption of reliance as to class members is appropriate in this case. For purposes of class certification, it is sufficient that the alleged material misrepresentation or omission "was part of a common advertising scheme to which the entire class was exposed."

*Beck-Ellman*, 283 F.R.D. at 568. Bear Naked engaged in a nationwide marketing campaign, communicating uniformly at the point of purchase with its customers.[10] Bear Naked cannot defeat class certification by claiming that consumers buy its products for a variety of reasons. Rather, the "100% Pure & Natural" and "100% Natural" claims "could have been material to a reasonable person." *See Johns v. Bayer Corp.*, 280 F.R.D. 551, 558 (S.D.Cal. 2012). Ultimately, materiality "is a question of fact to be determined at a later stage." *Id.* at 559.

Bear Naked claims that under *Cohen v. DIRECTV, Inc.*, 178 Cal.App.4th 966 (2009), class members must establish reliance. Opp. at 28. Bear Naked's reading of Cohen is put to rest by *Wolph v. Acer America Corp.*, 272 F.R.D. 477, 488 (N.D.Cal. 2011), which recites the California Supreme Court's seminal *Tobacco II* holding that "relief under the UCL is available without individualized proof of deception, reliance and injury." The *Wolph* court also notes that in *In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145, 158 (2010), the lower California appellate court disagreed with *Cohen* "to the extent the appellate court's opinion might be understood to hold that plaintiffs must show class members' reliance on the alleged misrepresentations under the UCL." Thus, as a matter of law, proof of individual reliance is unnecessary and cannot be grounds for lack of predominance.

## C.     Restitution and damages can be calculated on a class-wide basis

Bear Naked's argument that damages cannot be calculated on a class-wide basis conveniently and entirely ignores Plaintiffs' central theory of relief, which is that class members are entitled to restitutionary disgorgement of Bear Naked's profits on each falsely labeled product that Bear Naked sold to them. Under California law, Plaintiffs are entitled to this measure of relief. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134,

---

10 *See, e.g., Bayer*, 280 F.R.D. at 558; *Zeisel*, 2011 WL 2221113, at *9-10 (emphasizing reliance can be shown through common proof where class members were exposed to the same misleading label representations at the point of sale); *Wiener v. Dannon Co.*, 255 F.R.D. 658, 669 (C.D.Cal. 2009) (misrepresentations made on a label on outside of box "present common proof on the issues of materiality and falsity). Bear Naked's reliance on cases where certification was denied because not every class member was exposed to the alleged misrepresentations is unavailing. *See Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 631-32 (2010) (misrepresentation appeared on less than half of defendant's different mouthwashes); *Mazza*, 666 F.3d at 595 (limited scope of ad campaign at issue made it unreasonable to assume that all class members were exposed to such advertising).

1152 (Cal. 2003) (restitutionary disgorgement of profits made by the wrongdoer on the transactions at issue is permitted, whereas nonrestitutionary disgorgement of profits at large is barred). As established in the Rebuttal Expert Report and Opinion of Gary L. French, Ph.D., these profits are readily calculated on the basis of Bear Naked's financial records, which it already has stipulated to having. This common evidence provides a viable basis for establishing class-wide restitutionary disgorgement relief, and alone supports certification here.

Bear Naked's reply ignores restitutionary disgorgement. It instead limits its argument to other forms of restitution based on a price premium theory, claiming that an individualized analysis is required to calculate what each class member paid for each product. That is wholly irrelevant to restitutionary disgorgement since the focus there is on what profit Bear Naked made from the sale to class members, not the total amount class members paid. In any event, per Bear Naked, the Court should "calculate how much each individual consumer valued the absence of one or more of the challenged 13 [sic][11] ingredients and processes (which varied in amount, by weight, for each product, ranging from 0.01% to a little over 5%)." Opp. at 31. *Colgan*, on which Bear Naked relies, does not stand for this proposition. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 675 (Cal. App. 2d Dist. 2006) (restitution award can be based on substantial evidence concerning differences in the *market value* of products or defendant's gross profits, depending on equitable considerations); *see also Ries*, 287 F.R.D. at 532 (similar). Rather, a court awarding restitution has "'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired." *Wiener*, 255 F.R.D. at 670-71. The fact that consumers purchased products at different prices does not defeat class action treatment. *See id.* "[W]ith regard to Dannon's arguments that consumers purchased the Products at different prices…the amount of damages…does not defeat class

---

[11] Bear Naked presumably meant to reference the **four** ingredients and processes at issue in this case.

action treatment.").[12]   Any difficulties inherent in calculating damages based on products sold at varying prices are readily manageable.

Bear Naked's contentions as to the necessity for individualized damages determinations also are contrary to *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013), decided after the Supreme Court case touted by Bear Naked, *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013).   The *Leyva* court began with the Supreme Court's affirmation in *Wal-Mart* that "individualized monetary claims belong in Rule 23(b)(3)."   *Id.* at 514 (quoting *Wal-Mart*, 131 S.Ct. at 2558).   The *Leyva* court then reiterated the long-standing principle that "'[t]he amount of damages is invariably an individual question and does not defeat class action treatment.'" 716 F.3d at 513-14 (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

*Leyva* also defeats Bear Naked's reliance on *Comcast*.   The district court in *Leyva* denied certification based on its conclusion that the damages inquiry would be highly individualized.   The Ninth Circuit ruled that this result was not supported by *Comcast*, which held that plaintiffs must show that their damages stemmed from the defendant's action that created the legal lability.   716 F.3d at 514 (discussing *Comcast*, 133 S.Ct. at 1435, and its holding that "[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*").

Here, Plaintiffs' legal theory is that Bear Naked harmed class members by falsely labeling its products "100% Natural" and "100% Pure and Natural," which caused class members to purchase or pay more for products.   The economic impact is plain, and the UCL entitles prevailing plaintiffs to restitution (as well as injunctive relief).   *See In re Tobacco II*, 46 Cal 4th at 312.   With respect to restitution, the express terms of the UCL, as well as "the 'concern that wrongdoers not retain the benefits of their misconduct'…has led courts

---

12 *See also Beck-Ellman*, 283 F.R.D. at 569 (Huff, J.) ("The individual nature of damages does not overcome [] predominance…."); *accord Brinker Rest. Corp. v. Superior Court*, 53 Cal.4th 1004, 1054 (Cal. 2012) ("In almost every class action, factual determinations of damages to individual class members must be made.   Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution.").

repeatedly and consistently to hold that recovery under the UCL is available without individualized proof of deception, reliance, and injury." *In re Tobacco II*, 46 Cal 4th at 320 (citation omitted).  As held by the California Supreme Court in *Korea Supply,* 29 Cal.4th at 1152, the UCL "allows any consumer to combat unfair competition by seeking an injunction against unfair business practices.  Actual direct victims of unfair competition may obtain restitution as well."   The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.  *Korea Supply*, 29 Cal.4th at 1148; *see also In re Vioxx Class Cases*, 180 Cal.App.4th 116, 130 (2010) (restitution available under FAL).

Restitutionary damages (*i.e.*, restitution or restitutionary disgorgement) may be calculated on a class-wide basis based upon sales, profits, and prices data.  *See Zeisel*, 2011 WL 2221113, at *10 (accepting plaintiff's proffered method of determining restitution by documents relating to net sales, profits, costs, and retail prices). Where plaintiffs establish liability and damages on a class-wide basis under a restitution theory:

> …the total recovery will then be allocated to individual members…by various means, such as: use of a proof of claim procedure; use of average damages formulae on a per capita basis; individual allocations without proofs of claim when appropriate records or information is available; or use of a cy pres distribution….Once the defendant's total damages liability has been determined [by the trier of fact], then the allocation of that aggregate sum among class members is an internal class action accounting question that does not directly concern the defendant, who in turn is not entitled to demand a jury trial for such allocation process.

2 Newberg on Class Actions § 4:26 (4th ed.) (citations omitted).

Class members would be entitled to restitutionary disgorgement on a common basis, and, as confirmed by Dr. French's rebuttal report, damages here are readily established.  As Dr. French explains, there are several alternative common damage calculations.  French Report ¶¶ 11-22.  Bear Naked already has stipulated that it generally maintains records reflecting (a) the number of subject products ("Products") sold; (b) the dollar amount received for each sold Product; and (c) Bear Naked's gross operating profits from each Product.  Dkt. #73-19 ¶ 2.  Using this common data from Bear Naked's records, besides

18

calculating restitutionary disgorgement profits on the transactions at issue as described above (*id.* ¶¶ 21-22), total net sales can be calculated across all products and across the class period.  French Report, ¶¶ 11-12.  The return of this sum to class members would be partial restitution as opposed to full restitution, since they paid retail prices for the subject products rather than the wholesale prices charged by Bear Naked.  *Id.* ¶ 12.  If the Court determined class members should be given full restitution, i.e., the sum paid by them for the subject products, this would also be a common calculation.[13]  *Id.* ¶ 16.

Finally, Class members also are entitled to common injunctive relief, and *Comcast* has no bearing on that claim.   Plaintiffs seek removal of the false "100% Natural" and "100% Pure and Natural" labeling from the subject products.  FCAC ¶ 6.  Bear Naked's corporate representative testified that he did not see why this labeling would be removed, and he was not aware of any discussions about removing these labels.  *See* Dkt. #89-2 at 174.

## IV.   Slight And Immaterial Differences Between Plaintiffs And Class Members Do Not Destroy Typicality

Bear Naked argues against typicality based on irrelevant differences between Plaintiffs and class members.  Typicality is "satisfied when each class member's claim arises from the same course of events, and […] makes the same legal arguments to prove the defendant's liability.  *Armstrong v. Davis*, 275 F.3d. 849, 868 (9th Cir. 2001); *Simpson v. Fireman's Fund Ins. Co*., 231 F.R.D. 391, 396 (N.D.Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiff's legal theory,' not the injury caused to the plaintiff.").   Moreover, "individual experience with a product is irrelevant" because "the injury under the UCL, FAL and CLRA is established by an objective test."  *Bruno*, 280 F.R.D. at 534.  Typicality is satisfied here because Plaintiffs and

---

[13] In the alternative, if the Court concludes that class members are entitled to a price differential, Dr. French also provides a model for this common calculation.  *Id.* ¶ 20.

the class assert the same claim arising from the same course of conduct -- that Bear Naked falsely marketed its products as "100% Natural" and/or "100% Pure and Natural."[14]

Bear Naked erroneously contends that Plaintiff Knowles is atypical because he bought its products "for reasons wholly unrelated to the all-natural label." *See* Opp. at 38.  Reliance, however, "is proved by showing that the defendant's misrepresentation [] was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  Plaintiffs need not show that the misrepresentations were the only cause, or "even the predominant or decisive factor," influencing their conduct.  *Id*.  Even if it were true that Class members relied to a greater or lesser extent on Bear Naked's "100% Pure & Natural" and/or "100% Natural" representations, as noted above, "the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular state of mind." *See Ries,* 287 F.R.D. at 539.  The point is that Mr. Knowles relied on the alleged misrepresentations.[15]  That he may have considered other factors does not make him atypical.  *Bruno*, 280 F.R.D. at 534 (rejecting argument that plaintiff was atypical  because she considered other facts in making purchases); *Johns*, 280 F.R.D. at 557 (same); *Ries,* 287 F.R.D. at 539 (slight variations in motivations for purchasing products is "inherent in consumer class actions.")

Next, Bear Naked contends that Plaintiff Thurston is atypical because she was advised by her son's doctor to buy natural foods.[16]  Ms. Thurston never testified that the medical advice was the sole reason she purchased all-natural products. She testified she avoided non-natural foods because she didn't want artificial ingredients in her body and was concerned about her children's health.  Ex. (Thurston) at 48: 3-6. Ms. Thurston's claims are

---

[14] Courts find typicality where false advertising claims are identical to class claims.  *In re Google Ad Words Litig.*, 2012 WL 28068, at *12 (N.D.Cal. Jan 5, 2012); *In re Ferrero Litig.*, 278 F.R.D. at 559; *Johns*, 280 F.R.D.  at 557.

[15] Knowles Tr. at 139: 9-16; 140: 7-141: 11; 142: 21-143: 14

[16] Bear Naked's reliance on *Martinez v. Welk Grp., Inc.*, 2012 WL 2888536 (S.D. Cal. July 13, 2013) is misplaced.  In *Martinez*  the court held that there were other unique defenses as to plaintiff's breach of contract claims that rendered him atypical of the class outside of his "hypersensitivity".  *Id.*

20

"reasonably co-extensive with those or absent class members." *See Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at * 8 (N.D. Cal. 2011) (rejecting argument that plaintiff's medical condition made him atypical where case was about food mislabeling).[17]

## V.   Plaintiffs' Testimony Shows They Are Adequate

Bear Naked's adequacy arguments also should be rejected.[18]  As discussed above, Plaintiffs bought foods from each of Bear Naked's products lines, bearing identical representations; thus, their claims are sufficiently "co-extensive with those claims of the class [they] seek to represent." *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Further, while Plaintiffs have sufficient knowledge of the case, most courts find the plaintiff's knowledge about the minutia case irrelevant for adequacy purposes.  *See, e.g., In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 120 (C.D.Cal. 2007) (noting lack of "Ninth

---

[17] Bear Naked raises no specific argument with respect to Ms. Babic and typicality. Additionally, Plaintiffs are not atypical because they did not buy all the products alleged in the complaint. Plaintiffs bought from each of the product lines at issue, unlike in the case Bear Naked relies on. *See Major v. Ocean Spray Cranberries, Inc.*, 2013 WL 2558125, at * 4 (N.D. Cal. June 10, 2013).  That different Bear Naked products may ultimately have different ingredients does not render Plaintiffs atypical when "[p]laintiffs are challenging the same basic mislabeling practice across different product flavors."  *Astiana*, 2012 WL 2990766, at *13.

[18] All of Bear Naked's cases are distinguishable. *See, e.g., See e.g. Moheb v. Nutramax Labs., Inc.*, 2012 WL 6951904, at *5 (C.D.Cal. Sept. 4, 2012) (plaintiff inadequate because she had "extremely limited experience" with the product); *Ogden v. Americredit Corp.*, 225 F.R.D. 529, 533-36 (N.D. Tex. 2005) (plaintiff inadequate in ERISA case because her only knowledge was "that she was involved in a bad business deal"); *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D.Cal. 1994) (repeat litigant in *securities class action* subjected him to unique defenses concerning reliance on market when purchasing stock); *Burkhalter Travel Agency v. Specialty Food Distributors*, Inc., 141 F.R.D. 144, 154 (N.D.Cal. 1991) (inadequate institutional plaintiff in *antitrust* case because company president could not identify defendants and didn't demonstrate understanding of own company's pricing policies); *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 316 (E.D.Va. 2007) (adequacy inquiry was "particularly searching" in *securities fraud context* because of the PSLRA); *In re Chiron Corp. Sec. Litig.*, 2007 WL 4249902, at *12 (N.D. Cal. Nov. 30, 2007) (concluding repeat litigants in *securities* class actions could result in institutional investor  having fewer resources available); *Kelly v. Mid-Am. Racing Stables*, 139 F.R.D. 405, 409-10 (W.D. Okla. 1990) (plaintiff inadequate in *securities* class action because no knowledge basic elements of the case); *Butterworth v. Quick & Realty, Inc.*, 171 F.R.D. 319, 323(M.D. Fla. 1997) (same); *Krim v. PCorder.com, Inc.*, 210 F.R.D. 581, 588-589 (W.D. Tex. 2002) (same); *Beck v. Status Game Corp.*, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995) (same); *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1214 (D. Minn. 1987) (same); *Rolex Emps. Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 666 (D. Or. 1991) (same).

---

Plaintiffs' Reply Memorandum in Support of Their Motion for Class Certification; 11-cv-02890-H (BGS)

Circuit decisions imposing […] a [knowledge] requirement"). The few courts considering the plaintiff's knowledge held it is a low threshold.  *See, e.g., Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D.Cal. 2004) (proposed representative "will be deemed inadequate only if she is 'startlingly unfamiliar' with the case"); *Hodges v. Akeena Solar, Inc.,* 274 F.R.D. 259, 267 (N.D.Cal. 2011) (same).  Simply because Plaintiffs could not answer technical questions or questions calling for legal conclusions does not render them inadequate.  Here, Plaintiffs have shown a general understanding of the case and their duties and responsibilities as class representatives.[19]

Relying on quotes taken out of context and from courts outside the Ninth Circuit, Bear Naked argues that Plaintiffs' relationships with their attorneys and their participation in other class action suits makes them less credible and inadequate.  *Holloway v. Full Spectrum Lending*, 2007 WL 7698843, at *8 (C.D.Cal. June 26, 2007), is to the contrary.  Nor is prior involvement in other class actions a basis for finding a plaintiff inadequate.  *Bruno*, 280 F.R.D. at 534.  Indeed, courts have recognized that "[r]epeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions." *Id.* at 534 (quoting *Holloway*, 2007 WL 7698843, at *8).

Bear Naked has failed to present evidence upon which to find that the named plaintiffs "are so lacking in credibility that they are likely to harm their case."[20]  *Ries*, 287 F.R.D. at

---

[19] Ex. 3 at 121: 17-20, 186: 6-14, 192: 17-193: 14; Ex. 1 at 168:13-17, 170:6-18, 173:14-23; Ex. 2 at 106: 2-25, 119: 3-9.

[20] Bear Naked attacks Plaintiff Babic's credibility because he does not consume all natural foods 100% of the time.  It is sufficient that Mr. Babic testified he relied on the "All-Natural" representation in making his purchases.  Ex. 3 at 198:5-19. Nonetheless, he was so consistent in his testimony about his efforts to make healthy food choices that even Defense counsel took note of it.  *Id.* at 60:3-6  ("I take it from discussing with you the [food] products you purchase […] you try [to] look for healthy products when you purchase food products."). Further, the fact that Mr. Babic could not remember the "more obscure" products he buys after responding to hours of defense counsel's extensive questioning about his eating habits does not make him less credible or inadequate. *Id.* at 91:11-95:4, 199:14-200:4.

Bear Naked suggests that Plaintiff Thurston is not credible because her deposition testimony differed slightly from her interrogatory responses. However, any such minor inconsistencies "are inherent in deposition testimony and the result of confusion rather than lack of credibility." *Alonzo v. Maximnus, Inc.*, 275 F.R.D. 513 (C.D.Cal. 2011) (finding adequacy

1  540. In any event, any such credibility problems "do not automatically render a proposed

2  class representative inadequate." *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 637-38

3  (N.D.Cal. 2010).   Despite Bear Naked's assertions, Plaintiffs' testimony shows they are

4  adequate.[21]

5  **VI.   The Court Should Certify A Nationwide Class**

6         Where, as here, plaintiffs show that California law should apply because the conduct

7  at issue emanates from California (*see* Dkt. #73-1 at 12), the burden shifts to defendants to

8  show that foreign law should apply. The court in *Bruno* explained:  "the court presumes

9  California law controls unless and until *defendants show* that choice of law problems

10 render…claims inappropriate for class treatment" is well entrenched." *Id.* at 546 (emphasis

11 added).   The court rejected the argument that *Mazza*, 666 F.3d 581, required that plaintiff

12 demonstrate that another state's or states' laws apply to a nationwide class, pointing out that

---

despite inconsistencies in deposition testimony).  Thurston has since submitted an amended interrogatory correcting her previous interrogatory response. *See* Ex. 2; Ex. 10.  It is not clear from the brief two sentences Bear Naked devotes to Plaintiff Knowles' inadequacy on what grounds Bear Naked asserts he is lacking in credibility, if at all.  To the extent that Bear Naked has failed to raise any serious adequacy argument with respect to Mr. Knowles, it is significant to note that "the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.3 (9th Cir. 2001).

[21] Plaintiff Babic has been actively involved in the case, reviewing the complaint and even searching his pantry to provide Bear Naked with information about his eating habits.  Ex. 3 at 19:3-8; 22:6-19; 192: 17-193:14.  He understands he is "speaking for the class," that he was seeking damages for the class, and believes he was injured as a result of purchasing Bear Naked products because he paid a "price premium for a product that touted to be all natural, and it wasn't." *Id.* at 182:15-17, 186:12-14; 187: 23-188:2.  Plaintiff Knowles testified that he was challenging the use of glycerin in all natural labeled Bear Naked products because he believes glycerin to be artificial and not natural.  Ex. – (Knowles) at 99:14, 100:1-2, 101:10-14.  In addition, when Mr. Knowles found out Bear Naked granola was not natural and contained glycerin, he undertook independent research on the internet about the ingredient. *Id.* at 101:24-102:18. He repeatedly showed he was familiar with the central claims against Bear Naked and understood his role as a class representative. *Id.* at 172:20-23, 177:22-178: 5, 183:16-21.

Plaintiff Thurston testified that with this suit she is challenging the use of tocopherols which she states "is a preservative" that she believes to be unnatural.  Ex. 2 at 81:7-20. Ms. Thurston also was able to point out the ingredients on the Bear Naked chocolate granola that she believed were unnatural, such as the "hexane-processed soy ingredient" and the "tocopherols." *Id.* at 68:12-69:17.

23

*Mazza* quoted a California Supreme Court case to the effect that defendants bear this burden. *Id.* at 546 ("[T]he burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims" (citation omitted). Moreover, the court observed that *Mazza* did not overrule *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010), which held that California's choice-of-law analysis requires defendants to demonstrate that there is a material difference between California and other states' laws. *See also POM Wonderful*, 2012 WL 4490860, at *4 (where defendant submitted a chart of each state's consumer protection laws but made no attempt to show that a *true* conflict actually existed, it "fail[ed] to carry its burden to demonstrate that the interests of any foreign jurisdiction outweigh California's interest in applying its own consumer protection laws to the facts of this case.")

Bear Naked fails to carry its burden of showing that California law should not apply nationwide. Bear Naked makes no showing that the interests of other states outweigh California's interest in having its law apply nationwide. Under *Bruno* and *Pom*, the Court accordingly should not even consider Bear Naked's choice of law argument, but rather should apply California law nationwide.

If the Court reaches the substance of Bear Naked's choice of law argument, it should conclude that the law on express warranty in many states is similar to California's law on this claim. [22] Accordingly, this Court should certify a class covering, at the very least, those jurisdictions.

---

[22] *See* Dkt. #50 at 15 (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Cal. Ct. App. 1986))(California requires the existence of a warranty and a breach of that warranty which has proximately caused plaintiff's injury); *Omega Engineering, Inc. v. Eastman Kodak Co.*, 30 F.Supp.2d 226, 246 (D. Conn. 1998)(same); *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 90 (Wyo. 1989) (same); *Price v. Chevrolet Motor Div. of Gen. Motors Corp.*, 765 A.2d 800, 809 (Pa.Super. 2000)(same); *Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 310 (Ind. Ct. App. 1989)(same); *Schmaltz v. Nissen*, 431 N.W.2d 657, 660-61 (S.D. 1988)(same); *Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 2013 Tex. App. LEXIS 2353, at *40 (Tex. Ct. App. Mar. 8, 2013)(same); *Fox v. Sherwin-Williams Co.*, 2010 Mich. App. LEXIS 33, at *19-20 (Mich. Ct. App. Jan 7, 2010)(concurring and dissenting in part)(same).

## VI.    Conclusion

Plaintiffs respectfully request the Court certify this case as a class action, appoint them as class representatives, and appoint the undersigned as Class Counsel.

Dated: July 15, 2013

**FEINSTEIN DOYLE PAYNE
   & KRAVEC, LLC**

By:   s/Joseph N. Kravec, Jr.
     Joseph N. Kravec, Jr. (*pro hac vice*)

Wyatt A. Lison (*pro hac vice*)
429 Forbes Avenue, 17th Floor
Pittsburgh, PA 15219
Phone:  (412) 281-8400
Fax:  (412) 281-1007
jkravec@fdpklaw.com
wlison@fdpklaw.com

Michael D. Braun (#167416)
**BRAUN LAW GROUP, P.C**.
10680 W. Pico Blvd., Suite 280
Los Angeles, CA 90064
Phone:  (310) 836-6000
Fax:   (310) 836-6010
service@braunlawgroup.com

Janet Lindner Spielberg (#221926)
**LAW OFFICE OF JANET
   LINDNER SPIELBERG**
12400 Wilshire Blvd., Suite 400
Los Angeles, CA 90025
Phone:  (310) 392-8801
Fax:   (310) 278-5938
jlspielberg@jlslp.com

Rosemary M. Rivas (#209147)
Danielle A. Stoumbos (#264784)
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Phone: (415) 398-8700
Fax: (415) 398-8704
rrivas@finkelsteinthompson.com
dstoumbos@finkelsteinthompson.com

25

D. Joshua Staub (State Bar No. 170568)
**LAW OFFICE OF D. JOSHUA STAUB**
PO Box 1914
Santa Monica, CA 90406-1914
Phone: (310) 929-5269
Fax: (310) 496-0702
djstaub@hotmail.com

*ATTORNEYS FOR PLAINTIFFS*

Plaintiffs' Reply Memorandum in Support of Their Motion for Class Certification; 11-cv-02890-H (BGS)

# PROOF OF SERVICE

STATE OF PENNSYLVANIA          )
                               )ss.:
COUNTY OF ALLEGHENY            )

I am employed in the county of Allegheny, Commonwealth of Pennsylvania, I am over the age of 18 and not a party to the within action; my business address is The Allegheny Building, 17th Floor, 429 Forbes Avenue, Pittsburgh, Pennsylvania 15219.

On July 15, 2013 a copy of the within document(s):

## PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION

**[X]   BY ELECTRONIC TRANSMISSION USING THE COURT'S ECF SYSTEM:**  I caused the above document(s) to be transmitted by electronic mail to those ECF registered parties listed on the Notice of Electronic Filing (NEF) pursuant to Fed.R.Civ.P. 5(d)(1) and by first class mail to those non-ECF registered parties listed on the Notice of Electronic Filing (NEF).  *"A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing.  The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed.R.Civ.P. 5(d)(1).  A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se."*

Executed on July 15, 2013, at Pittsburgh, Pennsylvania.


                    s/Joseph N. Kravec, Jr.
                    Joseph N. Kravec, Jr.