1

2

3

4

5

6

7

8         **UNITED STATES DISTRICT COURT**

9         **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CHANEE THURSTON, LAWRENCE            CASE NO. 3:11-CV-02890-H
     G. KNOWLES, III, and MILAN          (BGS)[1]
12   BABIC, on behalf of themselves and
     others similarly situated,          **ORDER GRANTING IN**
13                                        **PART AND DENYING IN**
                              Plaintiffs, **PART PLAINTIFFS'**
14        vs.                            **MOTION FOR CLASS**
                                         **CERTIFICATION**
15   BEAR NAKED, INC.,

16                              Defendant.

17

18        On April 15, 2013, Plaintiffs Chanee Thurston, Lawrence G. Knowles III, and

19   Milan Babic ("Plaintiffs") filed a motion for class certification.  (Doc. No. 73.)  On

20   June 17, 2013, Defendant Bear Naked, Inc. ("Bear Naked" or "Defendant") filed its

21   opposition to Plaintiffs' motion for class certification. (Doc. Nos. 89, 91.) On July 15,

22   2013, Plaintiffs filed a reply.  (Doc. No. 97.)  On July 24, 2013, with leave of Court,

23   Defendant filed a sur-reply.  (Doc. No. 106.)  The Court held a hearing on the motion

24   on July 26, 2013.  David Bower, Michael Braun, Rosemary Rivas, and Joseph Kravec

25   appeared on behalf of Plaintiffs.  Kenneth Lee and Kelly Morrison appeared on behalf

26

27        [1] This is the lead case of consolidated case 11-CV-2985-H (BGS).  (Doc. No. 34.) This
28   Order applies to both cases.

of Defendant.  For the following reasons, the Court grants in part and denies in part Plaintiffs' motion for class certification.

### Background

This is a consumer class action lawsuit brought on behalf of people who have purchased certain Bear Naked food products.  Plaintiffs claim the products contained deceptive and misleading labeling and advertisements.  (Doc. No. 36 ("Complaint") ¶ 1-2.)  Plaintiffs allege that Defendant packaged, marketed, distributed, and sold Bear Naked food products as being "100% Pure & Natural" or "100% Natural" (the natural representations).  (Id.)  Plaintiffs claim certain ingredients or processes used to manufacture Bear Naked food products are not "natural," but rather are synthetic.  (Id.) Plaintiffs identify 11 Bear Naked products that include the natural representations.  (Id. ¶ 39.)  Defendant contends that consumers and producers have no uniform definition of natural and, accordingly, the natural representations are not materially false.

Plaintiffs filed this lawsuit on September 21, 2011.  (Doc. No. 1.)  Plaintiffs seek class certification for the following causes of action: violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770 et seq.; breach of express warranty; and quasi-contract.  (Complaint ¶ 4.)

The named Plaintiffs claim that they purchased Bear Naked products at least in part because of the natural representations, and that they would have paid less for Bear Naked products or purchased other products had they believed those representations were false.  (Complaint ¶¶ 7-9; Doc. No. 98-2 at 142:3-5, 153:16-25; Doc. No. 98-3 at 75:1-25, 100:10-11; Doc. No. 101-1 at 169:10-21.)  Plaintiffs seek to certify a nationwide class, or alternately multi-state or state-wide classes, for customers who purchased any of the identified Bear Naked products on or after September 21, 2007 (the "class period").  Defendant opposes class certification.

**Discussion**

**I.     Class Certification Standards**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (citing Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). To qualify for the exception to individual litigation, the party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rules of Civil Procedure 23(a) and (b). Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308-09 (9th Cir. 1977). Rule 23(a) requires Plaintiffs to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

The Court considers "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Wal-Mart Stores, Inc., 131 S. Ct. at 2551. The district court must conduct a rigorous analysis to determine whether the prerequisites of Rule 23 have been met. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc., 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160). "The district court is required to examine the merits of the underlying claim in this context [class certification], only

inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 981 (9th Cir. 2011) (citations omitted). Rather, the Court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. <u>See</u> Fed. R. Civ. P. 23 advisory committee notes. The Court must consider the merits if they overlap with the Rule 23 requirements. <u>Ellis</u>, 657 F.3d at 981 (citing <u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2551-52; <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 509 (9th Cir. 1992)). If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, certification should be refused. <u>Falcon</u>, 457 U.S. at 161.

## II.   California Class

For the following reasons, the Court certifies a class of California consumers who purchased Bear Naked products that contain hexane-processed soy ingredients and were labeled with the natural representations.

### A.   Ascertainability

Defendant contends that the Court may not certify any class because of the administrative difficulty of identifying class members. "Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." <u>Wolph v. Acer Am. Corp.</u>, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (internal quotation omitted). "The class definition must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member." <u>Id.</u> The proposed class definition here meets that standard, and Defendant does not identify any portion of the class definition that it believes to be vague or confusing. Indeed, the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the products purchased, there is no concern that the class includes individuals who were not exposed to the

misrepresentation.

Defendant's concern that the Court will have difficulty identifying members of the class is unavailing.  Because Defendant does not have records of consumer purchases, and potential class members will likely lack proof of their purchases, Defendant argues that the Court will have no feasible mechanism for identifying class members and will have to pursue proof individual to each class member.  However, "[t]here is no requirement that "the identity of the class members . . . be known at the time of certification." Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 536 (N.D. Cal. 2012); Wolph, 272 F.R.D. at 482.  If class actions could be defeated because membership was difficult to ascertain at the class certification stage, "there would be no such thing as a consumer class action." Ries, 287 F.R.D. at 536.  As long as the class definition is sufficiently definite to identify putative class members, "[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification." Id.

Defendant further argues that the class must "be defined in such a way that anyone within it would have standing." Burdick v. Union Sec. Ins. Co., No. 07-4028, 2009 WL 4798873, at *4 (C.D. Cal. Dec. 9, 2009).  Defendant contends that the class definitions include members who were either unexposed to the alleged misrepresentations or whose purchasing decisions were unaffected by the representations and accordingly suffered no injury.  In the Ninth Circuit, "standing is satisfied [under the UCL and FAL] if at least one named plaintiff meets the requirements. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1021 (9th Cir. 2011); see also Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 328-29 (2011) (holding alleged false information on labels sufficient for standing for UCL and FAL claims). Here, Plaintiffs contend that they were induced to purchase Defendant's products at least in part because of Defendant's representations, and that otherwise they would have paid less or purchased other products.  (Complaint ¶¶ 7-9; Doc. No. 98-2, Dep.

of L. Knowles at 153:16-154:5; Doc. No. 98-3, Dep. of C. Thurston at 75:24-25; Doc. No. 101-1, Dep. of M. Babic at 169:10-15); <u>see</u> <u>Mazza v. Am. Honda Motor Co., Inc.</u>, 666 F.3d 581, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims . . . . To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an 'injury in fact.'); <u>In re Google AdWords Litig.</u>, No. 5:08-CV-3369, 2012 WL 28068, at *10 (N.D. Cal. Jan. 5, 2012) ("The requirement of concrete injury is satisfied when the Plaintiffs and class members in UCL and FAL actions suffer an economic loss caused by the defendant, namely the purchase of defendant's product containing misrepresentations.").

Likewise, under the CLRA, "[c]ausation, on a classwide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." <u>Stearns</u>, 655 F.3d at 1022. The materiality of Defendant's alleged misrepresentations and the inference of reliance satisfy the "actual injury" requirement of the CLRA and alleviate any concerns regarding standing. <u>See</u> <u>id.</u> The Court concludes that the proposed class is sufficiently ascertainable to merit certification.

**B. Numerosity**

Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility," rather the inquiry focuses on the difficulty or inconvenience of joining all members of the class. <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913-14 (9th Cir. 1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. <u>Gay v. Waiters' & Dairy Lunchmen's Union</u>, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977).

Here the parties estimate that Bear Naked has sold millions of Bear Naked products in the last four years in the United States, representing thousands of products

sold in each state with labels including the alleged misrepresentations. (Doc. No. 73-19 ¶ 3.) Defendant does not dispute the numerosity of any of the proposed classes. Accordingly, the Court concludes that Plaintiffs have satisfied this requirement.

## C.   Typicality

Rule 23(a)(3) requires the representative party to have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." Rodriguez, 591 F.3d at 1124 (citations omitted). The typicality requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Hanon, 976 F.2d at 508 (citations omitted).

Defendant argues that the differences in Plaintiffs' perceptions and knowledge about Bear Naked products, as well as differences in their preferences and reasons for purchasing Bear Naked products, render them atypical of the proposed classes. "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiffs' legal theory,' not the injury caused to the plaintiff." Simpson v. Fireman's Fund Ins. Co., 231 F.R.D. 391, 396 (N.D. Cal. 2005). Moreover, "individual experience with a product is irrelevant" because "the injury under the UCL, FAL and CLRA is established by an objective test. Specifically, this objective test states that injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation, that is, in a manner such that 'members of the public are likely to be deceived.'" Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 534 (C.D. Cal. 2011).

Plaintiffs' allegations include point-of-purchase loss. "Plaintiffs and class

members . . . were all exposed to the same alleged misrepresentations on the packages and advertisements." Johns v. Bayer Corp., 280 F.R.D. 551, 557 (S.D. Cal. 2012). Contrary to Defendant's assertion, Plaintiffs testified that they would not have purchased the Bear Naked products or would have paid less for the Bear Naked products had she known it contained artificial ingredients. Thus, Plaintiffs allege to have suffered the same type of economic injury and seek the same type of damages as the putative class members; namely, a refund of all or part of the purchase price. As such, Plaintiffs' interests "align[ ] with the interests of the class." Wolin v. Jaguar Land Rover North America, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). Plaintiffs need not show that the representations were the only cause, or "even the predominant or decisive factor," influencing their conduct. In re Tobacco II Cases, 46 Cal. 4th 298, 326-27 (2009). That Plaintiffs may have considered other factors in their purchasing decisions does not make them atypical. Bruno, 280 F.R.D. at 534 (rejecting argument that plaintiff was atypical because she considered other facts in making purchases). Moreover, the fact that Plaintiffs may also purchase unhealthy or otherwise artificial foods says nothing about whether they purchased Bear Naked products specifically because they were supposedly healthy and natural. Plaintiffs and class members share the same interests in determining whether Bear Naked products were deceptively advertised and labeled.

Plaintiffs seek to show misrepresentations common to the identified Bear Naked products and thus common to members of the putative class. Regardless of whether they are "substantially identical," Plaintiffs' "claims are reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020. The Court therefore concludes that Plaintiffs' claims satisfy the typicality requirement under Rule 23(a).

///

///

///

///

11cv2890

### D.    Adequacy of Representation

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003) (citing Hanlon, 150 F.3d at 1020).

The named Plaintiffs meets the two-prong test in Staton.  Id.  Plaintiffs and the proposed class share the same claims and interest in obtaining relief, and they are vigorously pursuing relief on behalf of the proposed class.  Plaintiffs and the class were exposed to the same alleged misrepresentation on Bear Naked product labels, and they assert that they would have either paid less or purchased other products had they not been deceived.  Plaintiffs' interests are therefore coextensive with the proposed class. Defendant fails to show that Plaintiffs are so uninterested in or uniformed about the case so as to be inadequate representatives of the class.  See Moeller v. Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004) ("The threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim[], and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case." (citation omitted)).  Plaintiffs are sufficiently familiar with their claims to adequately represent the members of the proposed class.

Plaintiffs would adequately represent the class.  Additionally, the interim co-lead counsel have experience in prosecuting consumer fraud and warranty class actions. (Doc. No. 73-1 at 16.)  The Court concludes that Plaintiffs and their counsel are adequate representatives of the proposed classes.

///

///

///

**E.     Commonality and Predominance**

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." <u>Wal-Mart</u>, 131 S. Ct. at 2551.  The "claims must depend on a common contention" and "[t]hat common contention ... must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>  Commonality is satisfied by "the existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon</u>, 150 F.3d at 1019-20.  All questions of fact and law need not be common to satisfy the rule. <u>Id.</u>     Rather, in deciding whether plaintiffs share a common question with the prospective class, the named Plaintiffs must share at least one question of fact or law with the prospective class. <u>Rodriguez</u>, 591 F.3d at 1122 (citing <u>Baby Neal for & by Kanter v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994)); <u>see</u> <u>Mazza v. American Honda Motor Co., Inc.</u>, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is appropriate under Rule 23(b)(1), (2) or (3). <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614 (1997).  Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." <u>Hanlon</u>, 150 F.3d at 1022 (internal quotations omitted).  Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); <u>Hanlon</u>, 150 F.3d at 1022.  In evaluating predominance and superiority, the Court must consider: (1) the extent and nature of any pending litigation commenced by or against the class involving the same

issues; (2) the interest of individuals within the class in controlling their own litigation; (3) the convenience and desirability of concentrating the litigation in a particular forum; and (4) the manageability of the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D); <u>Amchem</u>, 521 U.S. at 615-16.

The predominance analysis under Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2).  The analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."  <u>Hanlon</u>, 150 F.3d at 1022.  In contrast to Rule 23(a)(2), "Rule 23(b)(3) focuses on the relationship between the common and individual issues." <u>Id.</u>  Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all members of the class in a single adjudication.  <u>Id.</u>  To satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement.  The predominance inquiry under Rule 23(b) is more rigorous as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 623-24.

**1.   Consumer Protection**

Plaintiffs seek to certify a class of all purchasers of Bear Naked products during the class period that contained one or more of the challenged ingredients and were labeled "100% Pure & Natural" or "100% Natural."  Plaintiffs allege causes of action under California's consumer protection laws.  Defendant contends that the nature of Defendant's representation precludes it from class treatment based on issues with commonality and predominance.  Based on the record, the Court declines to certify the broad class Plaintiffs propose.  The Court certifies a narrower class for products labeled "100% Natural" or "100% Pure & Natural" that contain hexane-processed soy ingredients.

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof.

Code § 17200. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Id. § 17500. California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Under these California statutes, conduct is deceptive or misleading if it is likely to deceive an ordinary, reasonable consumer. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable" under the UCL, FAL, or CLRA. Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005).

For class action purposes, relief under any of the UCL's three prongs is available "without individualized proof of deception, reliance and injury," so long as the named plaintiffs demonstrate injury and causation. Mass. Mut. Life Ins. Co. v. Sup. Ct., 97 Cal. App. 4th 1282, 1289 (2002); Tobacco II, 46 Cal. 4th at 326-27. "The UCL and false advertising law are both intended to preserve fair competition and protect consumers from market distortions," meaning that "in the eyes of the law, a buyer forced to pay more than he or she would have is harmed at the moment of purchase." Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 331, 334 (2011). "A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." Tobacco II, 46 Cal. 4th at 326-27. "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." Id. Similarly, relief under the CLRA is available to "any consumer who suffers any damage as a result of the use or

1    employment" of any unlawful "method, act, or practice."  Cal. Civ. Code § 1780(a).

2    Such damage may be shown "through the materiality" of an alleged omission.  See

3    Parkinson v. Hyundai Mot. Am., 258 F.R.D. 580, 595-96 (C.D. Cal. 2008).

4          Plaintiffs contend that the materiality of Defendant's misrepresentation yields

5    an inference of reliance, creating common issues that predominate among the class.

6    In evaluating whether common issues predominate, "the district court is required to

7    make a rigorous analysis of the case before it. . . . Frequently, that 'rigorous analysis'

8    will entail some overlap with the merits of the plaintiff's underlying claim."  Stearns,

9    655 F.3d at 1019 n.7 (9th Cir. 2011) (quoting Wal-Mart, 131 S. Ct. at 2548); see also

10   Ellis, 657 F.3d at 981 ("[A] district court must consider the merits if they overlap with

11   the Rule 23[] requirements.").  Here, for the majority of the challenged ingredients,

12   Plaintiffs make an inadequate showing of materiality to infer reliance by the class.

13         Defendant contends that Plaintiffs fail to show that either consumers or food

14   producers have any kind of uniform definition of natural that affects purchasing

15   decisions, such that the natural representation was not materially false.  (See Doc. No.

16   91 at 4-8 (surveying Defendant's evidence showing disparity in definitions of "natural"

17   in food industry and among named plaintiffs).)    Defendant provides evidence

18   demonstrating that food producers, consumers, and the Food and Drug Administration

19   all fail to define "natural" in any definite manner.  (Id.)  Defendant represents that its

20   challenged products contain as little as 0.003% and, at most, 5% by weight the

21   challenged ingredients.  (See  Doc. No. 91-2.)  Defendant presents evidence that many

22   consumers would still view a product as a "natural food product" despite those amounts

23   of allegedly artificial ingredients.  (See Doc. No. 91-4 at K0000384.)  Three of the four

24   challenged ingredients are even allowed in certified "organic" goods, see 7 C.F.R. §,

25   205.605(b),[2] and consumers, including named plaintiffs, often equate "natural" with

26

27   _____

28         [2] They are glycerin, tocopherols, and potassium carbonate.  Hexane-processed
     ingredients are not permitted in certified organic goods.

"organic" or hold "organic" to a higher standard. (See Doc. No. 89-2, Dep. of Kashi Company and Bear Naked, Inc. at 112:16-20, 113:19-25; Doc. No. 89-7, Dep. of C. Thurston at 54:15-17 ("A natural product doesn't contain additives. It's organic, maybe, possibly. It's natural."); Doc. No. 91-1 ¶ 74; Doc. No. 91-4 at K0000374 (marketing survey showing differing definitions of "natural," including "close to organic").) Additionally, Bear Naked includes ingredient lists in the nutrition facts, and states on the labels of several of the challenged products that the products include processed ingredients. (See Doc. Nos. 89-8, 89-9, 89-22.)

Plaintiffs fail to sufficiently show that class members would view the presence of three of the challenged ingredients as violative of the natural representations; specifically, the ingredients permitted in certified "organic" foods. "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." Stearns, 655 F.3d at 1022 (quoting In re Vioxx Class Cases, 103 Cal. Rptr. 3d 83, 94 (2009)). At this time, Plaintiffs fail to sufficiently show that "natural" has any kind of uniform definition among class members, that a sufficient portion of class members would have relied to their detriment on the representation, or that Defendant's representation of natural in light of the presence of the challenged ingredients would be considered to be a material falsehood by class members. See Lavie, 105 Cal. App. 4th at 508 (stating advertisements are deceptive only if a "significant portion" of reasonable consumers might be misled). Even the named plaintiffs disagree about the definition of natural and over whether they would have purchased Bear Naked products regardless of the presence of the challenged ingredients. (See, e.g., Doc. No. 89-5, Dep. of M. Babic at 116:4-19, 147:10-13; Doc. No. 89-6, Dep. of L. Knowles at 109:5-12; Doc. No. 89-7, Dep. of C. Thurston at 54:22-55:21; Doc. No. 98-2, Dep. of L. Knowles at 141:20-142:1 (admitting he "probably" would have purchased same products even if they did not say "all natural").) Class members' views of "natural" may very well accommodate the presence of the challenged ingredients. See Moheb

1    v. Nutramax Labs. Inc., 2012 WL 6951904, at *7-8 (C.D. Cal. Sep. 4, 2012) (refusing

2    to certify class where plaintiffs failed to make showing that consumers relied on or

3    cared about representations).   Absent stronger "evidence as to what consumers

4    perceived or what they would find material, the inference" of reliance does not apply.

5    Vioxx, 103 Cal Rptr. 3d at 99.

6        In contrast, Plaintiffs make a sufficient showing of materiality to justify

7    certification of a class pertaining to hexane-processed soy ingredients.  Hexane is listed

8    in federal regulations as a "synthetic organic chemical manufacturing industry

9    chemical."  See 40 C.F.R. 63, Subpt. F, Tbl. 1.  Unlike the other challenged ingredients,

10   Defendant does not refute Plaintiffs' charge that hexane is unnatural.   Moreover,

11   Defendant admits that hexane processing violates the definition of natural proffered on

12   the website of Kashi Company, Bear Naked's parent and the defendant in an identical,

13   related lawsuit also before this Court.[3]  Plaintiffs make a sufficient showing for the

14   purposes of class certification that the challenged ingredient might be considered

15   unnatural, and that the named plaintiffs and putative class members might have relied

16   on the representation to their detriment.  See Tobacco II, 46 Cal. 4th at 326-27 (noting

17   plaintiffs need not show that the representations were the only cause, or "even the

18   predominant or decisive factor" influencing their conduct).   The alleged material

19   misstatement was part of a common advertising scheme to which the entire class was

20   exposed, and is a sufficiently definite representation whose accuracy has been

21   legitimately called into question.  Based on Plaintiffs' showing of materiality, common

22   issues exist and predominate with respect to products containing hexane-processed soy

23   ingredients.  See Hanlon, 150 F.3d at 1019-22; In re POM Wonderful LLC Marketing

24   & Sales Practices Litig., No. ML 10–02199, 2012 WL 4490860, at *1 (C.D. Cal. Sept.

25   28, 2012); In re Ferrero Litigation, 278 F.R.D. at 560; Johns, 280 F.R.D. at 557-58 &

26

27   ───────────────

28       [3] The lead case in the related consolidated lawsuits is Astiana, et al. v. Kashi Co., 3:11-
CV-01967-H (BGS) (S.D. Cal. filed August 24, 2011).

n. 4; <u>Allen v. Holiday Universal</u>, 249 F.R.D. 166, 193 (E.D. Pa. 2008).

The Court therefore certifies a class of California purchasers of Defendant's products that contain hexane-processed soy ingredients and were labeled with the natural representations.

## 2.    Breach of Warranty and Quasi-Contract

Common issues exist and predominate on Plaintiffs' claims for quasi-contract and breach of express warranty as to the products containing hexane-processed soy ingredients.  Plaintiffs' claims are based on common contentions of deceptive conduct by Defendant in marketing its products.  Specifically, this case concerns whether Defendant's products contained artificial ingredients and whether Defendant made material representations to the contrary.  A determination of whether Defendant misrepresented its products and, as a result, whether warranties were breached, are common issues appropriate for class treatment.  <u>See</u> <u>Wolin</u>, 617 F.3d at 1173-74; <u>see also, e.g.</u>, <u>Keegan v. Am. Honda Motor Co., Inc.</u>, 284 F.R.D. 504, 534-37 (C.D. Cal. 2012) (certifying warranty claims). .

Likewise, quasi-contract claims are appropriate for class certification as they require common proof of the defendant's conduct and raise the same legal issues for all class members.  <u>See, e.g.</u>, <u>Keilholtz v. Lennox</u>, 268 F.R.D. 330, 344 (N.D. Cal. 2010) (certifying class for unjust enrichment claim); <u>Cartwright v. Viking Indus., Inc.</u>, No. 2:07-CV-02159, 2009 WL 2982887, at *12-13 (E.D. Cal. Sep. 14, 2009) (finding predominance of common issues because "the crux of plaintiff's claims is that defendant unjustly retained the benefits of its sale of window products to consumers after it failed to disclose material facts about the defective nature of those products").  Plaintiffs' quasi-contract and breach of express warranty claims raise common factual and legal issues that predominate over individual issues and therefore satisfy Rule 23(b)(3) for a California class.

///

///

11cv2890

### 3.   Damages

Defendant contends that the difficulties inherent in determining damages owed to each class member defeats predominance.  Typically, however, the individual nature of damages does not overcome the predominance of common issues regarding liability.  The "amount of damages is invariably an individual question and does not defeat class action treatment." Levya v. Medline Indus. Inc., 716 F.3d 510, 513-14 (9th Cir. 2013); Dilts v. Penske Logistics, LLC, 267 F.R.D. 625, 639-40 (S.D. Cal. 2010); Guido v. L'Oreal, USA, Inc., 284 F.R.D. 468, 479 (C.D. Cal. 2012).

Plaintiffs claim the same type of economic injury and damages as the putative class members.  Plaintiffs allege point-of-purchase loss and seek restitution in the form of a refund of all or part of the purchase price.  Cf. Comcast v. Behrend, 133 S. Ct. 1426, 1435 (2013) (stating in antitrust cases plaintiffs must translate "the legal theory of the event into an analysis of the economic impact of that event").  While Plaintiffs, should they prevail, are likely not entitled to a full refund of the purchase price, having obtained some benefit from the products purchased even if they were not as advertised, Plaintiffs may seek some amount representing the disparity between their expected and received value.  See, e.g., Ries, 287 F.R.D. at 532; Colgan v. Leatherman Tool Group, Inc., 135 Cal. App. 4th 663, 700 (2006) (observing that a proper measure of restitution for making false claims that a product was made in the U.S.A. could be "the dollar value of the consumer impact or the advantage realized by" such claims compared to similar products made in China).  A court awarding restitution under the California consumer protection laws has "'very broad' discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired."  Weiner v. Dannon Co., Inc., 255 F.R.D. 658, 670-71 (C.D. Cal. 2009) (noting that "although the Court recognizes the problems inherent in calculating damages for a class action based on consumer products sold at varying prices," such difficulties should not defeat class certification).

"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time." Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 379 (N.D. Cal. 2010). Plaintiffs represent that they can calculate the total restitutionary damages based upon sales, profits and prices data from records generally maintained by Bear Naked. (See Doc. No. 73-19 ¶ 2 (stipulation of parties that Bear Naked maintains sales data for each product).) If individual issues as to how much reward each class member is entitled later predominate, the Court can address such concerns at that time. At this time, the Court is satisfied that Plaintiffs have a viable theory of how to calculate damages. See Zeisel v. Diamond Foods, Inc., 2011 WL 2221113, at *10 (N.D. Cal. June 07, 2011) (accepting plaintiff's contention for class certification purposes that "he will be able to prove the proper amount of restitution by relying on documents produced by [defendant] relating to net sales, profits, and costs, as well as retail prices of" the products at issue). As a result, the Court determines that the potential recovery is not an impediment to the requirements of commonality or predominance at this time.

**F.   Superiority**

Rule 23(b)(3) requires the Court to find "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Considerations pertinent to this finding include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in theparticular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency."

1    Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class
2    member has to litigate numerous and substantial separate issues to establish his or her
3    right to recover individually a class action is not superior." Zinser, 253 F.3d at 1192.

4            Plaintiffs assert they were misled by Defendant's common advertising campaign
5    of Bear Naked food products. The claims are common, involve small sums, and do not
6    depend on individual determinations. Where a case involves multiple claims for
7    relatively small individual sums, some plaintiffs may not be able to proceed as
8    individuals because of the disparity between their litigation costs and what they hope
9    to recover. Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas
10   Sands, Inc., 244 F.3d 1163 (9th Cir. 2001). Here, it would not be economically feasible
11   to obtain relief for each class member given the small size of each class member's
12   claim. See Deposit. Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980).
13   Accordingly, the Court finds that class action is clearly superior to ensure a fair and
14   efficient adjudication of the present action.

15   **III.   Nationwide Class**

16           Plaintiffs request certification of a nationwide class asserting claims under
17   California law. Defendant contends that Mazza v. Honda American Honda Motor Co.,
18   666 F.3d 581 (9th Cir. 2012) bars this Court from certifying nationwide classes based
19   on California law in this case. The Court agrees with Defendant.

20           Under California's choice of law rules, the class action proponent bears the initial
21   burden to show that California has "significant contact or significant aggregation of
22   contacts" to the claims of each class member. Wash. Mut. Bank v. Sup. Ct., 24 Cal.4th
23   906, 921 (2001) (citations omitted). Such a showing is necessary to ensure that
24   application of California law is constitutional. See Allstate Ins. Co. v. Hague, 449 U.S.
25   302, 310-11 (1981). Once the class action proponent makes this showing, the burden
26   shifts to the other side to demonstrate "that foreign law, rather than California law,
27   should apply to class claims." Wash. Mut. Bank, 24 Cal.4th at 921.

28           "California law may only be used on a classwide basis if the interests of other

states are not found to outweigh California's interest in having its law applied." Mazza, 666 F.3d at 589-90.   To determine whether the interests of other states outweigh California's interest, courts apply a three-step governmental interest test:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

McCann v. Foster Wheeler LLC, 48 Cal.4th 68, 81-82 (Cal. 2010).

In Mazza, the Ninth Circuit reviewed the application of California consumer protection laws, specifically the UCL, FAL, CLRA, and unjust enrichment, to a nationwide class.  Mazza, 666 F.3d at 587, 590.  In conducting California's choice-of-law analysis, the court determined the following: (1) there are material differences between California consumer protection laws and those of other states, such as requirements of scienter or reliance and available remedies; (2) foreign jurisdictions have a significant interest in regulating interactions between their citizens and corporations doing business within their state, insofar as consumer protection laws affect a states' ability to attract industry; and (3) the application of California law to those jurisdictions would significantly impair their "ability to calibrate liability to foster commerce," while "California's interest in applying its law to residents of foreign states is attenuated."  Id. at 591-94.  Based on this analysis, the court held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," and vacated the district court's certification of a nationwide class.  Id. at 594.

This case involves application of similar consumer protection laws as Mazza,

and Defendant identifies the same material differences in the laws that dissuaded the Ninth Circuit from applying California law to other states.  (Doc. No. 89-28; Doc. No. 91 at 35-37.)  The Court declines to apply California consumer protection law to a nationwide class in this matter.  Accordingly, the Court denies Plaintiffs' motion to certify nationwide or multi-state classes.

### Conclusion

Based on the record, the Court grants in part and denies in part Plaintiffs' motion for class certification.  The Court certifies the following class, representing California purchasers of Bear Naked products:

> All California residents who purchased Bear Naked, Inc.'s food products on or after September 21, 2007 in the State of California that were labeled "100% Pure & Natural" or "100% Natural" but which contained Hexane-Processed Soy Ingredients.  The Court excludes from the class anyone with a conflict of interest in this matter.

The Court appoints Chanee Thurston as representative of the class.[4]  The Court appoints Joseph N. Kravec, Jr. of Feinstein Doyle Payne & Kravec, LLC, Rosemary Rivas of Finkelstein Thompson LLP, Michael D. Braun of the Braun Law Group, P.C., and Janet Lindner Spielberg of the Law Offices of Janet Lindner Spielberg as class counsel.  The Court denies the remainder of Plaintiffs' motion.

**IT IS SO ORDERED.**

DATED: July 30, 2013

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] The Consolidated Amended Complaint alleges that Plaintiffs Milan Babic and Lawrence Knowles purchased only Bear Naked's Fruit and Nut Granola. (Complaint ¶¶ 8-9.) Plaintiffs do not identify these products as containing hexane-processed soy ingredients. (Id. ¶ 39.)  Because the Complaint does not allege that they purchased Bear Naked products containing hexane-processed soy ingredients, the Court declines to appoint Plaintiffs Babic and Knowles as class representatives.

11cv2890