1

**FINKELSTEIN THOMPSON LLP**
Rosemary M. Rivas (SBN 209147)
2   505 Montgomery Street, Suite 300
San Francisco, CA 94111
3   Phone: (415) 398-8700
Fax: (412) 398-8704
4   Email:  rrivas@finkelsteinthompson.com

**BRAUN LAW GROUP**
Michael D. Braun (SBN 167416)
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-6010
Email:  mdb@braunlawgroup.com

5

6   **LAW OFFICE OF JANET LINDNER SPIELBERG**
Janet Lindner Spielberg (SBN 221926)
7   12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
8   Phone:  (310) 392-8801
Fax: (310) 836-6010
9   Email: jlspielberg@jlslp.com

10  *Co-Lead Class Counsel*

11

12   **UNITED STATES DISTRICT COURT**

13   **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 14  CHANEE THURSTON, *et al.*, individually and on behalf of all others 15  similarly situated, | Case Number: 11 CV 2890-H (BGS) |
| 16 | <u>CLASS ACTION</u> |
| 17                             Plaintiffs, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE** |
| 18 | |
| 19          v. | |
| 20   BEAR NAKED, INC., | |
| 21 | |
| 22                            Defendant. | Judge:  Hon. Marilyn L. Huff Date:   May 27, 2014 Time:   3:00 p.m. Ctrm:   15A |
| 23 | |
| 24 | |

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     PROCEDURAL BACKGROUND .................................................5

III.    THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS
        ACTION SETTLEMENTS ..............................................................8

IV.     TERMS OF THE PROPOSED SETTLEMENT.............................11

        A.    Benefit To Settlement Class Members From The Settlement Fund ...11

        B.    Release And Discharge Of Claims.......................................13

        C.    Payment Of Expenses.........................................................13

        D.    Compensation For The Class Representative ....................14

        E.    Notice And Settlement Administration...............................14

V.      THIS COURT SHOULD PRELIMINARILY APPROVE THE
        SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND ENTER
        THE PRELIMINARY APPROVAL ORDER ...............................14

        A.    The Settlement Should Be Preliminarily Approved Because It
              Satisfies Accepted Criteria.................................................14

        B.    The Proposed Settlement Class Should Be Certified.........17

              1.    The Settlement Class Satisfies Rule 23(a)...............18

              2.    The Settlement Class Satisfies Rule 23(b)(3)..........21

        C.    The Proposed Notice Program Is Adequate ......................24

VI.     CONCLUSION..................................................................................25

i

# TABLE OF AUTHORITIES

## Cases

*Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269 (N.D. Cal. 1976)........................8, 15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................... 18, 22

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) ..19

*Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 U.S. Dist. LEXIS 1640

  (N.D. Cal. Jan. 7, 2014)....................................................................................16

*Beaver v. Alaniz*, 439 U.S. 837 (1978) ...................................................................8

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979) .......................10

*Churchill Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004)...................................14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) .................14

*Comcast v. Behrend*, 133 S. Ct. 1426 (2013), ..........................................................7

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) ...........................................9

*Gen. Tel. Co. of the Sw.v. Falcon*, 457 U.S. 147 (1982). .......................................20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ................... *passim*

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)............................10

*In re POM Wonderful, LLC*, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25,

  2014) ................................................................................................................16

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ..................................8, 9

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, (N.D. Cal. 2007) ..........8, 9

*In re Veritas Software Corp. Sec. Litig.*, 2007 U.S. App. LEXIS 17623 (9th Cir.

  July 25, 2007) ..................................................................................................14

*Leyva v. Medline Indust. Inc.*, 716 F.3d 510 (9th Cir. 2013),.................................8

*Livingston v. Toyota Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 (N.D. Cal.

  June 1, 1995)....................................................................................................15

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

*Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 676 (N.D. Cal. 1979) ...19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ..........9. 10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414, 424-25 (1968) .................................................................................10

*Sethavanish v. ZonePerfect Nutrition Co.*, 2014 U.S. Dist. LEXIS 18600, *13-18
   (N.D. Cal. Feb. 13, 2014) ......................................................................................16

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) .........................................18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................21

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) ...........................................17

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..........................................18

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ....................21

**Rules**

Cal. Bus. & Prof. Code § 17200 ...................................................................................6

Cal. Bus. & Prof. Code § 17500 ...................................................................................6

Cal. Com. Code § 2313 ..................................................................................................6

Fed. R. Civ. P 23(a)(1) .................................................................................................18

Fed. R. Civ. P. 23(a)(2) ...............................................................................................18

Fed. R. Civ. P. 23(a)(3) ...............................................................................................20

Fed. R. Civ. P. 23(a)(4) ...............................................................................................20

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 21, 22

Fed. R. Civ. P. 23(b)(3)(D) ..........................................................................................24

Fed. R. Civ. P. 23(c)(2) ................................................................................................24

Fed. R. Civ. P. 23(c)(2)(B). .........................................................................................24

Fed. R. Civ. P 23(e)(1) .................................................................................................24

Fed. R. Civ. P. 23(e)(2) ................................................................................................16

Fed. R. Civ. P. 23(g) .................................................................................3

**Treatises**

1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 (1992)........18

4 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 11.25 (2002)......15

*Manual for Complex Litigation* § 21.663 (3d ed. 1995)............................................8

*Manual for Complex Litigation* § 23.11 (3d ed. 1995)............................................9

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)........................................15

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

## I.   INTRODUCTION

Plaintiff Chanee Thurston ("Plaintiff"), and co-lead class counsel for the Class, Finkelstein Thompson LLP, Braun Law Group, P.C. and the Law Office of Janet Lindner Spielberg (collectively, "Class Counsel"), respectfully submit this memorandum in support of Plaintiff Thurston's Motion for Preliminary Approval of Class Action Settlement (the "Motion").  As detailed below, the proposed settlement is fair, reasonable and adequate, and should be preliminarily approved.

This class action was brought by Plaintiff Thurston against Defendant Bear Naked, Inc. ("BN" or "Bear Naked") for misleading consumers by labeling certain of its food products (the "Products") "100% Natural" or "100% Pure and Natural," when those Products contained certain synthetic and artificial ingredients.  This Court certified a California class of purchasers of certain Bear Naked food products.  *See Thurston v. Bear Naked*, No. 11-02890-H (BGS), ECF No. 110. Now, the Parties have reached a comprehensive settlement that more broadly achieves relief for purchasers of Bear Naked Products containing one of more of the following ingredients:  hexane-processed soy ingredients, glycerin, potassium carbonate, and tocopherols (the "Challenged Ingredients").  This expansion of the Class definition reflects new evidence of the materiality of BN's "All Natural" claim as to *all* of the Challenged Ingredients.  Thus, the Settlement Class is expanded to give relief to consumers similarly harmed by BN's uniform misrepresentations.

The Stipulation of Settlement ("Settlement" or "Settlement Agreement") and its exhibits are filed with the Court.  (All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement).  The terms of the Settlement are well-informed by over two years of litigation, during which time,

1

Plaintiff completed merits and experts discovery, including multiple expert depositions.  As more specifically set forth in the Parties' Settlement Agreement, and as described in more detail below, the Parties to this action have reached a settlement that provides a real benefit to consumers.  First and foremost, under the terms of the Settlement, BN has agreed to modify its current labeling and advertising to remove "100% Natural" and "100% Pure and Natural" representations from certain Products.  Settlement Agreement § IV.B.  Additionally, without any admission of liability, BN has agreed to provide monetary relief to Settlement Class Members residing in California by paying $325,000.00 to a settlement fund to satisfy cash payments to Settlement Class Members who submit valid claims for Products purchased between September 21, 2007 and May 1, 2014.  The $325,000.00 figure was heavily negotiated and was based on a percentage of the net profit information received from BN.  From this fund, Settlement Class Members are able to recover $0.50 per Product for every Product purchased during the Settlement Class Period, for which they can present written proof of purchase in the form of a receipt or a retail rewards submission, and $0.50 per product, with a maximum recovery of $10 per household, for every Product purchased during the Settlement Class Period for which no such proof of purchase is submitted.[1]  Further, BN will retain a Class Action Settlement Administrator to provide notice and claims administration, and such costs will not be deducted from the fund.  § IV.A.2.c.

   As in any class action, the Settlement is subject to preliminary approval and then to final approval by the Court after notice to the Class and a hearing.  The

---

[1] The amount of each cash payment will depend on the number and amount of authorized claims submitted per the Settlement Agreement.  *See* § IV.A.3.

CASE NO.:  11-cv-2890-H (BGS)                    Plaintiffs' Memorandum of Points and Authorities in Support of
                                                 Plaintiffs' Motion For Preliminary Approval of
                                                 Class Action Settlement

proposed Class for settlement purposes should be conditionally certified.  In its Order certifying a California class of purchasers of certain of the Products, this Court found the requirements for certification under Federal Rule of Civil Procedure 23 satisfied for products containing hexane-processed soy ingredients. Although the proposed settlement Class is slightly expanded to include Products containing the Challenged Ingredients as alleged in the original complaint, certification of the settlement Class is warranted for reasons consistent with this Court's previous class certification order, as detailed below.  Accordingly, Plaintiff now requests this Court to enter an order in the form of the [Proposed] Order Preliminarily Approving of Class Action Settlement, Conditionally Certifying the Settlement Class, Providing for Notice and Scheduling Order (the "Order"), which is attached to the Settlement Agreement as Exhibit F.  That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, appointing Plaintiff Chanee Thurston as the class representative ("Class Representative") for the Settlement Class, and appointing Finkelstein Thompson LLP, Braun Law Group, P.C., and the Law Office of Janet Lindner Spielberg, as Class Counsel pursuant to Fed. R. Civ. P. 23(g); (3) establish procedures for giving notice to Settlement Class Members; (4) approve forms of notice to Settlement Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a date, time and place for a final approval hearing.

Class certification for purposes of settlement is appropriate under Federal Rules of Civil Procedure 23(a) and (b)(3), as fully discussed below.

The Settlement is fair, reasonable, and falls within the range of possible approval.  Indeed, Class Counsel achieved a monetary benefit for the Class and the likelihood that a greater result could be achieved at trial is remote.  Plaintiff and

3

her counsel have vigorously litigated this action for over two years, engaging in extensive motion practice and discovery, and have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed settlement.  The Settlement achieves injunctive relief in the form of a modification of Bear Naked's current labeling and advertising to remove "100% Natural" and "100% Pure and Natural" from certain Products.  And the settlement fund provides a tangible and monetary benefit to the Class in lieu of the continued risk of litigation where they might recover nothing.

The Settlement is the product of extended arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case and all Class members are treated fairly under the terms of the Settlement.  The Settlement Agreement was entered into only after a mediation session before the Honorable Howard B. Weiner (retired) followed by extensive negotiations between Plaintiff's counsel and BN's counsel.  Plaintiff, by and through her respective counsel, has conducted an extensive investigation into the facts and law relating to this matter. The investigation has included consulting industry personnel, extensive consultation with experts, numerous interviews of witnesses and putative members of the Class, as well as legal research as to the sufficiency of the claims.  Plaintiff and her counsel hereby acknowledge that in the course of their investigation they received, examined, and analyzed information, documents, and materials that they deem necessary and appropriate to enable them to enter into the Settlement Agreement on a fully informed basis.  It is a fair, reasonable and adequate result for the Parties and Settlement Class Members.  Accordingly, Plaintiff respectfully requests that the Court grant this motion.

CASE NO.:  11-cv-2890-H (BGS)

## II.   PROCEDURAL BACKGROUND

In 2011, the following proposed class action complaints were filed against BN:  *Thurston, et al. v. Bear Naked, Inc.*, Case No. 11-CV-02890 and *Babic v. Bear Naked, Inc.*, 11-CV-02985.  On February 9, 2012, the Court ordered the consolidation of *Thurston* and *Babic*.  *See* ECF No. 34.  On March 12, 2012, Plaintiffs Thurston and Babic filed a First Amended Consolidated Complaint for Damages, Equitable, Declaratory and Injunctive Relief against Defendant (Case No. 3:11-cv-02890) (the "First Amended Consolidated Complaint"), which amended and superseded the Original Complaints.

In the First Amended Consolidated Complaint, which was filed as a class action, Plaintiffs Thurston and Babic alleged they bought certain Bear Naked food products based, at least in part, on misleading statements printed on the products' labels that the products were "100% Natural" or "100% Pure and Natural." Plaintiffs Thurston and Babic allege that, based on the labels, they believed the products contained no synthetic or artificial ingredients and therefore paid a premium price for the products.  Plaintiffs Thurston and Babic further allege that the products that bore the "100% Natural" or "100% Pure and Natural" labels contained certain unnatural, synthetic or artificial ingredients.  Plaintiffs Thurston and Babic further alleged that they either would not have purchased the products or would have paid less for the products had they known at the time of purchase that they contained ingredients that were unnatural, synthetic or artificial.

On April 11, 2012, BN filed a motion to dismiss the First Amended Consolidated Complaint.  (ECF No. 40.)  Plaintiffs opposed BN's motion to dismiss.  On July 16, 2012, the Court entered an Order granting in part and denying in part BNs' motion to dismiss.  (ECF No. 50.)  The Court rejected BN's

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion For Preliminary Approval of Class Action Settlement

arguments that Plaintiffs' claims were preempted by federal law and found that application of the primary jurisdiction doctrine was not appropriate.  The Court did dismiss Thurston and Babic's Magnuson-Moss Warranty Act causes of action, common law fraud cause of action, and claim for unjust enrichment.  The Court denied the remaining portions of BN's motion to dismiss the First Amended Consolidated Complaint, namely, Thurston and Babic's allegations that BN's conduct violates the unlawful, unfair and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"), the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), the Consumers Legal Remedies Act ("CLRA"), and Cal. Com. Code § 2313 (breach of express warranty).

Over the following year, the Parties engaged in extensive discovery. Plaintiffs Thurston and Babic took a number of depositions, including of BN's marketing expert, served multiple sets of requests for production of documents and interrogatories, and served several subpoenas to third parties, which resulted in the production of thousands of pages of documents.  BN also served, and Plaintiffs responded to, requests for production of documents and interrogatories.  Further, BN deposed the named Plaintiffs as well as Plaintiffs' marketing expert.

On April 15, 2013, Plaintiffs filed a motion for class certification (ECF No. 73), which BN opposed.  On July 30, 2013, the Court entered an Order granting in part and denying in part Plaintiffs' motion for class certification.  (ECF No. 110.)  The Court certified the following class:

All California residents who purchased Bear Naked, Inc.'s food products on or after September 21, 2007 in the State of California that were labeled "100% Pure and Natural," or "100% Natural," but which contained Hexane-Processed Soy

CASE NO.:  11-cv-2890-H (BGS)

Ingredients.  The Court excludes from the class anyone with a conflict of interest in this matter.  Docket No. 110 at 21.  The Court also appointed Chanee Thurston as the Class Representative, and Feinstein Doyle Payne & Kravec; Finkelstein Thompson LLP; Braun Law Group, P.C.; and Law Offices of Janet Lindner Spielberg as Class Counsel. The Court denied the motion for class certification as to the remaining Challenged Ingredients—glycerin, tocopherols, and potassium carbonate—on the basis that those ingredients were allowed in certified "organic" goods and consumers may equate "natural" with "organic."  ECF No. 110 at 14-15.

On August 12, 2013, BN filed a petition to appeal the Court's order granting in part the motion for class certification under Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit. Plaintiffs filed an opposition to BN's Rule 23(f) petition on August 22, 2013.  On October 22, 2013, the Ninth Circuit denied BN's petition.  On October 24, 2013, BN filed a motion to decertify the class (ECF No. 133), which the Court denied.

On October 23, 2013, the Parties participated in a mediation conducted by the Honorable Howard B. Weiner (Ret.).  A settlement was not reached. Subsequent to those sessions, the Parties engaged in protracted, extensive, and hard-fought settlement negotiations.  As a result of those negotiations, the Parties agreed to settle the Litigation pursuant to the terms set forth in the Settlement Agreement.

Throughout the Litigation, Plaintiff Thurston (hereinafter referred to as "Plaintiff") by and through her respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, completing merits and expert discovery, review and analysis of BN's documents and data, and extensive research and assessment

7

of the Challenged Ingredients and the Products.  Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement Class Members.  Plaintiff and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and adequate, and that this Settlement is in the best interest of the Settlement Class Members.  As a result of this extensive investigation and the extensive negotiations, the Parties reached the proposed Settlement, and the Settlement Agreement was fully executed on May 2, 2014. BN, while denying all allegations of wrongdoing and disclaiming all liability, considers it desirable to resolve the action on the terms stated herein in order to avoid further expense, inconvenience and burden and, therefore, has determined that this Settlement on the terms set forth herein is in BN's best interests.

## III.    THE STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *Alaniz v. Cal. Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation* § 30.41 at 236-38 (3d ed. 1995) (hereinafter "*Manual*").  The purpose of a preliminary approval hearing is to ascertain whether there is any reason to notify the putative class members of

8

the proposed settlement and to proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (quoting *Newberg on Class Actions* § 11.25 (1992)).  Preliminary approval does not require an answer to whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983)); *Manual* § 23.11 at 166:

> Beginning with the first [pretrial] conference, and from time to time throughout the litigation, the court should encourage the settlement process.  The judge should raise the issue of settlement at the first opportunity, inquiring whether any discussions have taken place or might be scheduled.  As the case progresses, and the judge and counsel become better informed, the judge should continue to urge the parties to consider and reconsider their positions on settlement in light of current and anticipated developments.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In

9

fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Ultimately, however, the court's role is to ensure that the settlement is fundamentally fair, reasonable and adequate. *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating a proposed settlement is the likelihood of recovery balanced against the benefits of settlement. "[B]asic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

Factors to be considered in evaluating a proposed settlement may include, among others, some or all of the following: the experience and views of counsel; the risks, complexity, expense and likely duration of continued litigation; the strengths of plaintiff's case; the amount offered in settlement; and the stage of proceedings. *See id*. In evaluating preliminarily the adequacy of a proposed settlement, particular attention should be paid to the settlement negotiations. Here, the negotiations were conducted by experienced class action counsel. Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion. *Boyd v.*

*Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).  In sum, a compromise must be viewed in the circumstances in which it was achieved.  In the final analysis, that decision is committed to the sound discretion of the court.

## IV.   TERMS OF THE PROPOSED SETTLEMENT

The Parties reached the Settlement Agreement through a vigorous debate of legal and factual theories by counsel and extensive arm's-length negotiations.  The Settlement Class consists of all California residents who, at any time between September 21, 2007 and May 1, 2014, purchased any of the Products.  Excluded from this definition are: (a) Defendant's employees, officers and directors; (b) persons or entities who purchased the Products for the purpose of re-sale; (c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the Class as provided in the Settlement Agreement; and (f) the Court, its immediate family and staff. Settlement Class Members who exclude themselves, pursuant to the procedures set forth in Section VI.B of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by the Settlement Agreement.

### A.   Benefit to Settlement Class Members from the Settlement Fund

BN has agreed to injunctive relief in the form of a modification of its current labeling and advertising to remove the "100% Natural" and "100% Pure and Natural" from certain Products.  *See* Settlement Agreement § IV.B.

Additionally, the Settlement provides for monetary relief to the proposed Settlement Class by, among other things, requiring BN to pay $325,000.00 into a settlement fund.  *See* Settlement Agreement § IV.A.2.  BN shall fund the Settlement Fund within seven (7) days of the Effective Date.  The Settlement Fund shall be applied to pay in full and in order:  (i) any Expense Award made by the

CASE NO.:  11-cv-2890-H (BGS)

1   Court to Class Counsel under § VIII(a) of the Settlement Agreement; (ii) any

2   Incentive Award approved by the Court under section VIII(c) of the Settlement

3   Agreement; and (iii) payments to authorized Claimants and any others as allowed

4   by the Settlement and approved by the Court.

5        Class members may seek reimbursement of $0.50 per Product for every

6   Product purchased during the Settlement Class Period, for which they can present

7   written proof of purchase in the form of a receipt or a retail rewards submission.

8   Class members may make a claim for every Product for which they submit a valid

9   Claim Form.  For Products for which Class members cannot present such proof of

10  purchase, Class members may seek reimbursement of $0.50 per Product, with a

11  maximum recovery of $10.  Settlement Agreement § IV.A.1(a)-(b).  Class

12  members may obtain relief under both sections IV.A.1(a) and (b), with the

13  appropriate paper work and subject to the maximum recovery amount permitted for

14  claims made without written proof of purchase.  The amount of each cash payment

15  will depend on the number and amount of authorized claims submitted.  If the total

16  amount of eligible claims exceeds the Settlement Fund, then each claimant's award

17  shall be proportionately reduced.  If after all valid claims (plus other authorized

18  costs and expenses) are paid, money remains in the Settlement Fund, the remaining

19  amount shall be used to increase pro rata the recovery of each eligible claim.

20       To be eligible for a cash payment, a Settlement Class Member must timely

21  submit a signed and completed Claim Form containing his or her name and mailing

22  address.  The Claim Form will also request an e-mail address for the Settlement

23  Class Member, but an e-mail address will not be required to be eligible for a cash

24  payment.  The Settlement Administrator may pay claims that are otherwise valid

25  but untimely filed if there is sufficient money to pay all valid and timely claims in

26

27

28

12

full plus untimely but otherwise valid claims from the Settlement Fund, and payment of any such untimely but valid claims is administratively feasible and otherwise reasonable, taking into account the need to timely pay claims.  The determination of the Class Action Settlement Administrator after consultation with Class Counsel and Defendant's Counsel concerning the eligibility and amount of payment shall be final.  In the event a Settlement Class Member disagrees with such a determination, the Class Action Settlement Administrator agrees to reconsider such determination, which includes consultation with Class Counsel and Defendant's Counsel.  To be eligible, Claim Forms must be postmarked or submitted online no later than eight (8) days before the Settlement Hearing.  § IV.A.1 and § IV.A.6(d).  All Claimants must include information in the claim form—completed online or in hard copy mailed to the Settlement Administrator— confirming, under penalty of perjury, that they did in fact purchase from September 21, 2007 up to and May 1, 2014 the packages of Product(s) for which they seek reimbursement.  *See* Settlement Agreement § IV.A.1.d.

### B.    Release And Discharge Of Claims

The Settlement provides for a specific release of claims or causes of action based on or related to the Products as described and/or alleged in the First Amended Consolidated Complaint in this action.  The release will finally resolve Plaintiff's and Class Members' claims once the Settlement becomes effective as defined in the Settlement. *See* Settlement Agreement § VII.

### C.    Payment Of Expenses

Class Counsel will not make an application for any attorneys' fees. Settlement Agreement § VIII.A.  Class Counsel will limit their  application to an

13

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

1   award of reasonable, actual out-of-pocket expenses from the Settlement Fund.  *Id.*

2   BN retains the right to oppose such a request.  *Id.*

3   **D.     Compensation For The Class Representative**

4          In addition to the individual relief discussed above, BN has also agreed,

5   subject to Court approval, to pay an incentive award to the Class Representative

6   Chanee Thurston, not to exceed $2,000.  The payment by BN of the Incentive

7   Award will be from the Settlement Fund to the extent approved and ordered by the

8   Court.  *See* Settlement Agreement § VIII.C.

9   **E.     Notice And Settlement Administration**

10         The Settlement Fund will not be used to pay for the costs of providing notice

11  to the Class or claims administration.  BN will separately retain Garden City Group

12  to provide notice and claims administration.  *Id.*  § IV.A.2.

13  **V.   THIS COURT SHOULD PRELIMINARILY APPROVE THE
       SETTLEMENT, PROVISIONALLY CERTIFY THE CLASS AND**
14  **ENTER THE PRELIMINARY APPROVAL ORDER**

15  **A.     The Settlement Should Be Preliminarily Approved Because It
              Satisfies Accepted Criteria**
16

17         It is well established that the law favors the compromise and settlement of

18  class action suits:  "[S]trong judicial policy favors settlements . . . ."  *Churchill*

19  *Vill., L.L.C. v. GE*, 361 F.3d 566 (9th Cir. 2004) (original ellipsis omitted).  This is

20  particularly true where "class action litigation is concerned."  *Class Plaintiffs v.*

21  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

22         The approval of a proposed settlement of a class action is a matter of

23  discretion for the trial court.  *In re Veritas Software Corp. Sec. Litig.*, 2007 U.S.

24  App. LEXIS 17623, at *25 (9th Cir. July 25, 2007) ("[T]he district court has

25  substantial discretion in approving the details of a class action settlement").

26

27

28

14

1   Courts, however, must give "proper deference to the private consensual decision of

2   the parties," since "the court's intrusion upon what is otherwise a private

3   consensual agreement negotiated between the parties to a lawsuit must be limited

4   to the extent necessary to reach a reasoned judgment that the agreement is not the

5   product of fraud or overreaching by, or collusion between, the negotiating parties,

6   and the settlement, taken as a whole, is fair, reasonable and adequate to all

7   concerned." *Hanlon*, 150 F.3d at 1027; *accord.* Fed. R. Civ. P. 23(e)(2)

8   (settlement must be "fair, reasonable, and adequate").

9           To grant preliminary approval of this class action Settlement, the Court need

10   only find that the Settlement falls within the range of possible approval.  *See, e.g.*,

11   *Livingston v. Toyota Motor Sales USA*, No. C-94-1377-MHP, 1995 U.S. Dist.

12   LEXIS 21757, at *24 (N.D. Cal. June 1, 1995) ("The proposed settlement must fall

13   within the range of possible approval."); *see also* 4 Alba Conte and Herbert

14   Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002).  The *Manual for*

15   *Complex Litigation*, § 21.632 (4th ed. 2004) characterizes the preliminary approval

16   stage as an "initial evaluation" of the fairness of the proposed settlement made by

17   the court on the basis of written submissions and informal presentation from the

18   settling parties.

19           Here, as discussed above, the Settlement should be preliminarily approved

20   because it clearly falls "within the range of possible approval."  *Alaniz*, 73 F.R.D.

21   at 273.  It is non-collusive, fair, and reasonable.  The likelihood that a greater result

22   could be achieved at trial is remote.  The Settlement achieves injunctive relief in

23   the form of a modification of BN's current labeling and advertising to remove

24   "100% Natural" and "100% Pure and Natural" from certain Products, as set forth

25   in the Settlement Agreement.  Additionally, the Settlement will provide a

26

27   **15**

28

significant monetary benefit to Settlement Class Members by providing them with $.50 in cash for each Product purchased during the Settlement Class Period, up to a maximum payment of $10.00 for claims made without written proof of purchase in the form of a receipt or a retail rewards submission.

At the same time, the Settlement eliminates the substantial risk and delay of litigation. Although Plaintiff and her counsel believe her claims have merit, they recognize that they face significant legal, factual, and procedural obstacles to recovery. BN continues to vigorously deny any wrongdoing and denies any liability to the Plaintiffs or any members of the Class. Although Plaintiff has confidence in the claims and although this Court has already certified a California class, a favorable outcome is not assured. *See, e.g.*, *In re POM Wonderful, LLC*, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) (decertifying nationwide class); *see also Sethavanish v. ZonePerfect Nutrition Co.*, 2014 U.S. Dist. LEXIS 18600, *13-18 (N.D. Cal. Feb. 13, 2014) (denying class certification, finding lack of ascertainability); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 U.S. Dist. LEXIS 1640, *8-41 (N.D. Cal. Jan. 7, 2014) (denying class certification for lack of ascertainability and predominance). Even if judgment were entered against BN, any appeal in the Ninth Circuit would likely take years to resolve. By settling, Plaintiff and the Settlement Class avoid these risks, as well as the delays and risks of a lengthy trial and appellate process. The Settlement will provide Settlement Class Members with monetary benefits that are immediate, certain and substantial, and avoid the obstacles that might have prevented them from obtaining relief. In light of the relief obtained, the magnitude and risks of the litigation and the legal standards set forth above, the Court should allow notice of the settlement to be sent to the Settlement Class so that they can express their views on it. The Court should

16

1  conclude that the Settlement is "within the range of possible approval." *Id*.

2      **B.      The Proposed Settlement Class Should Be Certified**

3          The Settlement Class consists of all California residents who, at any time

4  between September 21, 2007 and May 1, 2014, purchased any of the referenced

5  Products.  On July 30, 2013, this Court granted in part the motion for class

6  certification, certifying a California class of people who purchased BN's products.

7  The proposed settlement Class is slightly expanded to include Products containing

8  all the Challenged Ingredients.  In this Court's class certification order, the Court

9  denied Plaintiff's motion for class certification as to three of the Challenged

10  Ingredients.  Putting aside the fact that Plaintiff now has evidence to show the

11  materiality of BN's representations as to those ingredients, rather than proceed to

12  trial the Parties have entered into an arm's-length agreement that permits all Class

13  members who wish compensations for their claims to seek monetary relief by

14  submitting a claim form.  Accordingly, any concern that individual views of each

15  class member could predominate over common issues is unwarranted.  *See*

16  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (affirming class certification

17  and approval of settlement, finding Rule 23's predominance requirement does not

18  preclude nationwide *settlement-only* class certification of claims brought under

19  consumer protection and unjust enrichment laws of all 50 states).   For settlement

20  purposes only, the parties and their counsel request that the Court provisionally

21  certify the Settlement Class.

22          The Ninth Circuit has recognized that certifying a settlement class to resolve

23  consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When

24  presented with a proposed settlement, a court must first determine whether the

25  proposed settlement class satisfies the requirements for class certification under

26

27                                              17

Rule 23.  In assessing those class certification requirements, a court may properly consider that there will be no trial.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").  For the reasons below, this Class meets the requirements of Rule 23(a) and (b).

### 1.   <u>The Settlement Class Satisfies Rule 23(a)</u>

#### a.   <u>*Numerosity*</u>

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  *See* Fed. R. Civ. P. 23(a)(1).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21."  *See Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).   Here, the proposed Settlement Class is comprised of thousands of consumers who purchased the Products – a number that obviously satisfies the numerosity requirement.

#### b.   <u>*Commonality*</u>

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiff and class members' claims "depend on a common contention," "capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  Since the commonality requirement may be satisfied by a single common issue, it is easily met.  1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.10 at 3-50 (1992).

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

There are ample issues of both law and fact here that are common to the members of the class.  Indeed, all of the Settlement Class Members' claims arise from a common nucleus of facts and are based on the same legal theories.  The Plaintiff alleged that BN misled consumers by labeling certain of its products "100% Natural" or "100% Pure and Natural," when in fact those products contained certain synthetic and artificial ingredients, which ingredients Plaintiffs allege preclude those products from properly being labeled as "All Natural" or "Nothing Artificial."  Here, all of the Settlement Class Members purchased the one or more of the Products.  Commonality is satisfied here, for settlement purposes, by the existence of these common factual issues.  *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (commonality requirement met by "the alleged existence of common discriminatory practices").

Second, Plaintiff's claims are brought under legal theories common to the class as a whole, including whether the use of the terms "100% Natural" and "100% Pure and Natural" to advertise food products that contain the artificial and synthetic ingredients violates the UCL, FAL, CLRA, or BN's own warranties.  Alleging a common legal theory is alone enough to establish commonality.  *See Morgan v. Laborers Pension Trust Fund*, 81 F.R.D. 669, 676 (N.D. Cal. 1979) (commonality met based on whether operation of the eligibility structure of Trust Fund's pension plan violated ERISA).  Here, all of the legal theories and causes of action asserted by Plaintiff are common to all Settlement Class Members.  Especially since there are virtually no issues of law which affect only individual members of the class, common issues of law clearly predominate over individual ones.  Thus, considering the nature of the issues and facts that bind each class member together, commonality is satisfied.

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

### c.   *Typicality*

Rule 23(a)(3) requires that the claims of the representative plaintiff be "typical of the claims . . . of the class."  *See* Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *See Hanlon*, 150 F.3d at 1020.  In short, to meet the typicality requirement, the representative plaintiff simply must demonstrate that the members of the settlement class have the same or similar grievances.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

In the instant action, Plaintiff's claims are typical of those of the Settlement Class.  Like those of the Settlement Class, her claims arise out of the allegations that BN misled consumers by labeling certain of its products "100% Natural" or "100% Pure and Natural," when in fact those products contained certain synthetic and artificial ingredients, which Plaintiff alleged precludes those products from properly being labeled as "100% Natural" or "100% Pure and Natural."  Plaintiff purchased one or more of the Products.  Plaintiff has precisely the same claims as the Settlement Class, and must satisfy the same elements of each of their claims, as must other Settlement Class Members.  Supported by the same legal theories, Plaintiff and all Settlement Class Members share claims based on the same alleged course of conduct.  Plaintiff and all Settlement Class Members have been injured in the same manner by this conduct.  Thus, typicality is met.

### d.   *Adequacy*

The final requirement of Rule 23(a) is set forth in subsection (a)(4) which requires that the representative parties "fairly and adequately protect the interests of the class."  *See* Fed. R. Civ. P. 23(a)(4).  A plaintiff will adequately represent

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

the class where:  (1) plaintiffs and their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs and their counsel prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003).  Moreover, adequacy is presumed where a fair settlement was negotiated at arm's-length.  2 *Newberg on Class Actions, supra*, §11.28, at 11-59.

Class Counsel have vigorously and competently pursued the Settlement Class Members' claims.  The arm's-length settlement negotiations that took place demonstrate that Class Counsel adequately represent the Settlement Class.  Moreover, Plaintiff and Class Counsel have no conflicts of interests with the Settlement Class.  Rather, Plaintiff, like each absent Settlement Class Member, has a strong interest in proving BN's common course of conduct, establishing its unlawfulness and obtaining redress.  Class Counsel have extensive experience and expertise in prosecuting complex class actions.  Class Counsel are active practitioners who are highly experienced in class action, product liability, and consumer fraud litigation.  ECF No. 110 at 12.

## 2.  The Settlement Class Satisfies Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), Plaintiff must also meet one of the three requirements of Rule 23(b) to certify the proposed class.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate and

CASE NO.:  11-cv-2890-H (BGS)

encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

###     a.     *Common Questions Of Law And Fact Predominate*

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members.  Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.  As the United States Supreme Court has explained, when addressing the propriety of Settlement Class certification, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620.

In this case, common questions of law and fact exist and predominate over any individual questions, including, *inter alia*:  (1) whether BN's marketing and sale of the Products was illegal; (2) whether BN's Products contained artificial or synthetic ingredients and whether BN made material representations to the contrary; and (3) whether Plaintiff and Settlement Class Members are entitled to damages, restitution, injunctive and/or monetary relief, and if so, the amount and nature of such relief.  These issues can be resolved for all members of the proposed Settlement Class in a single adjudication.  Moreover, the Court's concern on class certification that there was insufficient evidence of materiality as to ingredients permitted in certified "organic" goods, thus requiring individual proof of reliance, should not defeat a finding of predominance for purposes of certifying the settlement class.  Such a "merits inquiry is…unwarranted in the settlement context since a district court need not envision the form that a trial would take, nor

CASE NO.:  11-cv-2890-H (BGS)

consider the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove the disputed element at trial." *Sullivan*, 667 F.3d at 306 (internal quotation marks and citation omitted); *see also id.* at 302-03 (finding concerns regarding predominance inquiry "marginalized" and noting "the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation" given the settlement posture of the case).  As such, the answers to the common questions that resulted from BN's alleged conduct are the primary focus and central issues of this class action and thus predominate over any individual issues that may exist.

### b.   *A Class Action Is The Superior Mechanism For Adjudicating This Dispute*

The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Settlement Class Members.  Each individual Settlement Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish BN's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of BN's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial.  *See*

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

*Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23 (b)(3)(D), for the proposal is that there be no trial."). Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

### C.    The Proposed Notice Program Is Adequate

Once preliminary approval of a class action settlement is granted, notice must be directed to class members. For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal." Fed. R. Civ. P. 23(e)(1).

When a court is presented with a class, the class certification notice and notice of settlement may be combined in the same notice. *Manual* § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined."). This notice allows the settlement class members to decide whether to opt out of or participate in the class and/or to object to the settlement and argue against final approval by the court. *Id*.

The proposed forms of notice here, attached as Exhibits C and D to the Settlement Agreement, satisfy the above criteria. The notices accurately inform Settlement Class Members of the salient terms of the Settlement Agreement, the Settlement Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement

The Parties in this case have created and agreed to perform the following forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and Due Process.  The language of the proposed notices and accompanying claim form is plain and easy to understand, providing neutral and objective information about the nature of the Settlement.

Individual Settlement Class Members cannot be identified through reasonable effort due to the nature of the consumer product at issue.  Therefore, Class Notice shall be provided as set forth in the Media Plan, attached to the Settlement Agreement as Exhibit G.  BN will cause the summary notice to be published once in People Magazine, once in USA Weekend, once in Parade, and once each in the San Diego Union Tribune, the Los Angeles Times, the San Francisco Chronicle, and the Sacramento Bee, and a link to the settlement website will appear on BN's company website.  Internet banner notices will also be purchased and will include an embedded link to the case website.  Additionally, notice of the Settlement will be posted on the Settlement Website and, at their option, on the websites of Class Counsel.  The Class Notice shall also be sent via electronic mail or regular mail to those Class Members who so request.  This proposed method of giving notice (similar if not identical to the method used in countless other class actions) is appropriate because it provides a fair opportunity for members of the Settlement Class to obtain full disclosure of the conditions of the Settlement Agreement and to make an informed decision regarding the proposed Settlement. Thus, the notices and the procedures embodied therein satisfy the requirements of due process.

## VI.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant this motion.

CASE NO.:  11-cv-2890-H (BGS)

Dated:  May 2, 2014                     Respectfully submitted,

**FINKELSTEIN THOMPSON**

By:  /s/ Rosemary M. Rivas
     ROSEMARY M. RIVAS

505 Montgomery Street, Suite 300
San Francisco, CA  94111
Telephone:  (415) 398-8700
Facsimile:   (415) 398-8704
Email:    rrivas@finkelsteinthompson.com

**BRAUN LAW GROUP**

By:  /s/ Michael Braun
     MICHAEL BRAUN

10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-6010
Email:  mdb@braunlawgroup.com

**LAW OFFICE OF JANET LINDNER SPIELBERG**

By:  /s/ Janet Lindner Spielberg
     JANET LINDNER SPIELBERG

12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Phone:  (310) 392-8801
Fax: (310) 836-6010
Email: jlspielberg@jlslp.com

*Co-Lead Class Counsel*

26

CASE NO.:  11-cv-2890-H (BGS)

Plaintiffs' Memorandum of Points and Authorities in Support of
Plaintiffs' Motion For Preliminary Approval of
Class Action Settlement