1

**FINKELSTEIN THOMPSON LLP**
Rosemary M. Rivas (SBN 209147)
505 Montgomery Street, Suite 300
San Francisco, CA 94111
Phone: (415) 398-8700
Fax: (412) 398-8704
Email: rrivas@finkelsteinthompson.com

**BRAUN LAW GROUP**
Michael D. Braun (SBN 167416)
10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-6010
Email: mdb@braunlawgroup.com

**LAW OFFICE OF JANET
LINDNER SPIELBERG**
Janet Lindner Spielberg (SBN 221926)
12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax: (310) 836-6010
Email: jlspielberg@jlslp.com

*Co-Lead Class Counsel*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHANEE THURSTON, *et al.,* individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BEAR NAKED, INC., <br><br> Defendant. | Case Number: 11 CV 2890-H (BGS) <br><br> <u>CLASS ACTION</u> <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge: Hon. Marilyn L. Huff <br> Date: September 2, 2014 <br> Time: 10:30 a.m. <br> Ctrm: 15A |

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on September 2, 2014 at 10:30 a.m., or at such other date and time as the Court may provide, in Courtroom 15A of the above-entitled Court, the Honorable Marilyn L. Huff, Presiding, Plaintiff Chanee Thurston ("Plaintiff") will and hereby does move this Court for an order granting final approval of the Parties' proposed class settlement and for final certification of a settlement class.

This motion is made pursuant to Fed. R. Civ. P. 23 and is based upon: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Stipulation of Settlement; the Declaration of Rosemary M. Rivas and the accompanying exhibits thereto, and such evidence and argument as the Court may consider at the hearing on this motion.

Dated: July 28, 2014                    Respectfully submitted,

                                        **FINKELSTEIN THOMPSON**

                                        By: /s/ Rosemary M. Rivas
                                            ROSEMARY M. RIVAS

                                        505 Montgomery Street, Suite 300
                                        San Francisco, CA 94111
                                        Telephone: (415) 398-8700
                                        Facsimile: (415) 398-8704
                                        Email: rrivas@finkelsteinthompson.com

                                        **BRAUN LAW GROUP**

                                        By: /s/ Michael Braun
                                            MICHAEL BRAUN

                                        10680 W. Pico Boulevard, Suite 280
                                        Los Angeles, CA 90064
                                        Phone: (310) 836-6000
                                        Fax: (310) 836-6010
                                        Email: mdb@braunlawgroup.com

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

**LAW OFFICE OF JANET LINDNER SPIELBERG**

By: /s/ Janet Lindner Spielberg
JANET LINDNER SPIELBERG

12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax: (310) 836-6010
Email: jlspielberg@jlslp.com

*Co-Lead Class Counsel*

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.      INTRODUCTION................................................................... 1

II.     PROCEDURAL BACKGROUND........................................ 4

III.    TERMS OF THE PROPOSED SETTLEMENT ................ 7

    A.    Benefits to Settlement Class Members from the Settlement Fund........... 7

    B.    Release And Discharge Of Claims ............................. 9

    C.    Payment Of Expenses ................................................ 10

    D.    Compensation For The Class Representative.......................... 10

    E.    Notice And Settlement Administration ................................. 10

IV.     THE CLASS NOTICE PROGRAM AND ITS RESULTS............................. 10

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT ........................................................ 12

    A.    The Settlement Was Reached After Serious, Informed, and Non-Collusive Arms-Length Negotiations and Mediation ............................. 14

    B.    The Risk, Complexity, Expense, and Duration of Continuous Litigation Favor Final Approval.................................................. 16

    C.    The Relief Provided by the Settlement Favors Final Approval .............. 18

    D.    The Extent of Discovery and Stage of the Proceedings Favors Approval.. ................................................................................... 19

    E.    The Experience and Views of Counsel Favor Approval.......................... 20

    F.    The Reaction of the Settlement Class Members Favors Final Approval .... ................................................................................... 21

VI.     NOTICE TO THE SETTLEMENT SATISFIED THE REQUIREMENTS OF DUE PROCESS ........................................ 22

VII.    CONCLUSION ........................................................... 25

i

TABLE OF CONTENTS & TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Nextel Retail Stores, L.L.C.*, No. CV 07-6576-SVW (FFMx), 2010 U.S.
    Dist. LEXIS 43377 (C.D. Cal. Apr. 12, 2010) ..................................... 15

*Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2014 U.S. Dist.
    LEXIS 1640 (N.D. Cal. Jan. 7, 2014) ..................................... 16

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ...............
    ............................................................................... 15, 20, 21, 22

*Churchill Vill. v. GE*, 361 F.3d 566 (9th Cir. 2004) ................. 14, 17, 20, 22, 23

*Edmunson v. P&G*, No. NO: 10-CV-2256-IEG (NLS), 2011 U.S. Dist. LEXIS 102561
    (S.D. Cal. Sept. 8, 2011) ..................................... 16

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................... 23

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) *aff'd* 661 F.2d 939
    (9th Cir. 1981) ..................................... 20

*Gallucci v. Boiron, Inc.*, No. 11cv2039 JAH(NLS), 2012 U.S. Dist. LEXIS 157039
    (S.D. Cal. Oct. 31, 2012) ..................................... 22

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist.
    LEXIS 160052 (E.D. Cal. Oct. 29, 2012) ..................................... 22

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S.
    Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) ..................................... 14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................... 13, 19, 23

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D.
    Me. 2003) ..................................... 24

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ............. 13

*In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ........... 21

*In re Immune Response Sec. Litig.*, 497 F. Supp. 1166 (S.D. Cal. 2007) ............. 14

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544
(N.D. Cal. Dec. 19, 2008) ............................................................. 20

*In re POM Wonderful, L.L.C.*, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25,
2014) ............................................................................................. 16

*Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
(N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ........................... 15

*Lo v. Oxnard Eur. Motors, L.L.C.*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist.
LEXIS 144490 (S.D. Cal. Dec. 15, 2011) ....................................................... 23

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) .............................. 17

*McDonald v. Chi. Milwaukee Corp.*, 565 F.2d 416 (7th Cir. 1977) ......................... 14

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ......................................... 23

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988 (9th
Cir. 2010) ............................................................................................. 21

*Milstein v. Huck*, 600 F. Supp. 254 (E.D.N.Y. 1984) ................................................ 18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ......................... 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...
.................................................................................................................. 22

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615 (9th Cir. 1982) .........................
............................................................................. 12, 14, 16, 17, 19

*Rodriguez v. W. Publ'g*, 563 F.3d 948 (9th Cir. 2009) .............................. 13, 19, 24

*Sethavanish v. ZonePerfect Nutrition Co.*, 2014 U.S. Dist. LEXIS 18600 (N.D. Cal.
Feb. 13, 2014) ........................................................................................ 16

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) .......................... 12, 16

*Young v. Polo Retail, L.L.C.*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269
(N.D. Cal. Mar. 28, 2007) ......................................................................... 20

TABLE OF CONTENTS & TABLE OF AUTHORITIES

**Statutes**

Cal. Bus. & Prof. Code § 17200 .......................................................................... 5

Cal. Bus. & Prof. Code § 17500 .......................................................................... 5

Cal. Civ. Code §1750 ......................................................................................... 5

Cal. Com. Code § 2313 ....................................................................................... 5

Fed. R. Civ. P. 23 .............................................................. 2, 23, 24, 25

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................. 23

Fed. R. Civ. P. 23(e) .......................................................................................... 22

Fed. R. Civ. P. 23(e)(2) ..................................................................................... 13

Fed. R. Civ. P. 23(f) ........................................................................................... 6

**Treatises**

ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed.

    2002) ........................................................................................... 12, 13

TABLE OF CONTENTS & TABLE OF AUTHORITIES

I. **INTRODUCTION**

Plaintiff Chanee Thurston ("Plaintiff"), and co-lead class counsel for the Class, Finkelstein Thompson LLP, Braun Law Group, P.C. and the Law Office of Janet Lindner Spielberg (collectively, "Class Counsel"), respectfully submit this memorandum in support of Plaintiff's Motion for Final Approval of Class Action Settlement (the "Motion"). As detailed below, the proposed settlement is fair, reasonable and adequate, and should be granted final approval.

This class action was brought against Defendant Bear Naked, Inc. ("BN" or "Bear Naked") for allegedly misleading consumers by labeling certain of its food products (the "Products") "100% Natural" or "100% Pure and Natural," when those Products contained certain synthetic and artificial ingredients. This Court certified a California class of purchasers of certain Bear Naked food products. *See Thurston v. Bear Naked*, No. 11-02890-H (BGS), ECF Dkt. No. 110. ("Dkt. No."). The Parties have reached a comprehensive settlement that more broadly achieves relief for purchasers of Bear Naked Products containing one of more of the following ingredients: hexane-processed soy ingredients, glycerin, potassium carbonate, and tocopherols (the "Challenged Ingredients"). This Class definition reflects the materiality of BN's "All Natural" claim as to *all* of the Challenged Ingredients. Thus, the Class definition includes consumers similarly harmed by BN's uniform misrepresentations.

The Stipulation of Settlement ("Settlement" or "Settlement Agreement") and its exhibits have been filed with the Court. Dkt. No. 167. (All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement). The terms of the Settlement are well-informed by over two years of litigation, during which time, Plaintiff completed merits and experts discovery, including multiple expert depositions. As more specifically set forth in the Parties' Settlement Agreement, and as described in more detail below, the Parties to this action have

1

reached a settlement that provides a real benefit to consumers. First and foremost, under the terms of the Settlement, BN has agreed to modify its current labeling and advertising to remove "100% Natural" and "100% Pure and Natural" representations from certain Products. Settlement Agreement § IV.B. Additionally, without any admission of liability, BN has agreed to provide monetary relief to Settlement Class Members residing in California by paying $325,000.00 to the Settlement Fund to satisfy cash payments to Settlement Class Members who submit valid claims for Products purchased between September 21, 2007 and May 1, 2014. The $325,000.00 figure was heavily negotiated and was based on a percentage of the net profit information received from BN. From this fund, Settlement Class Members are able to recover $0.50 per Product for every Product purchased during the Settlement Class Period, for which they can present written proof of purchase in the form of a receipt or a retail rewards submission, and $0.50 per Product, with a maximum recovery of $10 per household, for every Product purchased during the Settlement Class Period for which no such proof of purchase is submitted.[1] This Court has given preliminary approval to the proposed Settlement and has conditionally certified the proposed Class for settlement purposes, and notice has been provided to the Class of the hearing to consider final approval of the Settlement by the Court. In its Order certifying a California class of purchasers of certain of the Products, this Court found the requirements for certification under Federal Rule of Civil Procedure 23 satisfied. Accordingly, Plaintiff now requests that the Court enter an order in the form of the [Proposed] Final Judgment and Order of Dismissal. Dkt. No. 167-5. That Order will grant final approval.

The Settlement is fair, reasonable, and falls within the range of possible approval. Indeed, Class Counsel achieved a monetary benefit for the Class and the

---

[1] The amount of each cash payment will depend on the number and amount of authorized claims submitted per the Settlement Agreement. *See* § IV.A.3.

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1   likelihood that a greater result could be achieved at trial is remote.  Plaintiff and her

2   counsel have vigorously litigated this action for over two years, engaging in

3   extensive motion practice and discovery, and have ample knowledge of the legal

4   claims and defenses, the risks presented by the case, and the value achieved by the

5   proposed settlement.   The Settlement achieves injunctive relief in the form of a

6   modification of Bear Naked's current labeling and advertising to remove "100%

7   Natural" and "100% Pure and Natural" from certain Products.  And the Settlement

8   Fund provides a tangible and monetary benefit to the Class in lieu of the continued

9   risk of litigation where they might recover nothing.

10          The Settlement is the product of extended arm's-length negotiations between

11  experienced attorneys familiar with the legal and factual issues of this case and all

12  Settlement Class Members are treated fairly under the terms of the Settlement.  The

13  Settlement Agreement was entered into only after a mediation session before the

14  Honorable Howard B. Weiner (Ret.) followed by extensive negotiations between

15  Plaintiff's counsel and BN's counsel.   Plaintiff, by and through her respective

16  counsel, has conducted an extensive investigation into the facts and law relating to

17  this matter.  The investigation has included consulting industry personnel, extensive

18  consultation with experts, numerous interviews of witnesses and putative members of

19  the Class, as well as legal research as to the sufficiency of the claims.  Plaintiff and

20  her counsel hereby acknowledge that in the course of their investigation they

21  received, examined, and analyzed information, documents, and materials that they

22  deem necessary and appropriate to enable them to enter into the Settlement

23  Agreement on a fully informed basis.  It is a fair, reasonable and adequate result for

24  the Parties and Settlement Class Members.  To date, there have been no objections or

25  requests for exclusion.  Accordingly, Plaintiff respectfully requests that the Court

26  grant this motion.

27

28                                                3

## II.   **PROCEDURAL BACKGROUND**

In 2011, the following proposed class action complaints were filed against BN: *Thurston, et al. v. Bear Naked, Inc.*, Case No. 11-CV-02890 and *Babic v. Bear Naked, Inc.*, Case No. 11-CV-02985.  On February 9, 2012, the Court ordered the consolidation of *Thurston* and *Babic*.  *See* Dkt. No. 34.  On March 12, 2012, Plaintiffs Thurston and Babic filed a First Amended Consolidated Complaint for Damages, Equitable, Declaratory and Injunctive Relief against Defendant (Case No. 3:11-cv-02890) (the "First Amended Consolidated Complaint"), which amended and superseded the Original Complaints.

In the First Amended Consolidated Complaint, which was filed as a class action, Plaintiffs Thurston and Babic alleged they bought certain Bear Naked food products based, at least in part, on misleading statements printed on the products' labels that the products were "100% Natural" or "100% Pure and Natural."  Plaintiffs Thurston and Babic alleged that, based on the labels, they believed the products contained no synthetic or artificial ingredients and therefore paid a premium price for the products.  Plaintiffs Thurston and Babic further alleged that the products that bore the "100% Natural" or "100% Pure and Natural" labels contained certain unnatural, synthetic or artificial ingredients.  Plaintiffs Thurston and Babic further alleged that they either would not have purchased the products or would have paid less for the products had they known at the time of purchase that they contained ingredients that were unnatural, synthetic or artificial.

On April 11, 2012, BN filed a motion to dismiss the First Amended Consolidated Complaint.  Dkt. No. 40.  Plaintiffs opposed BN's motion to dismiss.  On July 16, 2012, the Court entered an Order granting in part and denying in part BNs' motion to dismiss.  Dkt. No. 50.  The Court rejected BN's arguments that Plaintiffs' claims were preempted by federal law and found that application of the primary jurisdiction doctrine was not appropriate.  The Court did dismiss Thurston

4

and Babic's Magnuson-Moss Warranty Act causes of action, common law fraud cause of action, and claim for unjust enrichment. The Court denied the remaining portions of BN's motion to dismiss the First Amended Consolidated Complaint, namely, Thurston and Babic's allegations that BN's conduct violates the unlawful, unfair and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. (the "UCL"), the False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq. (the "FAL"), the Consumers Legal Remedies Act, Cal. Civ. Code §1750, et seq. ("CLRA"), and Cal. Com. Code § 2313 (breach of express warranty).

Over the following year, the Parties engaged in extensive discovery. Plaintiffs Thurston and Babic took a number of depositions, including of BN's marketing expert, served multiple sets of requests for production of documents and interrogatories, and served several subpoenas to third parties, which resulted in the production of thousands of pages of documents. BN also served, and Plaintiffs responded to, requests for production of documents and interrogatories. Further, BN deposed the named Plaintiffs as well as Plaintiffs' marketing expert.

On April 15, 2013, Plaintiffs filed a motion for class certification (Dkt. No. 73), which BN opposed. On July 30, 2013, the Court entered an Order granting in part and denying in part the motion for class certification. Dkt. No. 110. The Court certified the following class: All California residents who purchased Bear Naked, Inc.'s food products on or after September 21, 2007 in the State of California that were labeled "100% Pure and Natural," or "100% Natural," but which contained Hexane-Processed Soy Ingredients. The Court excluded from the class anyone with a conflict of interest in this matter. Dkt. No. 110 at 21. The Court also appointed Chanee Thurston as the Class Representative, and Feinstein Doyle Payne & Kravec; Finkelstein Thompson LLP; Braun Law Group, P.C.; and Law Offices of Janet Lindner Spielberg as Class Counsel. The Court denied the motion for class

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

certification as to the remaining Challenged Ingredients—glycerin, tocopherols, and potassium carbonate—on the basis that those ingredients were allowed in certified "organic" goods and consumers may equate "natural" with "organic." Dkt. No. 110 at 14-15.

On August 12, 2013, BN filed a petition to appeal the Court's order granting in part the motion for class certification under Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit.   Plaintiffs filed an opposition to BN's Rule 23(f) petition on August 22, 2013. On October 22, 2013, the Ninth Circuit denied BN's petition.   On October 24, 2013, BN filed a motion to decertify the class (Dkt. No. 133), which the Court denied.

On October 23, 2013, the Parties participated in a mediation conducted by the Honorable Howard B. Weiner (Ret.).  A settlement was not reached.  Subsequent to those sessions, the Parties engaged in protracted, extensive, and hard-fought settlement negotiations.  As a result of those negotiations, the Parties agreed to settle the Litigation pursuant to the terms set forth in the Settlement Agreement.

Throughout the Litigation, Plaintiff Thurston (hereinafter referred to as "Plaintiff") by and through her respective counsel, conducted a thorough examination and investigation of the facts and law relating to the matters in this case, including, but not limited to, completing merits and expert discovery, review and analysis of BN's documents and data, and extensive research and assessment of the Challenged Ingredients and the Products.  Class Counsel also evaluated the merits of all Parties' contentions and evaluated this Settlement, as it affects all Parties, including Settlement Class Members.  Plaintiff and Class Counsel, after taking into account the foregoing, along with the risks and costs of further litigation, are satisfied that the terms and conditions of this Settlement are fair, reasonable and adequate, and that this Settlement is in the best interest of the Settlement Class Members.

As a result of this extensive investigation and the extensive negotiations, the

6

1  Parties reached the proposed Settlement, and the Settlement Agreement was fully

2  executed on May 2, 2014. Dkt. No. 167. BN, while denying all allegations of

3  wrongdoing and disclaiming all liability, considers it desirable to resolve the action

4  on the terms stated herein in order to avoid further expense, inconvenience and

5  burden and, therefore, has determined that this Settlement on the terms set forth is in

6  BN's best interests.

7      On May 27, 2014, the Court entered an order: (1) Certifying Class for

8  Settlement Purposes; (2) Preliminarily Approving Class Settlement; (3) Approving

9  Class Notice; and (4) Scheduling Fairness Hearing for September 2, 2014. Dkt. No.

10  168.

11  **III.   TERMS OF THE PROPOSED SETTLEMENT**

12      The Parties reached the Settlement Agreement through extended and vigorous

13  debate of legal and factual theories by counsel and extensive arm's-length

14  negotiations.  The Settlement Class consists of all California residents who, at any

15  time between September 21, 2007 and May 1, 2014, purchased any of the Products.

16  Excluded from this definition are: (a) Defendant's employees, officers and directors;

17  (b) persons or entities who purchased the Products for the purpose of re-sale;

18  (c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who

19  timely and properly exclude themselves from the Class as provided in the Settlement

20  Agreement; and (f) the Court, its immediate family and staff.  Settlement Class

21  Members who exclude themselves, pursuant to the procedures set forth in Section

22  VI.B of the Settlement Agreement, shall no longer thereafter be Settlement Class

23  Members and shall not be bound by the Settlement Agreement.

24      **A.   Benefits to Settlement Class Members from the Settlement Fund**

25      BN has agreed to injunctive relief in the form of a modification of its current

26  labeling and advertising to remove the "100% Natural" and "100% Pure and Natural"

27  from certain Products. *See* Settlement Agreement § IV.B.

28

7

Additionally, the Settlement provides for monetary relief to the proposed Settlement Class by, among other things, requiring BN to pay $325,000.00 into the Settlement Fund. *See* Settlement Agreement § IV.A.2. BN shall fund the Settlement Fund within seven (7) days of the Effective Date. The Settlement Fund shall be applied to pay in full and in order: (i) any Expense Award made by the Court to Class Counsel under section VIII(a) of the Settlement Agreement; (ii) any Incentive Award approved by the Court under section VIII(c) of the Settlement Agreement; and (iii) payments to authorized Claimants and any others as allowed by the Settlement and approved by the Court.

Settlement Class Members may seek reimbursement of $0.50 per Product for every Product purchased during the Settlement Class Period, for which they can present written proof of purchase in the form of a receipt or a retail rewards submission. Settlement Class Members may make a claim for every Product for which they submit a valid Claim Form. For Products for which Settlement Class Members cannot present such proof of purchase, they may seek reimbursement of $0.50 per Product, with a maximum recovery of $10. Settlement Agreement § IV.A.1(a)-(b). Settlement Class Members may obtain relief under both sections IV.A.1(a) and (b), with the appropriate paper work and subject to the maximum recovery amount permitted for claims made without written proof of purchase. The amount of each cash payment will depend on the number and amount of authorized claims submitted. If the total amount of eligible claims exceeds the Settlement Fund, then each claimant's award shall be proportionately reduced. If after all valid claims (plus other authorized costs and expenses) are paid, money remains in the Settlement Fund, the remaining amount shall be used to increase pro rata the recovery of each eligible claim.

To be eligible for a cash payment, a Settlement Class Member must timely submit a signed and completed Claim Form containing his or her name and mailing

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

address.  The Claim Form will also request an e-mail address for the Settlement Class Member, but an e-mail address will not be required to be eligible for a cash payment. The Settlement Administrator may pay claims that are otherwise valid but untimely filed if there is sufficient money to pay all valid and timely claims in full plus untimely but otherwise valid claims from the Settlement Fund, and payment of any such untimely but valid claims is administratively feasible and otherwise reasonable, taking into account the need to timely pay claims.  The determination of the Class Action Settlement Administrator after consultation with Class Counsel and Defendant's Counsel concerning the eligibility and amount of payment shall be final. In the event a Settlement Class Member disagrees with such a determination, the Class Action Settlement Administrator agrees to reconsider such determination, which includes consultation with Class Counsel and Defendant's Counsel.  To be eligible, Claim Forms must be postmarked or submitted online no later than eight (8) days before the Settlement Hearing.  § IV.A.1 and § IV.A.6(d).  All Claimants must include information in the claim form—completed online or in hard copy mailed to the Settlement Administrator—confirming, under penalty of perjury, that they did in fact purchase from September 21, 2007 up to and May 1, 2014 the packages of Product(s) for which they seek reimbursement.  *See* Settlement Agreement § IV.A.1.d.

## B. Release And Discharge Of Claims

The Settlement provides for a specific release of claims or causes of action based on or related to the Products as described and/or alleged in the First Amended Consolidated Complaint in this action.  The release will finally resolve Plaintiff's and Settlement Class Members' claims once the Settlement becomes effective as defined in the Settlement. *See* Settlement Agreement § VII.

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

### C.      Payment Of Expenses

Class Counsel will not make an application for any attorneys' fees. Settlement Agreement § VIII.A.   Class Counsel will limit their application to an award of reasonable, actual out-of-pocket expenses from the Settlement Fund. *Id.* BN retains the right to oppose such a request. *Id.*

### D.      Compensation For The Class Representative

In addition to the individual relief discussed above, BN has also agreed, subject to Court approval, to pay an incentive award to the Class Representative Chanee Thurston, not to exceed $2,000. The payment by BN of the Incentive Award will be from the Settlement Fund to the extent approved and ordered by the Court. *See* Settlement Agreement § VIII.C.

### E.      Notice And Settlement Administration

The Settlement Fund will not be used to pay for the costs of providing notice to the Class or claims administration. BN separately retained Garden City Group to provide notice and claims administration, as discussed below. *Id.* § IV.A.2

## IV.      THE CLASS NOTICE PROGRAM AND ITS RESULTS

The Parties developed a notice program with the help of Garden City Group ("GCG"), a firm that specializes in class legal administration. The notice program (detailed in the Settlement Agreement § V and exhibits thereto (Dkt. No. 167-4 and Dkt. No. 167-7)) was preliminarily approved by the Court. Preliminary Approval Order at § III (Dkt. No. 168). Class Notice was designed to provide broad notice intended to reach as many Settlement Class Members as reasonably possible and satisfy due process requirements.

The notice program was implemented in accordance with the terms approved by the Court and was designed to reach up to 83% of the Class. Declaration of Jennifer M. Keough ("Keough Declaration") (attached to the accompanying Rivas Declaration as Exhibit A) at ¶ 5.   On June 5, 2014 the Settlement website

10

1    (http://www.naturalclasssettlement.com/) went live. *Id.* at ¶ 12.

2        The notice program approved by the Court also included a robust Publication

3    Notice program that focused on publishing Notice in targeted periodicals. *Id.* at ¶¶ 7 -

4    9. Publication Notice was designed to provide the Class with plain language

5    information regarding the Settlement and to inform them about their rights. *Id.* at ¶ 9.

6    It included a general description of the lawsuit, the Settlement relief, instructions on

7    how to file a claim, and a general description of Settlement Class Members' legal

8    rights. For additional information, the Publication Notice directed Settlement Class

9    Members to the Settlement website or, in the alternative, to a toll-free number they

10   could call for information, and also advised them that they could submit a Claim

11   Form by mail or on-line.

12       Publication Notice appeared in various sources chosen based on market

13   research on the demographics of consumers who purchased the eligible Products. *Id.*

14   at ¶ 7. Publication Notice appeared in three California print editions of magazines and

15   four California newspapers chosen because they matched the demographics of the

16   Settlement Class Members and which have a combined circulation of 8,128,058. *Id.*

17   at ¶ 9.

18       The Settlement was also publicized through the use of Internet banner notice.

19   *Id.* at ¶ 10.  When presented with such an ad, an interested Internet user needed to

20   only click on the banner ad to be taken directly to the Settlement website. *Id.* Internet

21   banner ads appeared on the following online networks and websites: Xasis Premium

22   Network, Yahoo.com, and Advertising.com. *Id.*

23       The Settlement was also publicized through a national press release distributed

24   in both English and Spanish with substantially the same language as the Publication

25   Notice. *Id.* at ¶ 11.

26       The address of the website dedicated to the Settlement appeared on all of the

27   notice pieces, and is hyper-linked where a notice piece appears on the Internet. *Id.* at

28                                          11

1   ¶ 12. The Settlement website provides detailed information about the Settlement and

2   the ability to submit an online claim, as well as a copy of Notice and the Claim Form

3   and a copy of the Order and the Stipulation. *Id.* In addition, Settlement Class

4   Members are advised of their legal rights, including, for example, how to opt-out or

5   object to the Settlement. The Settlement website, including the online Claim Form,

6   was operational as of June 5, 2014. *Id.*

7   The Class Notice is available on the Settlement website. *Id.*. The Class Notice

8   contains detailed information about the lawsuit, the Settlement benefits, the release

9   and how to opt-out, object and exercise other rights under the Settlement. As of July

10  24, 2014, there have been 59,814 visitors to the class website. *Id.*.

11  In addition, on June 5, 2014, a toll-free phone number was established,

12  allowing Settlement Class Members to call and request that a Notice be mailed to

13  them or listen to frequently asked questions. *Id.* at ¶14.

14  The details of the Class Notice Program, including the methodology

15  underlying its design, were explained in detail in the Settlement Agreement § V (Dkt.

16  No. 167). Use of the Internet and traditional methods for publication maximized the

17  effect of the dollars spent to contact the Class. Publication through the Internet had

18  the further advantage of immediately linking the reader to the Settlement website and

19  the Claim Form.

20  ## V.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE

21  PROPOSED SETTLEMENT

22  The law favors settlement, particularly in class actions and other complex

23  cases where substantial resources can be conserved by avoiding the time, costs and

24  rigors of prolonged litigations. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943,

25  950 (9th Cir. 1976); *Officers for Justice v. Civil Service Comm'n of the City and

26  County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that "voluntary

27  conciliation and settlement are the preferred means of dispute resolution."); ALBA

28

12

1  CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002)

2  (emphasizing that "by their very nature, because of the uncertainties of outcome,

3  difficulties of proof, length of litigation, class action suits lend themselves readily to

4  compromise").

5      Indeed, the promotion of fair, adequate and reasonable settlements is a

6  fundamental tenet of litigation in the federal courts.  The Fifth Circuit, among others,

7  has succinctly summarized the underlying principles:

8
> The very uncertainty of outcome in litigation, as well as the avoidance of
9
> wasteful litigation and expense, lay behind the congressional infusion of a
> power to compromise. This is recognition of the policy of the law generally
10
> to encourage settlements.

11  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

12      A proposed class action settlement may be approved if the Court, after

13  allowing absent class members an opportunity to be heard, finds that the settlement is

14  "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).   When assessing a

15  proposed settlement, "the court's intrusion upon what is otherwise a private

16  consensual agreement negotiated between the parties to a lawsuit must be limited to

17  the extent necessary to reach a reasoned judgment that the agreement is not the

18  product of fraud or overreaching by, or collusion between, the negotiating parties,

19  and the settlement, taken as a whole, is fair, reasonable and adequate to all

20  concerned."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)

21  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

22      The Ninth Circuit has held that the district court's ultimate determination will

23  necessarily involve a balancing of several factors which may include, among others,

24  some or all of the following: "(1) the strength of the plaintiff's case; (2) the risk,

25  expense, complexity and likely duration of further litigation; (3) the risk of

26  maintaining class action status throughout the trial; (4) the amount offered in

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoted in *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011)).

The Ninth Circuit, however, also limits the inquiry made by district courts as follows:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what <u>might</u> have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (citations omitted, emphasis in original).

Accordingly, for a settlement to warrant approval, class members need not obtain all that they may have desired or hoped, or even what they might be entitled to if the case were fully litigated. "[T]he inherent nature of a compromise is to give up certain rights or benefits in return for others." *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429 (7th Cir. 1977).

**A.    The Settlement Was Reached After Serious, Informed, and Non-Collusive Arms-Length Negotiations and Mediation**

The settlement was reached after arms-length negotiations and was guided by the wisdom of an experienced and impartial mediator. Settlements that are the product of such negotiations are considered presumptively fair and reasonable. *Garner v. State Farm Mut. Auto. Ins. Co.,* No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *35 (N.D. Cal. Apr. 22, 2010); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) ("[T]he fact that

14

the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair.") (quoting *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (alterations in original)).

Here, Counsel for Defendant and Plaintiff conducted diligent and often spirited negotiations to reach this Settlement. Ultimately, the parties agreed upon the settlement after a mediation session before the Honorable Howard B. Weiner (Ret.) followed by extensive negotiations between Plaintiff's counsel and BN's counsel. The Parties then launched into the process of negotiating the language and numerous details of the Settlement Agreement. For over six months following the mediation session with Judge Weiner (Ret.), the Parties negotiated over details of the Settlement, including significant sticking points with respect to the amount of relief an individual claimant could receive, the Notice Program, the scope of the non-monetary terms of the settlement, and the scope of the release, among a host of other issues.

These facts, along with the involvement of an extremely knowledgeable and experienced mediator (the Honorable Howard B. Weiner (Ret.)), demonstrate the Settlement was anything but collusive. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *Anderson v. Nextel Retail Stores, LLC*, No. CV 07–4480–SVW (FFMx), 2010 U.S. Dist. LEXIS 43377, at *44 (C.D. Cal. Apr. 12, 2010) ("Because the present agreement was reached through arms-length negotiation between experienced parties whose negotiations were overseen by an experienced mediator, it is entitled to a presumption of fairness.").

The substantial involvement and assistance of a highly qualified mediator, the

15

nature of the subsequent negotiations between the Parties, and the experience of Class Counsel and Defendant's Counsel as longstanding class action attorneys, are all illustrative of the arms-length negotiation that led to the Settlement. Accordingly, final approval of the Settlement is warranted.

**B.   The Risk, Complexity, Expense, and Duration of Continuous Litigation Favor Final Approval**

Settlements resolve inherent uncertainty on the merits of litigation, and are therefore strongly favored by the courts, particularly in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *Officers for Justice*, 688 F.2d at 625. Assuming litigation were to proceed, the hurdles Plaintiff faced would include decertification and trial. *See, e.g., In re POM Wonderful, LLC*, 2014 U.S. Dist. LEXIS 40415 (C.D. Cal. Mar. 25, 2014) (decertifying nationwide class); *see also Sethavanish v. ZonePerfect Nutrition Co.*, 2014 U.S. Dist. LEXIS 18600, at *13-18 (N.D. Cal. Feb. 13, 2014) (denying class certification, finding lack of ascertainability); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 U.S. Dist. LEXIS 1640, at *8-41 (N.D. Cal. Jan. 7, 2014) (denying class certification for lack of ascertainability and predominance). Although Plaintiff is confident of his deceptive advertising claims against BN, Plaintiff must balance the perceived strength of the Class claims against the undeniable risks of continuing litigation.

Further, if the case proceeded to the merits BN would of course argue that its claims on the product labeling are not deceptive or misleading. Plaintiff would argue otherwise resulting in another battle of the experts on the legitimacy of the claims challenged by this case. In addition, Plaintiff would be required to prove both his theory and calculations of recoverable damages with the help of expert testimony.

Defendant also would likely argue that its advertising constituted mere puffery. *See Edmunson v. P&G*, No. 10-CV-2256-IEG (NLS) 2011 U.S. Dist. LEXIS 102561, at *4-8 (S.D. Cal. Sep. 8, 2011) (finding as a matter of law razor manufacturer's

1  advertisements about closeness and comfort of blade to be mere puffery).

2      BN has denied and continues to deny all of the claims and contentions alleged

3  by Plaintiff. Litigating this class action through trial would be time-consuming and

4  expensive with an uncertain result. The questions of whether BN has sufficient

5  substantiation for its challenged claims, and the amount of any damages, would

6  require analysis by experts for both Parties. In this type of case, the Parties typically

7  utilize marketing, consumer behavior, and damages experts in addition to any

8  scientific experts engaged. At trial, yet another battle of the experts would ensue on

9  these issues.

10      Even if Plaintiff overcomes all obstacles and obtains a judgment for the Class,

11  the recovery might be of no greater value to Settlement Class Members, and indeed

12  might be substantially less valuable, than the proposed settlement. Moreover, BN

13  would likely appeal any favorable judgment obtained by Plaintiff. Thus, even in the

14  best case, it could take years to get relief for Settlement Class Members. There is a

15  significant advantage of receiving a benefit now as opposed to later. *See Officers for*

16  *Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th

17  Cir. 1977).

18      In addition to the substantial risks and uncertainty inherent in continued

19  litigation, the Parties face the certainty that further litigation would be expensive,

20  complex, and time consuming. The expense, complexity and duration of litigation are

21  significant factors considered in evaluating the reasonableness of a settlement.

22  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). The

23  Settlement here provides Settlement Class Members with benefits without the risk

24  and delay of continued litigation, trial and appeal. In contrast, the measure of

25  damages or restitution, the difference in the price of the eligible Products as

26  advertised versus as received, would not be known until after the evidence was

27  presented at trial. The challenge of proving damages could result in a very small

28

17

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF<br/>CLASS ACTION SETTLEMENT

recovery.

At minimum, absent settlement, this Action would likely continue for years before Plaintiff or the Class would see any recovery. That a settlement would eliminate the delay and expenses strongly weighs in favor of approval. *See id.*; *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the Parties will avoid protracted litigation and will establish a means for prompt resolution of Settlement Class Members' claims. The avenue of relief provided by the Settlement ensures meaningful benefits to Settlement Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, including the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class and favors final approval.

## C.   **The Relief Provided by the Settlement Favors Final Approval**

The Settlement provides real relief to the Class. It provides Settlement Class Members with a refund of $0.50 for every package of the eligible Products purchased during the Class Period only limited up to $10 for those without proof of purchase — recovery that could exceed the amount a Claimant would receive if the case were tried (as Defendant would argue that Settlement Class Members were not damaged because they received the product paid for). Settlement Class Members' ability to recoup funds spent on the eligible Products is not limited by or dependent on their ability to provide proof of purchase. And, none of this value reverts to BN; in one way or another, the entire Settlement inures to the benefit of the Class. The substantial relief afforded by the Settlement weighs in favor of final approval.

The Settlement specifically addresses the alleged deceptive practices and provides carefully tailored economic benefits to all Settlement Class Members who submit valid claims. Settlement Class Members can claim a reimbursement for the eligible Purchases depending on the amount of their purchases during the Class

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Period. Settlement Agreement § IV.A.

In addition, finely tailored non-monetary relief remedies the very alleged wrongful conduct at issue: false advertising. Further, the agreement of BN to modify its current labeling and advertising to remove "100% Natural" and "100% Pure and Natural" from those Products that contain hexane-processed soy ingredients, unless the ingredients are approved or determined as acceptable for products identified as "natural" by a federal agency or controlling regulatory body may be *more* than Class Counsel could have achieved through trial.  Settlement Agreement § IV.B

In evaluating this factor, courts should not substitute their own judgment for the negotiated resolution of the parties. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965.

The Settlement provides real benefits to the Class, especially when compared with the risks of further litigation. This factor weighs in favor of approving the Settlement.

**D.    The Extent of Discovery and Stage of the Proceedings Favors Approval**

When litigation has proceeded to the point where the parties have a "clear view

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

of the strengths and weaknesses of their cases," this factor supports approval of a settlement. *Chun-Hoon*, 716 F. Supp. 2d at 852; *Young v. Polo Retail, LLC*, No C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, at *12 (N.D. Cal. Mar. 28, 2007) (citation omitted). Class Counsel independently began investigating the alleged deceptive advertising for months before filing this action. Class Counsel reviewed and analyzed Defendant's advertising and labeling, and conducted an independent investigation of the scientific and factual basis for the advertising of Defendant's products.   Class Counsel also conducted extensive discovery in the litigation. In total, Plaintiff obtained and reviewed thousands of documents through discovery, which concerned: (i) label design and product formulation; (ii) marketing, advertising, media, and public relations; and (iii) financial information. In addition, Class Counsel conducted the deposition of BN's marketing expert.

Equipped with this information, the Parties were able to make a clear assessment of their claims and the likelihood of success on the merits. The litigation had, without doubt reached the stage at which the Parties have a clear view of the strengths and weaknesses of their cases, prior to reaching compromise.

**E.    The Experience and Views of Counsel Favor Approval**

Courts recognize that the opinions of experienced counsel supporting a settlement, especially after vigorous arm's-length negotiations, are entitled to considerable weight. *Churchill Village*, 361 F.3d at 576 (giving this factor significant consideration); *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544 at *4 (N.D. Cal. Dec. 19, 2008) ("[s]ignificant weight should be attributed to counsel's belief that settlement is the best interest of those affected by the settlement."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). In this litigation, the experience and views of Class

20

1  Counsel, who specialize in consumer fraud and false advertising class actions,

2  strongly favors final approval.

3      Class Counsel are experienced class action litigators with a history of success

4  in similar false advertising litigation. Class Counsel worked diligently to secure the

5  best possible result for the Class and Class Counsel's views and recommendations

6  concerning the Settlement are the product of thorough analysis and consideration of

7  the issues and risks of continued litigation.   Class Counsel believes the results

8  achieved by the Settlement are eminently fair, adequate and reasonable.

9      The Court should also consider the skill and competence of opposing counsel

10  who negotiated the Settlement. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438

11  F. Supp. 1303, 1337 (C.D. Cal. 1977) (noting that Class Counsel faced "established

12  and skillful defense lawyers"). A team of very experienced attorneys represents BN

13  from the firm of Jenner and Block LLP, a firm skilled in class action defense.

**F.**   **The Reaction of the Settlement Class Members Favors Final**
         **Approval**

15      Courts have likewise recognized that a favorable reaction by class members to

16  the proposed settlement strongly supports final approval. *See Chun-Hoon*, 716 F.

17  Supp. 2d at 852 ("The reaction of class members to the proposed settlement, or

18  perhaps more accurately the absence of a negative reaction, strongly supports

19  settlement."). Settlement Class Members must be allowed the opportunity to review

20  and object to both the preliminary notice of settlement and plaintiff's application for

21  attorneys' fees prior to final approval. *See In re Mercury Interactive Corp. Sec. Litig.,*

22  618 F.3d 988, 993-94 (9th Cir. 2010).

23      Though the opt out deadline is August 25, 2014 and the objection deadline is

24  August 4, 2014, the reaction of Settlement Class Members so far is overwhelmingly

25  positive. As of July 24, 2014, no Settlement Class Member has opted out or objected

26  to the Settlement. Keough Declaration, at ¶ 15-16.

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1  The response of the members of the class to date strongly supports final

2  approval. *See, e.g., Churchill Village, LLC*, 361 F.3d at 577 (affirming approval of a

3  class action settlement where 45 objections were received out of 90,000 notices);

4  *Gallucci v. Boiron, Inc.*, No. 11-CV-2039, 2012 U.S. Dist. LEXIS 157039, at *19

5  (S.D. Cal. Oct. 31, 2012) ("The response of the Class to this action, the certification

6  of a class, and the Settlement . . . strongly favors final approval of the Settlement. Out

7  of the estimated millions who received Notice . . . only two class members submitted

8  valid requests for exclusion. Moreover, only three Objections were filed."); *Garcia v.*

9  *Gordon Trucking, Inc.*, No. 10-CV-0324, 2012 U.S. Dist. LEXIS 160052, at *14, 17,

10  19 (E.D. Cal. Oct. 31, 2012) (no objections and less than 1% of the class electing to

11  opt outweighed in favor of final approval and the adequacy of the amount offered in

12  settlement); *Chun-Hoon*, 716 F. Supp. 2d at 852 (granting final approval where "[a]

13  total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were

14  made from the class of roughly three hundred and twenty-nine (329)

15  members");*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529

16  (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class

17  action settlement raises a strong presumption that the terms of a proposed class action

18  settlement are favorable to the class members"). Any objections filed by the objection

19  deadline will be addressed in Plaintiff's reply memorandum.

20  In sum, the Settlement is the product of mediated negotiations between the

21  parties, fully informed of the relative strengths and weaknesses of their claims and

22  defenses. The Settlement is fair, adequate and reasonable, and warrants final approval

23  under Rule 23(e).

24  **VI.   NOTICE TO THE SETTLEMENT SATISFIED THE REQUIREMENTS**

25       **OF DUE PROCESS**

26  The notice provided to the Class was adequate and satisfies Rule 23 and all

27  other due process requirements. Rule 23 requires that "the court . . . direct to class

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). While actual notice is not required, the notice must be reasonably calculated to apprise the Class of the pendency of the settlement and afford them an opportunity to present their objections or opt-out. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The threshold requirement concerning the sufficiency of class notice is whether the means employed to distribute the notice is reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and class members' rights to opt out or object. *Eisen*, 417 U.S. at 173-74; *Mullane,* 339 U.S. at 315. The mechanics of the notice process are best left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 U.S. Dist. LEXIS 144490, at *21 (S.D. Cal. Dec. 15, 2011) (citation omitted).

In this circuit, it has long been the case that notice of settlement will be adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575 (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide absent class members with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

The Class Notice disseminated in this action —collectively the long form Notice of Class Action Settlement and the Publication Notice — satisfied these

23

content requirements.    The Class Notice was written in simple, straightforward language and included: (1) basic information about the lawsuit; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Settlement Class Members can obtain Settlement benefits; (4) an explanation of how Settlement Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against BN that could have been litigated in this action will be released if the Class Member does not opt out from the Settlement; (6) the name of Class Counsel and information regarding attorneys' expenses, and Plaintiff's incentive awards; (7) the Settlement Hearing date; (8) an explanation of eligibility for appearing at the Settlement Hearing; and (9) the Settlement Website and a toll-free number where additional information may be obtained. The Class Notice also informed Settlement Class Members that Plaintiff's final approval brief and request for attorneys' expenses would be filed prior to or on July 28, 2014, which is before the objection deadline.

Collectively, the Class Notice provided Settlement Class Members with sufficient information to make an informed and intelligent decision about the Settlement. It therefore satisfied the content requirements of Rule 23. *See also In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class.").

Additionally, dissemination of the Class Notice satisfied all due process requirements. The eligible Products are small dollar, over-the-counter retail purchases, and there is no way to easily identify all individual Settlement Class Members. Because BN does not sell the Products directly to consumers, BN does not have mailing addresses or other contact information for most Settlement Class

24

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Members. Therefore, the Notice Program included publishing the Publication Notice in targeted sources that directed Settlement Class Members to various other methods of obtaining the Claim Form.   Additionally, Class Notice is available on the Settlement Website and is provided to Settlement Class Members who request it via the toll-free number established for this Settlement. The notice plan provided under the Settlement apprised Settlement Class Members of the pendency of the action and their right to object or exclude themselves from the Settlement. This Court previously approved the form and manner of notice. Preliminary Approval Order (Dkt. No. 168). The Class Notice Program was executed as previously detailed.

## VII.   CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court grant this motion for final approval.

Dated:  July 28, 2014                          Respectfully submitted,

**FINKELSTEIN THOMPSON**

By: /s/ Rosemary M. Rivas
    ROSEMARY M. RIVAS

505 Montgomery Street, Suite 300
San Francisco, CA  94111
Telephone:  (415) 398-8700
Facsimile:  (415) 398-8704
Email:    rrivas@finkelsteinthompson.com

**BRAUN LAW GROUP**

By: /s/ Michael Braun
    MICHAEL BRAUN

10680 W. Pico Boulevard, Suite 280
Los Angeles, CA 90064
Phone: (310) 836-6000
Fax: (310) 836-6010
Email: mdb@braunlawgroup.com

25

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

1

2

**LAW OFFICE OF JANET LINDNER SPIELBERG**

3

By: /s/ Janet Lindner Spielberg
       JANET LINDNER SPIELBERG

4

5

12400 Wilshire Boulevard, Suite 400
Los Angeles, CA 90025
Phone: (310) 392-8801
Fax: (310) 836-6010
Email: jlspielberg@jlslp.com

6

7

*Co-Lead Class Counsel*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT