UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANEE THURSTON, et al., individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>vs.<br><br><br><br>BEAR NAKED, INC.,<br><br>                           Defendant. | CASE NO. 11-CV-2890-H (BGS)[1]<br><br>**FINAL JUDGMENT AND ORDER:**<br><br>**(1) CERTIFYING SETTLEMENT CLASS;**<br><br>**(2) GRANTING FINAL APPROVAL OF CLASS SETTLEMENT;**<br><br>**(3) APPROVING PLAINTIFF'S REQUEST FOR EXPENSES AND INCENTIVE AWARD** |

    On July 28, 2014, Plaintiff Chanee Thurston ("Plaintiff") filed a motion for final approval of the class settlement. (Doc. No. 171.) On July 28, 2014, Plaintiff also filed a motion for reimbursement of expenses and an incentive award for Plaintiff. (Doc. No. 170.) The Court held a hearing on September 2, 2014. No objectors appeared at the hearing. Attorneys Rosemary Rivas and Michael Braun appeared telephonically for Plaintiffs. Attorney Dean Panos appeared telephonically for Defendant. After due

---

[1] This is the lead case, along with consolidated case 11-CV-2985-H (BGS). (Doc. No. 34.) This Order applies to both cases.

consideration, the Court certifies the settlement class, grants final approval of the settlement, approves Plaintiff's request for expenses, approves the incentive award, and enters final judgment.

## Background

### I.     Factual and Procedural Background

This is a consumer class action lawsuit brought on behalf of people who have purchased Bear Naked food products. Plaintiff claims the products contained deceptive and misleading labeling and advertisements. (Doc. No. 36 ¶¶ 1-2.) Plaintiff alleges that Defendant packaged, marketed, distributed, and sold Bear Naked products as being "100% Natural" or "100% Pure and Natural." (Id.) Plaintiff claims certain ingredients or processes used to manufacture Bear Naked products are not "natural," but rather are synthetic. (Id.)

In 2011, Plaintiff Thurston, Lawrence G. Knowles, III, and Milan Babic (together "Plaintiffs") filed class action complaints against Bear Naked: Thurston, et al. v. Bear Naked, Inc., 11-CV-2890 (initially filed in the U.S. District Court for the Northern District of California (11-CV-4678)), and Babic v. Bear Naked, Inc., 11-CV-02985 (collectively "the Original Complaints"). On February 9, 2012, the Court ordered the consolidation of the Thurston case with the Babic case. (Doc. No. 34.)

On March 12, 2012, Plaintiffs filed a First Amended Consolidated Complaint (the "First Amended Consolidated Complaint"), which amended and superseded the Original Complaints. (Doc. No. 36.) On April 11, 2012, Bear Naked filed a motion to dismiss the First Amended Consolidated Complaint. (Doc. No. 40.) On July 16, 2012, the Court granted in part and denied in part Defendant's motion to dismiss. (Doc. No. 50.)

On August 15, 2012, Bear Naked answered the First Amended Consolidated Complaint. (Doc. No. 52.) The parties engaged in extensive discovery, including depositions of Bear Naked's marketing expert, multiple sets of requests for production

of documents and interrogatories, and several subpoenas to third parties. (Doc. No. 166-1 at 6.) Further, Bear Naked deposed the named Plaintiffs as well as Plaintiffs' marketing expert. (Id.)

On April 15, 2013, Plaintiffs filed a motion for class certification. (Doc. No. 73.) On July 30, 2013, the Court certified a class of California purchasers of Bear Naked products marketed and labeled as "100% Pure and Natural" or "100% Natural" but which contained Hexane-Processed Soy ingredients. (Doc. No. 110 at 21.) The Court appointed Feinstein Doyle Payne & Kravec, LLC, Finkelstein Thompson LLC, Braun Law Group, P.C. and the Law Offices of Janet Lindner Spielberg as class counsel.[2] (Id.)

On August 12, 2013, Bear Naked filed a petition to appeal the Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f) in the United States Court of Appeals for the Ninth Circuit. (Doc. No. 112.) On October 22, 2013, the Ninth Circuit denied Bear Naked's petition for permission to appeal the District Court's class certification ruling. (Doc. No. 129.)

On October 24, 2013, Bear Naked filed a motion to decertify the class. (Doc. No. 133.) On November 22, 2013, the Court denied Bear Naked's motion to decertify the class. (Doc. No. 203 in related case 11-CV-1967.)

On October 23, 2013, the parties participated in a mediation before an experienced mediator. (Doc. No. 167 ¶ I.M.) On May 2, 2014, the parties entered into a Stipulation of Settlement. (Doc. No. 167.) On May 2, 2014, Plaintiff Thurston filed a motion for preliminary approval of class settlement, conditional certification of the settlement class, and approval of the class notice. (Doc. No. 166.) On May 27, 2014, the Court granted preliminary approval of the settlement, provisionally certified a settlement class under Federal Rule of Civil Procedure 23(b)(3), and approved the form

---

[2] Because the First Amended Consolidated Complaint did not allege that Plaintiffs Babic and Knowles purchased Bear Naked products containing hexane-processed soy ingredients, the Court declined to appoint them as class representatives. (Doc. No. 110 at 21 n.4)

and manner of notice.  (Doc. No. 168 at 13.)

**II.     The Settlement**

The settlement provides relief to a settlement class comprising California residents who, at any time between September 21, 2007 and May 1, 2014, purchased any of the Bear Naked products labeled "100% Natural" or "100% Pure and Natural" that contained any of the Challenged Ingredients.  (See Doc. No. 167 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Bear Naked products).)  Excluded from the class are: (a) Bear Naked's employees, officers and directors; (b) persons or entities who purchased the Bear Naked products for the purpose of re-sale; (c) retailers or re-sellers of the Bear Naked products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the settlement class; and (f) the Court, the Court's immediate family, and Court staff.  (Id. ¶ II.A.5.)

The settlement provides for monetary relief to the settlement class by requiring Bear Naked to pay $325,000 into a settlement fund.  (Id. ¶ IV.A.2.)  The settlement fund pays any expense award made by the Court to class counsel, any incentive award made by the Court to the class representative, and payments to authorized claimants.  (Id. ¶ IV.A.2.b.)  The settlement fund will not be used to pay for the costs of providing notice to the settlement class, or claims administration.  (Id. ¶ IV.A.2.c.)  Bear Naked will retain a Class Action Settlement Administrator to provide notice and claims administration.  (Id.)

The settlement also provides that class counsel may apply for an award of reasonable, out-of-pocket expenses from the settlement fund and the named plaintiff may apply for a $2,000 incentive award from the settlement fund.  (Id. ¶¶ VIII.A., VIII.C.).

Settlement class members may seek reimbursement of $0.50 per package for every Bear Naked product purchased from September 21, 2007 to May 1, 2014.  (Id. ¶ IV.A.1.)  Settlement class members may seek reimbursement by presenting written proof of purchase in the form of a receipt or a retail rewards submission, in which case

1  there is no limit on the amount of their recovery. (Id.) Settlement class members may
2  seek reimbursement without presenting written proof of purchase by submitting a valid
3  claim form, in which case there is a maximum recovery of $25 per household. (Id.)
4  If the total amount of eligible claims exceeds the $325,000 settlement fund, then each
5  claimant's award will be proportionately reduced. (Id. ¶ IV.A.3.) If money remains
6  in the settlement fund after all valid claims, costs, and expenses are paid, the remaining
7  amount will be used to increase pro rata the recovery of each eligible claim. (Id.)

8       Furthermore, the proposed settlement requires Bear Naked to modify its labeling
9  and advertising to remove "100% Natural" and "100% Pure and Natural" from those
10 products that contain hexane-processed soy ingredients unless the ingredients are
11 approved or determined as acceptable for products identified as "natural" by a federal
12 agency or controlling regulatory body. (Id. ¶ IV.B.)

13      In exchange, class members, other than those who opt-out, agree to release all
14 claims asserted in the First Amended Consolidated Complaint relating to Bear Naked's
15 packaging, marketing, distribution, or sale of food products labeled as "100% Natural"
16 or "100% Pure and Natural." (Id. ¶ VII.)

17 **III.  Class Members' Notice of Settlement**

18      On June 9, 2014, The Garden City Group ("GCG"), the settlement administrator,
19 commenced the notice plan. (Doc. No. 171-1 Ex. A, Declaration of Jennifer M.
20 Keough ("Keough Decl.") ¶ 6.) GCG published notice of the settlement once in the
21 California editions of People Magazine, Parade, and USA Weekend, published four
22 consecutive weekly notices in the San Diego Union-Tribune, Los Angeles Times, San
23 Francisco Chronicle, and Sacramento Bee, and issued a press release containing notice
24 of the settlement. (Id. ¶¶ 7, 11.) Additionally, GCG established a website and a toll-
25 free telephone number to provide information about the settlement to potential class
26 members. (Id. ¶¶ 12, 14.) GCG also purchased Internet banner notices through the
27 Xaxis Premium Network, Yahoo.com, and Advertising.com that contained a brief
28 statement advising class members of the settlement and took those who clicked on the

banner notices to the settlement website. (Id. ¶ 10.) Finally, GCG mailed notice packets to those settlement class members who so requested. (Id. ¶ 13.) GCG estimated that notice reached 83% of the class members. (Id. ¶ 5.)

As of July 24, 2014, the settlement website had 59,814 visits, the toll-free telephone number received 502 calls, and GCG mailed 328 notice packets to potential class members. (Id. ¶¶ 12-14.) No class member had opted-out of the settlement as of July 24, 2014. (Id. ¶ 15.) No class members have filed objections to the settlement agreement.

## Discussion

When the parties reach a settlement agreement prior to class certification, the Court is under an obligation to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Thus, the court must first assess whether a class exists, and second, determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." Id.

### I.  Class Certification

A plaintiff seeking to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure must first satisfy the requirements of Rule 23(a). Fed. R. Civ. P. 23(b). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). In the present case, Plaintiff seeks to certify a class for settlement purposes consisting of all California residents who, at any time between September 21, 2007 and May 1, 2014 purchased any of the Bear Naked products labeled "100% Natural" or "100% Pure and Natural" that contained any of the Challenged Ingredients. (See Doc. No. 167 ¶¶ II.A.1 (listing all the Challenged Ingredients); II.A.23 (listing all relevant Bear Naked products).)

####  A.  Rule 23(a) Requirements

Rule 23(a) establishes that one or more plaintiffs may sue on behalf of class members if all of the following requirements are met: (1) numerosity; (2) commonality;

(3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs assert that the class consists of thousands of consumers, and notes that Bear Naked has sold millions of units in the United States in the past four years. (Doc. No. 73-1 at 22.) Accordingly, the class satisfies the numerosity requirement.

The commonality requirement is met if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common answers apt to drive the resolution of the litigation.'" Abdullah v. U.S. Sec. Associates, Inc., 731 F.3d 952, 957 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011)). Here, there are many questions of law and fact that are common to the class, such as whether settlement class members were exposed to advertising using the terms "100% Natural" or "100% Pure and Natural" and purchased Bear Naked products containing the Challenged Ingredients based on those representations. Accordingly, the class satisfies the commonality requirement.

Typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claims are "'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Typicality requires that a representative plaintiff "possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982). Here, Plaintiff and settlement class members purchased a Bear Naked product based on alleged misrepresentations and false advertising. (Doc. No. 36 ¶¶ 1-2.) As Plaintiff's claims are reasonably co-extensive with the claims of absent class members, the class satisfies the typicality requirement.

Adequacy of representation under Rule 23(a)(4) requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate if the named plaintiff and class counsel (1) do not have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class. Hanlon, 150 F.3d 1020. Here, there are no conflicts of interest between Plaintiff and the absent class members. Additionally, Plaintiff has participated in the litigation process and discovery. (Doc. No. 171 at 5.) Class counsel have extensive experience and expertise in prosecuting consumer class actions related to food labels. (Doc. No. 73-1.) Accordingly, Plaintiff and her counsel are adequate representatives of the proposed class, and the class satisfies all of the requirements of Rule 23(a).

## B.   Rule 23(b)(3) Requirements

Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are referred to as the "predominance" and "superiority" tests. See Vinole v. Countywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009). Rule 23(b)(3)'s predominance and superiority requirements are designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Products, Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Advisory Committee's Notes on Fed. R. Civ. P. 23, 28 U.S.C. App., pp. 696-97).

### 1.   Predominance

"The main concern in the predominance inquiry [is] the balance between individual and common issues." In re Wells Fargo Home Mortg. Overtime Pay Litigation, 571 F.3d 953 (9th Cir. 2009). This analysis requires more than proof of

common issues of law and fact.  Hanlon, 150 F.3d at 1022.  Rather, the common questions should "present a significant aspect of the case and . . . be resolved for all members of the class in a single adjudication."  Id. (internal quotation omitted).

Courts have found that common factual issues involving a single advertisement seen by all class members can predominate over individual issues.  See Weeks v. Kellogg Co., No. 09-8102, 2011 U.S. Dist. LEXIS 155472 (C.D. Cal. Nov. 23, 2011) (certifying a class under Rule 23(b)(3) alleging that defendant's marketing campaign that certain of its cereal products can support a family's immune system was false and misleading).  On the basis of additional evidence after the certification order, and after considering the merits, the parties have agreed that an expanded settlement class encompassing all the Challenged Ingredients best resolves the common questions regarding Bear Naked's alleged conduct. (Doc. No. 166-1 at 1, 17.)  The Court agrees.

For the purposes of class certification, it is sufficient that the statements regarding the "100% Natural" and "100% Pure and Natural" products were part of common advertising to which the entire class was exposed, and is a sufficiently definite representation whose accuracy has been legitimately called into question.  See Hanlon, 150 F.3d at 1019-22; Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1173 (9th Cir. 2010).  Accordingly, Plaintiff has met her burden to show that the issues common to the class predominate over the individual issues.  Fed. R. Civ. P. 23(b)(3).

**2.   Superiority**

"Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair."  Wolin, 617 F.3d at 1175-76.  Notably, the class action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency."  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (citation omitted).  Here, there is no evidence that absent class members wish to pursue their claims individually.  Further, class-wide treatment of these issues will be efficient as the settlement class members' claims appear to involve a relatively

small amount of damages per member. (See generally Doc. No. 36.) Accordingly, the class action meets the superiority requirement. As Plaintiff has satisfied the requirements of Rule 23(b)(3), the Court certifies the settlement class

**II.    Settlement**

Rule 23(e) requires a court to determine whether a proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959 (quoting Hanlon, 150 F.3d at 1026). To make this determination, a court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. Staton, 327 F.3d at 959. In addition, the settlement may not be the product of collusion among the negotiating parties. In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." In re Heritage Bond Litigation, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). The Ninth Circuit favors deference to the "private consensual decision of the [settling] parties," particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party, in this instance, a private mediator and a magistrate judge. See Rodriguez v. West Publishing Corp., 563 F.3d 948, 965 (9th Cir. 2009). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." Id.

### A.     The Strength of Plaintiffs' Case and Risk of Further Litigation

Both parties have expended significant time, effort, and resources supporting their positions, and would continue to do so if the settlement failed to get final approval. (Doc. No. 171 at 14-16.)  The disputed factual and legal issues would be complex and costly to resolve at trial. (Id. at 16-18.)  Both parties have considered the uncertainty and risk of the outcome of future litigation, the burdens of proof for liability and damages, as well as the general difficulties and delays of litigation. (Id. at 14-18.)  These considerations led the parties to conclude that a timely settlement would be best for all involved parties.  See Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement.") (emphasis, internal quotation marks, and citation omitted).  The Court agrees that the recovery through settlement confers a substantial benefit to the class that outweighs the potential recovery that could have been obtained through full litigation.

### B.     The Amount Offered in Settlement

The proposed settlement provides class members with immediate monetary relief by establishing a common fund of $325,000.  Class members may recover $0.50 per package, without limitation, for every Bear Naked product purchased during the class period for which the member provides written proof of purchase.  Settlement class members may seek reimbursement without presenting written proof of purchase by submitting a valid claim form, in which case there is a maximum recovery of $25 per household.  If the total amount of eligible claims exceeds the $325,000 settlement fund, then each claimant's award will be proportionately reduced.  If money remains in the settlement fund after all valid claims, fees, and expenses are paid, the remaining amount will be used to increase pro rata the recovery of each eligible claim. Additionally, the proposed settlement requires Bear Naked to modify its labeling and advertising to remove "100% Natural" and "100% Pure and Natural" from those products that contain hexane-processed soy ingredients.  This settlement is a good

result for the class and eliminates the risks, expenses, and delay associated with continued litigation. Moreover, the settlement amount is the result of arm's-length negotiation conducted by experienced counsel. Accordingly, the Court concludes that the amount offered in settlement weighs in favor of granting final approval of the settlement.

### C. The Extent of Discovery Completed and Stage of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "'formal discovery is not a necessary ticket to the bargaining table.'" Linney, 151 F.3d at 1239 (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir.1982)).

The parties reached settlement over two years after the first complaint was filed and after extensive discovery and analysis of Plaintiffs' claims. (Compare Doc. No. 1 with Doc. No. 166.) Defendant produced, and Plaintiff's counsel reviewed, thousands of pages of documents, including label design and product formulation documents, marketing and business plans, product packaging and labels, and financial information. (Doc. No. 171 at 20.) Defendant deposed the class representatives and Plaintiffs' marketing expert, and Plaintiffs deposed several individuals, including Defendant's marketing expert. (Id. at 5.) Class counsel were able to negotiate the settlement based on a full evidentiary record and a thorough understanding of the strengths and weaknesses of the claims. Accordingly, the parties' extensive investigation, discovery, and subsequent settlement discussions weigh in favor of granting final approval.

### D. The Experience and Views of Counsel

Plaintiff's counsel has extensive experience acting as class counsel in consumer class action cases, including cases involving false advertising claims. (See Doc. No. 171 at 21.) Class counsel recommend the settlement as both fair and adequate, a factor that weighs in favor of granting final approval. (Id.)

///

### 5. The Reaction of the Class Members to the Proposed Settlement

As of July 24, 2014, the settlement website has been visited 59,814 times and the settlement administrator, GCG, has received 502 calls on a case-dedicated, toll-free telephone number. (Doc. No. 171-1 Ex.A, Keough Decl. ¶¶ 12, 14.) Additionally, GCG mailed 328 notice packets to potential class members who requested such packets. (Id. ¶ 13.) No class member had opted-out of the settlement as of July 24, 2014, and no class members have filed objections to the settlement agreement. (Id. ¶ 15.) The lack of objectors supports the fairness, reasonableness, and adequacy of the settlement. See In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." (citations omitted)); Boyd v. Bechtel Corp., 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had filed no opposition). Accordingly, the reaction of the class members weighs in favor of granting final approval.

### 6. No Evidence of Collusion Between the Parties

The collusion inquiry addresses the possibility the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of other members of the class. Stanton, 327 F.3d at 960. In the present case, because there is no evidence of overt misconduct, the Court's inquiry focuses on the aspects of the settlement that lend themselves to self-interested action.

The $2,000 incentive award for Plaintiff Thurston does not appear to be the result of collusion. The Court evaluates incentive awards using "'relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . .[and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" Staton, 327 F.3d at 977 (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Here, Plaintiff has protected the interests of the class by engaging in investigation and discovery, attending a deposition, and assisting counsel with other aspects of the case. (Doc. No.

1  170 at 6-7.) Therefore, the $2,000 award to Plaintiff appears to be reasonable in light
2  of her efforts in this litigation.
3      After considering all applicable factors, the Court concludes the settlement is
4  "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959.
5  Accordingly, the Court grants Plaintiff's motion for final approval of the settlement.
6  **III.   Attorneys' Fees and Expenses**
7      Plaintiff's counsel have requested no attorneys' fees and $150,000 in expenses.
8  (Doc. No. 170 at 4.)
9      Plaintiff's counsel have represented to the Court that they have incurred
10 litigation expenses in the amount of $189,765.37. (Doc. No. 170 at 4; Doc. No. 170-1,
11 Declaration of Michael D. Braun ¶ 18; Doc. No. 171-2, Declaration of Rosemary M.
12 Rivas ¶ 10; Doc. No. 171-3, Declaration of Janet Spielberg ¶ 10; Doc. No. 171-4,
13 Declaration of Wyatt A. Lison ¶¶ 8-9.) After reviewing counsels' declarations
14 regarding expenses, the Court concludes an award of $150,000 in litigation expenses
15 is reasonable. Accordingly, the Court grants Plaintiff's request for expenses.
16 **V.    Incentive Payments to Class Representatives**
17     Finally, the $2,000 incentive award for Plaintiff Thurston is reasonable. "The
18 criteria courts may consider in determining whether to make an incentive award
19 include: 1) the risk to the class representative in commencing suit, both financial and
20 otherwise; 2) the notoriety and personal difficulties encountered by the class
21 representative; 3) the amount of time and effort spent by the class representative; 4) the
22 duration of the litigation and; 5) the personal benefit (or lack thereof) enjoyed by the
23 class representative as a result of the litigation." Van Vranken v. Atlantic Richfield
24 Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).
25     After reviewing the factors announced in Van Vranken, the Court concludes that
26 the requested incentive award for Plaintiff is reasonable. The $2,000 award is well
27 within the acceptable range awarded in similar cases. See, e.g., Fulford v. Logitech,
28 Inc., No. 08-CV-02041, 2010 WL 807448, at *3 n.1 (N.D. Cal. 2010) (collecting cases

awarding incentive payments ranging from $5,000 to $40,000). Plaintiff advanced the interests of the absent class members by engaging in investigation and discovery, attending depositions, and assisting counsel with other aspects of the case. (<u>See</u> Doc. No. 170 at 6.)  Accordingly, the Court approves the $2,000 incentive award for Plaintiff Thurston.

## **Conclusion**

For the reasons stated above, it is ordered that:

1. This Judgment incorporates by reference the definitions in the Stipulation of Settlement dated May 2, 2014 (Doc. No. 167, "Settlement") and all terms used in this Judgment shall have the same meanings as set forth in the Settlement.

2. The Court has jurisdiction over the subject matter of this action and all parties to the action, including all Settlement Class Members.

3. The Court certifies the following Class: All California residents who purchased any package of the Products during the Settlement Class Period.  Excluded from the Class are: (a) Bear Naked's employees, officers and directors; (b) persons or entities who purchased the Products for the purpose of re-sale; (c) retailers or re-sellers of the Products; (d) governmental entities; (e) persons who timely and properly exclude themselves from the Class as provided herein; and (f) the Court, the Court's immediate family, and Court staff.

4. All Persons who satisfy the Class definition above, except those Class Members who timely and validly excluded themselves from the Class, are Settlement Class Members bound by this Judgment.

5. The form and method of notice satisfied the requirements of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715 ("CAFA"), and the United States Constitution, including the Due Process Clause.

6. No part of the Settlement, this Judgment, nor the fact of the settlement

constitutes any admission by any of the Parties of any liability, wrongdoing or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the Litigation.

7. Class Counsel is awarded $150,000 in expenses.

8. Plaintiff Class Representative is entitled to an incentive award of $2,000. The expense award and Plaintiff's incentive award are to be paid out of the Settlement Fund created by Bear Naked pursuant to the time table set forth in the Settlement.

10. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this Judgment and the Settlement, and all matters arising thereunder.

11. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. Final Judgment in this action is entered. The Court dismisses with prejudice the action, and all Released Claims against each and all Released Persons and without costs to any of the Parties as against the others.

**IT IS SO ORDERED.**

DATED: September 2, 2014

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT